# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CHRISS W. STREET, | |
| Plaintiff, | CIVIL ACTION NO. 07-65 *** |
| v. | |
| THE END OF THE ROAD TRUST AND AMERICAN TRAILER INDUSTRIES, INC., | |
| Defendants. | |

## PETITIONER CHRISS W. STREET'S MEMORANDUM IN SUPPORT OF MOTION TO REMAND TO COURT OF CHANCERY OF THE STATE OF DELAWARE OR FOR ABSTENTION UNDER 28 U.S.C. § 1334(c)

PEPPER HAMILTON LLP
Edmond D. Johnson (No. 2257)
Phillip T. Mellet (No. 4741)
1313 Market Street, Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: (302) 777-6539
Facsimile: (302) 421-8390
Email: johnsone@pepperlaw.com
Email: melletp@pepperlaw.com

THE BAYARD FIRM
Neil B. Glassman (No. 2087)
Peter B. Ladig (No. 3513)
Ashley B. Stitzer (No. 3891)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
Email: nglassman@bayardfirm.com
Email: pladig@bayardfirm.com
Email: astitzer@bayardfirm.com

*Counsel for Chriss W. Street*

Dated: February 14, 2007

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................ii

I.      NATURE & STAGE OF THE PROCEEDINGS...................................1

II.     SUMMARY OF THE ARGUMENT ....................................................2

III.    STATEMENT OF FACTS...................................................................4

        A.    The Parties ...............................................................................4

        B.    The Employment Contracts ........................................................5

        C.    The Chancery Court Action.........................................................6

IV.     ARGUMENT......................................................................................7

        A.    The Court Does Not Have Federal Question Jurisdiction of
              the Chancery Court Action Under 28 U.S.C. § 1331 ..................7

        B.    The Court Does Not Have Diversity Jurisdiction of the
              Chancery Court Action Under 28 U.S.C. § 1332 .......................7

              1.    Diversity Jurisdiction Under Section 1332 Is
                    Lacking ..........................................................................8

              2.    Removal of the Chancery Court Action Is Barred
                    Under Section 1441(b)...................................................10

        C.    Jurisdiction Under Section 1334 Is Lacking..............................11

              1.    The Chancery Court Action Is Not A Core
                    Proceedings Under Section 157.....................................12

              2.    The Chancery Court Action Is Not Related To The
                    Debtors' Bankruptcy Cases Under Section 1334 of
                    the Code .......................................................................13

        D.    Mandatory Abstention and Remand of the Chancery Court
              Action Is Warranted.................................................................15

              1.    Mandatory Abstention Is Warranted Under Section
                    1334(c)(2) ....................................................................15

              2.    The Chancery Court Action Should Be Remanded
                    On Equitable Grounds ..................................................17

V.      CONCLUSION ................................................................................18

i

## <u>TABLE OF AUTHORITIES</u>

Page

<u>Cases</u>

*Abels v. State Farm Fire & Cas. Co.,*
    770 F.2d 26 (3d Cir. 1985) .........................................................................................9

*C.T. Carden v. Arkoma Assoc.,*
    494 U.S. 185, 195-96, 110 S. Ct. 1015, 108 L. Ed. 2d 157 (1990) ...........................10

*Chiodo v. NBC Bank-Brooks Field (In re Chiodo),*
    88 B.R. 780 (W.D. Tex. 1988) ...................................................................................18

*Dukes v. U.S. Healthcare, Inc.,*
    57 F.3d 350 (3d Cir. 1995) .........................................................................................9

*Halper v. Halper,*
    164 F.3d 830 (3d Cir. 1999) .............................................................................13, 14

*In re Guild & Gallery Plus,*
    72 F.3d 1171 (3d Cir. 1996) .....................................................................................13

*In re Resorts International, Inc. (Binder v. Price Waterhouse & Co., LLP),*
    372 F.3d 154 (3d Cir. 2004) .................................................................12, 13, 15, 16

*LJM2 Co-Investmentment, L.P. v. LJM2 Capital Management, L.P.,*
    2003 WL 431684 (D. Del. 2003)..............................................................................19

*Lone Star Industries, Inc. v. Liberty Mut. Ins.,*
    131 B.R. 269 (D. Del. 1991).....................................................................................19

*McCann v. Newman Irrevocable Trust,*
    458 F.3d 281 (3d Cir. 2006) .....................................................................................10

*Murray v. On-Line Bus. Sys., Inc. (In re Revco D.S., Inc.),*
    99 B.R. 768 (N.D. Oh. 1989).....................................................................................18

*Navarro Sav. Ass'n v. Lee,*
    446 U.S. 458 (U.S. 1980) .........................................................................................10

*Pacor, Inc. v. Higgins,*
    743 F.2d 984 (3d Cir. 1984) .....................................................................................15

*Parrett v. Bank One, N.A. (In re Nat'l Century Fin. Enters. Inv. Litig.),*
    323 F. Supp. 2d 861 (S.D. Oh. 2004) .......................................................................18

*Personette v. Kennedy (In re Midgard Corp.),*
    204 B.R. 764 (B.A.P. 10th Cir. 1997) .......................................................................18

*Ronald Alexander LeBlanc Trust v. Ranson*,
  276 F. Supp. 2d 647 (S.D. Tex. 2003)..................................................................10

*Steel Valley Authority v. Union Switch and Signal Div.*,
  809 F.2d 1006 (3d Cir. 1987) .............................................................................9

*Stoe v. Flaherty*,
  436 F.3d 209 (3d Cir. 2006) .........................................................................17, 18

*The Litigation Trust of MDIP, Inc. v. Rapaport*,
  No. Civ. A. 03-779GMS, 2005 WL 1232157 (D. Del. 2005) ....................................10

*The May Department Stores Company et al. v. Federal Insurance
  Company, et al.*,
  305 F.3d 597 (7th Cir. 2002) ...........................................................................10

*Transamerica Corp. v. Reliance Ins. Co. of Illinois*,
  884 F. Supp. 133 (D. Del. 1995) .........................................................................9

*U.S. Express Lines Ltd. v. Higgins*,
  281 F.3d 383 (3d Cir. 2002) ...............................................................................8

*Unanue v. Caribbean Canneries, Inc.*,
  323 F. Supp. 63 (D. Del. 1971) .........................................................................11

*Westmoreland Hosp. Ass'n v. Blue Cross of W. Pa.*,
  605 F.2d 119 (3d Cir. 1979) ...............................................................................8

<u>Statutes</u>

11 U.S.C. §§ 101 *et seq.* ......................................................................................2

28 U.S.C. § 157 ...........................................................................................11, 12

28 U.S.C. § 157(a) ...........................................................................................12

28 U.S.C. § 157(b)...........................................................................................12, 13

28 U.S.C. § 157(b)(1) ......................................................................................12

28 U.S.C. § 157(b)(2) ......................................................................................13

28 U.S.C. § 1331 .......................................................................................*passim*

28 U.S.C. § 1332 .......................................................................................*passim*

**TABLE OF AUTHORITIES**, continued

<u>Page</u>

<u>Statutes</u>, continued

28 U.S.C. § 1332(a) ..................................................................................8

28 U.S.C. § 1334 ...............................................................................*passim*

28 U.S.C. § 1334(a) ..................................................................................11

28 U.S.C. § 1334(b) ..................................................................................11

28 U.S.C. § 1334(c) ...................................................................1, 3, 15, 18

28 U.S.C. § 1334(c)(2) ......................................................................*passim*

28 U.S.C. § 1452 ......................................................................................17

28 U.S.C. § 1452(b) ..........................................................................*passim*

28 U.S.C.A. § 1332(c)(1) ......................................................................8, 9

28 U.S.C.A. § 1441(b) ......................................................................*passim*

# I.    NATURE & STAGE OF THE PROCEEDINGS

On January 9, 2007, Plaintiff/Petitioner Chriss W. Street ("Street") commenced an action (the "Chancery Court Action") in the Chancery Court of the State of Delaware in and for New Castle County (the "Chancery Court") titled <u>Chriss W. Street v. The End of the Road Trust and American Trailer Industries, Inc.</u>, Civil Action No. 2662-N.  The Chancery Court Action seeks indemnification and advancement of fees and costs from the Defendants which are provided in two employment agreements that Street entered into with the Defendants.

On February 2, 2007, The End of the Road Trust (the "Trust") and American Trailer Industries, Inc. ("ATII", and collectively with the Trust, the "Defendants") filed the Notice of Removal to Federal Court (the "Removal Notice") thereby removing the Chancery Court Action to the United States District Court for the District of Delaware (the "Court").

On February 9, 2007, Street filed the Motion to Remand to Court of Chancery of the State of Delaware and for Abstention Under 28 U.S.C. § 1334(c) (the "Motion"). This Memorandum is filed in support of and contemporaneously with the Motion.

## II.   **SUMMARY OF THE ARGUMENT**

1.      The Court does not have original jurisdiction of the Chancery Court Action under section 1331 of Title 28 of the United State Code (the "Code") because it involves state law claims for advancement and indemnification arising from post-confirmation employment contracts.

2.      The Court lacks diversity jurisdiction of the Chancery Court Action under section 1332 of the Code because Street and both of the Defendants are citizens of California.  ATII is a Delaware corporation with its principal place of business located in California.  The Trust is a citizen of California because Daniel W. Harrow, the current Trustee of the Trust, is a citizen of California and at least one beneficiary of the Trust is a citizen of California.   Alternatively, if diversity jurisdiction exists, removal of the Chancery Court Action is barred under section 1441(b).

3.      The District Court does not have subject matter jurisdiction over the Chancery Court Action because it is not a core proceeding arising under chapter 11 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq*., the "Bankruptcy Code"), or a proceeding arising under title 11 of the Bankruptcy Code, or a proceeding arising in a case under title 11 of the Bankruptcy Code.  In addition, the Court does not have "related to" jurisdiction under section 1334 of the Code because Street's state law contract claims do not involve the interpretation, implementation, consummation, execution, or administration of the Confirmed Plan (defined hereafter) and no close nexus to the bankruptcy plan exists.

4.      In the event that the Court finds that it has "related to" jurisdiction under section 1334 of the Bankruptcy Code, mandatory abstention is warranted under

2

section 1334(c).  Further, remand of the Chancery Court Action is warranted on equitable

grounds under section 1452(b) of the Code.

3

## III.    **STATEMENT OF FACTS**

### A.    **The Parties**

Street is a citizen of the state of California. He is the former Trustee of the Trust and the former Chairman of the Board ("COB") and Chief Executive Officer ("CEO") of ATII. Street is currently the treasurer of Orange County California. *See* Petition, ¶1, attached hereto as Exhibit A.

The Trust is a Delaware liquidating trust organized under the laws of Delaware to hold the former assets of the Fruehauf Trailer Corporation ("Fruehauf"). *See* Exhibit A, ¶2. The Trust has been registered to do business in California for many years. *See* Statement and Designation by Foreign Association, attached hereto as Exhibit B. Daniel W. Harrow ("Harrow") is the current Trustee of the Trust and is a citizen of California. *See* Exhibit A, ¶4; 2005 State of Delaware Annual Franchise Tax Report for ATII attached hereto as Exhibit C. At least one beneficiary of the Trust is a citizen of California with an address of P.O. Box 6191, Folsom, CA 95763. *See* Objection of Alan Brody , formerly a creditor in bankruptcy and now a beneficiary of the Trust, and related certificate of service attached hereto as Exhibit D. Thus, the Trust is a citizen of California.

ATII is a Delaware corporation and is owned by the Trust. *See* Exhibit A, ¶3; ATII was originally named Frudemex, Inc. ("Frudemex"). Frudemex owns all of the stock of Fruehauf de Mexico ("FdM"), a former subsidiary of Fruehauf. Frudemex changed its name to ATII in 1999. *See* Exhibit A, ¶3

Although the Removal Notice sates that ATII is a Delaware Corporation with its principal place of business in Delaware, ATII's principal place of business is, and always

4

has been, in California. More specifically, ATII's most recent Franchise Tax Report, filed with the Delaware Secretary of State on February 27, 2006, shows that ATII's principal place of business outside of Delaware is 11766 Wilshire Blvd. Los Angeles, California. *See,* Exhibit C. ATII's most recent restatement of its Certificate of Incorporation shows the address of ATII's registered office in the state of Delaware as 2711 Centerville Road, Suite 400, City of Wilmington, county of New Castle, Delaware 19808. *See*, Restated Certificate of Incorporation of American Trailer Industries, Article II, Exhibit E hereto. That is the address of Corporation Service Company, a mail drop and registered agent service for dozens of Delaware companies. *See,* Exhibits C and E. Moreover, ATII's sole Director and CEO, Mr. Daniel Harrow conducts the business of ATII out of the Wilshire Blvd. address. *See,* Letter on ATII letterhead from Harrow to Yi attached hereto as Exhibit F. ATII also pays its employees out of a California Address using a bank account located at Union National Bank in Newport Beach, California. *See,* payroll stub and copy of payroll check to Chriss W. Street, attached hereto as Exhibit G. ATII's W-2's were sent from that same address in January of 2007. *See,* letter indicating return receipt requested from ATII to Chriss W. Street enclosing W-2 dated January 31, 2007 attached hereto as Exhibit H.

Thus, ATII's only Delaware location is a registered agent mail drop, while ATII is currently carrying on its business in California. Consequently, ATII is a citizen of Delaware because it is incorporated there, and also a citizen of California because that is where its operations and employees are located.

#8315137 v1

### B.    The Fruehauf Bankruptcy

On October 7, 1996, Fruehauf and certain of its direct and indirect subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

On or about July 28, 1998, the Debtors filed the Amended Joint Plan of Reorganization Dated July 28, 1998, as modified on September 17, 1998 (the "Plan").

On September 17, 1998, the Bankruptcy Court entered the Order and Judgment Confirming the Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code and Granting Related Relief (the "Confirmation Order"), in which the Bankruptcy Court confirmed the Confirmed Plan. The Confirmed Plan became effective on October 27, 1998 – almost nine years ago.

### C.    The Employment Agreements

On October 27, 1998, Street and the Trust entered into an Employment Agreement in which Mr. Street agreed to serve as trustee of the Trust pursuant to the terms therein. Section 5 of the Employment Agreement contains broad indemnification and advancement provisions. A true and correct copy of the Employment Agreement is attached hereto as Exhibit I. Street remained as Trustee until his resignation became effective as of August 1, 2005, at which time he was replaced by Harrow.

On October 27, 1998, Street also entered into a contract with Frudemex under which he became the COB and CEO of Frudemex (the "Frudemex Agreement"). Section 5 of the Frudemex Agreement contains broad indemnification and advancement provisions. A true and correct copy of the Frudemex Agreement is attached hereto as

6

Exhibit J.  Street remained as the CEO and COB of Frudemex/ATII until he resigned from his positions at ATII as of August 1, 2005.

### D.    The Chancery Court Action

On January 9, 2007, Street commenced the Chancery Court Action against the Defendants by filing the Petition for Advancement and Indemnification (the "Petition"), which asserts claims for advancement and indemnification pursuant to the Employment Agreement and the Frudemex Agreement.

On February 2, 2007, the Defendants filed the Removal Notice thereby removing the Chancery Court Action to the Court.  In the Removal Notice, the Defendants state that the grounds for removal are (i) the Court has original federal question jurisdiction under 28 U.S.C. §§ 1331 and 1334 because the Chancery Court Action arises in or is otherwise related to the Debtors' bankruptcy case, and (ii) the Court has diversity jurisdiction under 28 U.S.C. § 1332.

#8315137 v1

IV.    **ARGUMENT**

A.    **The Court Does Not Have Federal Question Jurisdiction of the Chancery Court Action Under 28 U.S.C. § 1331**

Section 1331 of the Code provides that district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.    In determining whether a case arises under federal law, courts are instructed to look to the plaintiff's "well-pleaded complaint." *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002).   "[T]he controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Id.* citing *Westmoreland Hosp. Ass'n v. Blue Cross of W. Pa.*, 605 F.2d 119, 122 (3d Cir. 1979).

In the present case, the Chancery Court Action involves state law claims for advancement and indemnification rising from post-confirmation agreements between the parties..   Therefore, the Court does not have jurisdiction under section 1331 of the Code because the Chancery Court Action does not arise under the Constitution, laws, nor treaties of the United States.

B.    **The Court Does Not Have Diversity Jurisdiction of the Chancery Court Action Under 28 U.S.C. § 1332**

Section 1332(a) of the Code provides, in relevant part, that district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

It is axiomatic that there must be complete diversity of citizenship between all plaintiffs and all defendants. *Transamerica* Corp. *v. Reliance Ins. Co. of Illinois*, 884

8

F. Supp. 133, 137 (D. Del. 1995).  Thus, if any one defendant is a citizen of the same state as any one plaintiff, diversity of citizenship is destroyed and section 1332 provides no basis for federal court jurisdiction.  *Id.*

The burden of establishing removal jurisdiction rests with the defendant.  *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 359 (3d Cir. 1995), citing *Abels v. State Farm Fire & Cas. Co.,* 770 F.2d 26, 29 (3d Cir. 1985); *see also Steel Valley Authority v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) ("It remains the defendant's burden to show the existence and continuance of federal jurisdiction.").

In the present case, diversity jurisdiction is lacking because ATII is a citizen of California.  *See* Exhibit A, ¶¶1-4.  For purposes of section 1332, a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.  28 U.S.C.A. § 1332(c)(1).

ATII is incorporated under the laws of the State of Delaware  and therefore is deemed a citizen of Delaware.  *See* Exhibit A, ¶3.  In addition, ATII's principal place of business is located in California.  Contrary to the Defendants' statement in the Removal Notice that ATII's principal place of business is located in Delaware, the facts provided by Street in the Statement of Facts show that ATII's principal place of business is in California. *See supra* at 4-5.  However, if Defendants disagree with those facts, they have the burden to establish that jurisdiction is proper. Dukes v. U.S. Healthcare, Inc., 57 F.3d at 359.

Diversity jurisdiction is also lacking because the Trust is a citizen of California.  For diversity purposes, the citizenship of a trust is determined by the citizenship of the trustee or trustees.  *See, e.g.*, *The May Department Stores Company et al. v. Federal*

9

*Insurance Company, et al.*, 305 F.3d 597, 599 (7th Cir. 2002), citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 465 (U.S. 1980); *Ronald Alexander LeBlanc Trust v. Ranson*, 276 F. Supp. 2d 647, 651 (S.D. Tex. 2003). Harrow, the Trustee of the Trust, resides in the State of California. *See* Exhibit A, ¶ 4. An individual's citizenship is determined by his domicile or his "fixed and permanent home and place of habitation." *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006). Accordingly, the Trust is deemed a citizen of California.

Alternatively, for an artificial entity, unless that entity is a corporation, its citizenship "depends on the citizenship of 'each of its members.'" *The Litigation Trust of MDIP, Inc. v. Rapaport*, No. Civ. A. 03-779GMS, 2005 WL 1242157, at *4 (D. Del. 2005), citing *C.T. Carden v. Arkoma Assoc.*, 494 U.S. 185, 195-96, 110 S. Ct. 1015, 108 L. Ed. 2d 157 (1990). Consequently, the court must determine the citizenship of the Trust by looking to the citizenship of its "members," i.e., its beneficiaries. *See id.* As such, the citizenship of each creditor-beneficiary must be diverse from the citizenship of each plaintiff. *See id.*

The Trust has at least one beneficiary, and likely more, that are citizens of California. Alan Brody is a beneficiary of the Trust and a citizen of California. *See supra* at 4. Whether or not Defendants agree with those facts, Defendants have the burden to show that none of the beneficiaries is a citizen of California – an issue they have not even tried to address. Moreover, to the extent that any of the beneficiaries is an unincorporated association, Defendants must show that none of the owners, partners or members of such association are residents of California.

10

Based on the foregoing, diversity jurisdiction does not exist under section 1332 of the Code. Street is a citizen of California. ATII is a Delaware corporation with its principal place of business in California and therefore is a citizen of Delaware and California. In addition, the Trust is a citizen of California because Harrow is a citizen of California and at least one beneficiary of the Trust is a citizen of California. Frankly, it is inconceivable that Defendants and their lead counsel were not aware that both the Trust and ATII have their principal offices in California and, consequently, they had no basis for asserting diversity jurisdiction in the Removal Notice.

### 2.   Removal of the Chancery Court Action Is Barred Under Section 1441(b)

Even if the parties were wholly diverse, which they are not, the Defendants are precluded from seeking removal of the Chancery Court Action under Section 1441(b) of the Code.

Section 1441(b) provides that "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C.A. § 1441(b); s*ee also Unanue v. Caribbean Canneries, Inc.*, 323 F. Supp. 63, 66 (D. Del. 1971).

As Defendants concede, ATII is a citizen of Delaware. ATII was properly named and served as a defendant in the Chancery Court Action. *See* Removal Notice, ¶2. Therefore, even if the Court were to find that jurisdiction exists under section 1332, removal of the Chancery Court Action is prohibited under section 1441(b).

11

## C.    Jurisdiction Under Section 1334 Is Lacking

The Court does not have jurisdiction of the Chancery Court Action under section 1334 of the Code.  Section 1334 provides that district courts shall have original and exclusive jurisdiction of all cases under title 11 and shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.  28 U.S.C. §§ 1334(a) and (b).

In *In re Resorts International, Inc. (Binder v. Price Waterhouse & Co., LLP),* 372 F.3d 154, 162 (3d Cir. 2004), the Third Circuit discussed jurisdiction of bankruptcy courts under section 1334, specifically addressing the court's jurisdiction over a post-confirmation matter involving a post-confirmation trust (the same circumstances as the case at hand) and stated:

> Bankruptcy court jurisdiction potentially extends to four types of title 11 matters, pending referral from the district court: " '(1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11.' " Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as "core" proceedings; whereas proceedings "related to" a case under title 11 are referred to as "non-core" proceedings.  Congress vested the bankruptcy courts with full adjudicative power with regard to "core" proceedings, subject to appellate review by the district courts.  At the same time, it provided that, for "non-core" proceedings that are otherwise related to a case under title 11, the bankruptcy court "shall submit proposed findings of fact and conclusions of law to the district court" subject to de novo review by that court.

*Resorts,* 372 F.3d at 162 (citations omitted).

The Chancery Court Action is not a core proceeding under section 157 of the Code.  Further, related to jurisdiction under section 1334 of the Code does not exist.

12

1.    **The Chancery Court Action Is Not A Core Proceedings Under Section 157**

The District Court does not have subject matter jurisdiction over the Chancery Court Action because it is not a core proceeding arising under title 11, or a proceeding arising under title 11, or a proceeding arising in a case under title 11.

Section 157(b)(1) of the Bankruptcy Code provides that bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred to the bankruptcy court under section 157(a). 28 U.S.C. § 157(b). "[A] core proceeding under section 157 is one that " 'invokes a substantive right provided by title 11' " or one that " 'by its nature, could arise only in the context of a bankruptcy case.' " *Resorts*, 372 F.3d at 162-63, citing *In re Guild & Gallery Plus,* 72 F.3d 1171, 1178 (3d Cir. 1996).

In *Halper v. Halper*, 164 F.3d 830 (3d Cir. 1999), the Third Circuit established the test for determining whether a matter is a core proceeding and stated:

> To determine whether a proceeding is a "core" proceeding, courts of this Circuit must consult two sources. First, a court must consult § 157(b).    Although § 157(b) does not precisely define "core" proceedings, it nonetheless provides an illustrative list of proceedings that may be considered "core."    Second, the court must apply this court's test for a "core" proceeding. Under that test, " 'a proceeding is core [1] if it invokes a substantive right provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case.' "

*Halper*, 164 F.3d at 836 (citations omitted).

Application of the Third Circuit test for core proceedings shows that the Chancery Court Action is non-core.  First, the Chancery Court Action involves state law contract claims for advancement and indemnification pursuant to post-confirmation employment agreements between Street and the Defendants.  Therefore, the Chancery Court Action

13

does not fall under any of the factors delineated in section 157(b) of the Code.[1]  Second, the post-confirmation contract claims asserted in the Chancery Court Action do not invoke a substantive right provided under title 11 and regularly arise outside the context of a bankruptcy case.

Therefore, under the *Halper* test, the Chancery Court Action is a non-core proceeding that does not arise under title 11 or in a case or proceeding under title 11.

### 2.    The Chancery Court Action Is Not Related To The Debtors' Bankruptcy Cases Under Section 1334 of the Code

The Court does not have jurisdiction under section 1334 because the Chancery Court Action is not a proceeding related to a case under title 11.

The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have

---

[1]  Section 157(b)(2) of title 28 of the United State Code provides:

> (2) Core proceedings include, but are not limited to—
> (A) matters concerning the administration of the estate;
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
> (C) counterclaims by the estate against persons filing claims against the estate;
> (D) orders in respect to obtaining credit;
> (E) orders to turn over property of the estate;
> (F) proceedings to determine, avoid, or recover preferences;
> (G) motions to terminate, annul, or modify the automatic stay;
> (H) proceedings to determine, avoid, or recover fraudulent conveyances;
> (I) determinations as to the dischargeability of particular debts;
> (J) objections to discharges;
> (K) determinations of the validity, extent, or priority of liens;
> (L) confirmations of plans;
> (M) orders approving the use or lease of property, including the use of cash collateral;
> (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and
> (P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

14

any effect on the estate being administered in bankruptcy. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate. *Id.*

After confirmation of a reorganization plan, retention of bankruptcy jurisdiction may be problematic. *Resorts*, 372 F.3d at 164-65. This is so because, under traditional *Pacor* analysis, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred. *Id.* Unless otherwise provided by the plan or order confirming the plan, "the confirmation of a plan vests all of the property of the estate" in the reorganized debtor. *Id.* Therefore, post-confirmation "related to" jurisdiction is narrow, and the claim "must affect an integral aspect of the bankruptcy process--there must be a close nexus to the bankruptcy plan or proceeding." *Id.* at 167.

In *Resorts,* the Third Circuit rejected the argument that related to jurisdiction existed because the proceeding could increase the assets of a litigation trust. The Court stated:

> [T]he potential to increase assets of the Litigation Trust and its beneficiaries does not necessarily create a close nexus sufficient to confer "related to" bankruptcy court jurisdiction post-confirmation. The Trust beneficiaries here no longer have the same connection to the bankruptcy proceeding as when they were creditors of the estate. For reasons they believed financially prudent, they traded their creditor status as claimants to gain rights to the Litigation Trust's assets. Thus, their connection to the bankruptcy plan or proceeding is more attenuated. Furthermore, if the mere possibility of a gain or loss of trust assets sufficed to confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust would fall under the "related to" grant. Such a result would widen the scope of bankruptcy court jurisdiction beyond what Congress intended for

> non-Article III bankruptcy courts.    Accordingly, resolution of these
> malpractice claims will not affect the interpretation, implementation,
> consummation, execution, or administration of the Plan.

*Resorts*, 372 F.3d at 170-171.

*Resorts* is on all fours with this case. The only difference is that this case involves

a claim against a post-confirmation trust (and its subsidiary, a Delaware corporation)

instead of a claim held by a post-confirmation trust.    One case involves potential

accretion; the other involves potential diminution, but the theory is the same.

In the present case, Street's state law contract claims are based on employment

agreements with non-debtors made after confirmation of the Debtors' Confirmed Plan.

Therefore, Street's state law contract claims do not involve the interpretation,

implementation, consummation, execution, or administration of the confirmed plan and

no close nexus to the bankruptcy plan exists.    There is still going to be a trust and it still

is going to have to dispose of its assets as a liquidating trust.    The teaching of the Third

Circuit in *Resorts* is very clear. Federal court jurisdiction after confirmation and

consummation of a Chapter 11 plan is more sharply constrained than most practitioners

realized. This Court does not have "related to" jurisdiction under section 1334 of the

Code.

**D.    Mandatory Abstention and Remand of the Chancery Court Action Is
    Warranted**

Even if the Court finds that it has "related to" jurisdiction under section 1334 of

the Code, abstention is mandated under section 1334(c).    Also, remand of the Chancery

Court Action is warranted for equitable grounds under section 1452(b) of the Code.

16

1.    <u>**Mandatory Abstention Is Warranted Under Section 1334(c)(2)**</u>

Section 1334(c)(2) of the Code addresses mandatory abstention of state law claims and provides, in relevant part, as follows:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

"Thus, upon a timely motion under § 1334(c)(2), a district court *must* abstain if the following five requirements are met: (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11; (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is commenced" in a state forum of appropriate jurisdiction; and (5) the action can be "timely adjudicated" in a state forum of appropriate jurisdiction." *Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006).

If the Court finds that it has "related to" jurisdiction of the Chancery Court Action under section 1334 of the Code, subsection (c)(2) of section 1334 directs that the Court must abstain from exercising that jurisdiction. The Chancery Court Action asserts state law claims for indemnification and advancement. As discussed above, the Chancery Court Action does not arise under title 11 nor arise in a case or proceeding under title 11. Moreover, original jurisdiction does not exist under section 1331 or 1332. Therefore, federal courts would not have jurisdiction over the Chancery Court Action but for its relation to the bankruptcy case (remote as it might be). Further, the Chancery Court Action was commenced in a state forum of appropriate jurisdiction prior to its removal.

17

*See Stoe v. Flaherty*, 436 F.3d at 214 (Court finding that the text of § 1334(c)(2) mandates abstention in removed cases as well as those filed initially in federal court.). Finally, the Chancery Court Action can be timely adjudicated in the Delaware Chancery Court.  These kinds of proceedings are routinely handled by the Delaware Chancery Court in summary fashion, and are usually heard on an expedited basis.  That is one reason why Mr. Street brought his claims in the Delaware Chancery Court.  Based on the foregoing, mandatory abstention is warranted under section 1334(c)(2) of the Code.

> **2.    The Chancery Court Action Should Be Remanded On Equitable Grounds**

Section 1452 of the Code governs the removal of claims related to bankruptcy cases.  Section 1452(b) provides that the court to which a claim or cause of action is removed may remand such claim or cause of action on any equitable ground.  28 U.S.C. § 1452(b).

Once a district court determines that it must abstain from hearing a removed case pursuant to section 1334(c)(2), there will be an "equitable ground" justifying remand under section 1452(b).  *See Stoe v. Flaherty*, 436 F.3d 209, 215 (3d Cir.2006); *see also Parrett v. Bank One, N.A. (In re Nat'l Century Fin. Enters. Inv. Litig.)*, 323 F. Supp. 2d 861, 878 (S.D. Oh. 2004) (noting that mandatory abstention provides equitable ground supporting remand under section 1452(b)); *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 775 & 775-76 n.13 (B.A.P. 10th Cir. 1997) (same); *Murray v. On-Line Bus. Sys., Inc. (In re Revco D.S., Inc.)*, 99 B.R. 768, 776 (N.D. Oh. 1989) (same); *Chiodo v. NBC Bank-Brooks Field (In re Chiodo)*, 88 B.R. 780, 785 (W.D. Tex. 1988) (same).

Additional equitable factors exists justifying remand of the Chancery Court Action, including: the Chancery Court Action involves only state law claims asserted

against a post-confirmation trust; there is no jurisdictional basis other than 28 U.S.C. § 1334; the Chancery Court Action is non-core; the Chancery Court Action will not affect the administration of the estate other than perhaps the amount available for final distribution to the Trust's beneficiaries; the plaintiff's choice of forum in the Delaware Chancery Court; and the Chancery Court Action can be adjudicated timely in the Delaware Chancery Court. *See LJM2 Co-Investmentment, L.P. v. LJM2 Capital Management, L.P.*, 2003 WL 431684, *1 (D. Del. 2003); *Lone Star Industries, Inc. v. Liberty Mut. Ins.*, 131 B.R. 269, 273 (D. Del. 1991).

19

**CONCLUSION**

For all of the foregoing reasons, Mr. Street respectfully requests that this Court (i) grant the Motion and remand the Chancery Court Action to the Delaware Chancery Court and abstain under section 1334(c) of the Code, (ii) grant Street attorneys fees and costs relating to the Removal Notice and this Motion under Section 1447(c) of the Code, and (iii) grant any other relief the Court finds just and appropriate under the circumstances.

Dated:  February 14, 2007

Edmond D. Johnson (No. 2257)
Phillip T. Mellet (No. 4741
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE   19899-1709
(302) 777-6500

- and -

Neil B. Glassman (No. 2087)
Peter B. Ladig (No. 3513)
Ashley B. Stitzer (No. 3891)
THE BAYARD FIRM
222 Delaware Avenue
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000

Attorneys for Chriss W. Street

#8315137 v1

# EXHIBIT "A"

EFiled: Jan 9 2007 6:02PM EST
Transaction ID 13400875

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| CHRISS W. STREET | : | |
| | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | NO. 2662-N |
| | : | |
| THE END OF THE ROAD TRUST AND | : | |
| AMERICAN TRAILER INDUSTRIES, INC. | : | |
| | : | |
| Respondents. | : | |

## PETITION FOR ADVANCEMENT AND INDEMNIFICATION

1.    Petitioner Chriss W. Street ("Street") is a citizen of the state of California who is the former Trustee of The End of the Road Trust and the former Chairman of the Board ("COB") and Chief Executive Officer ("CEO") of American Trailer Industries, Inc. Street is currently the treasurer of Orange County California.

2.    Respondent The End of the Road Trust ("EORT") is a Trust organized under the laws of Delaware to hold the former assets of the Fruehauf Trailer Corporation ("Fruehauf").

3.    Respondent American Trailer Industries, Inc. ("ATII") is a Delaware Corporation owned by EORT which was originally named Frudemex, Inc. ("Frudemex"). Frudemex owns, among other things, all of the stock of Fruehauf de Mexico ("FdM"), a former subsidiary of Fruehauf. Frudemex changed its name to ATII in 1999.

4.    In 1998, Street entered into a contract under which he became the Trustee of EORT (the "Trustee"). (A copy of Street's employment agreement with EORT (the "EORT

Agreement") is attached hereto as Exhibit A). Street remained as Trustee until August 1, 2005 at which time he was replaced as Trustee by Daniel Harrow ("Harrow), a citizen of California.

     5.     In 1998, Street also entered into a contract with Frudemex under which he became the COB and CEO of Frudemex. (A copy of Street's employment agreement with Frudemex/ATII (the "Frudemex/ATII Agreement") is attached hereto as Exhibit B.) Street remained as the CEO and COB of Frudemex/ATII until August of 2005 when he resigned from his positions at ATII.

     6.     Section 5 of both the EORT Agreement and the Frudemex/ATII Agreement contain broad indemnification and advancement provisions that are functionally identical. (*See* Exhibit A at Section 5; Exhibit B at Section 5.)

     7.     In November of 2005 EORT sought permission from the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") to take discovery of Street pursuant to Bankruptcy Rule 2004. The purpose of the discovery was to investigate the conduct of the now former trustee, Street. An agreed upon order was entered by the Bankruptcy Court on December 2, 2005 (the "2004 Order" a copy of which is attached hereto as Exhibit C).

     8.     Pursuant to the 2004 Order, EORT issued a subpoena upon Street which called for extensive document discovery and a deposition of Street.

     9.     Despite the fact that he lives in Newport Beach, CA, EORT insisted that the deposition take place in San Diego – almost 100 miles from Street's residence -- rather than Los Angeles where EORT's counsel also maintained an office.

     10.     Street produced documents and appeared for his deposition in San Diego despite the fact that it was anything but convenient for him.

#8245112 v1

11.    Subsequent to this discovery, EORT insisted on additional discovery purportedly pursuant to the 2004 Order. That lead to extended negotiations and culminated in an ill advised motion for contempt against Street which was readily denied by the Bankruptcy Court. However, Street agreed to appear for additional deposition time which became the subject of another agreed upon order.

12.    Throughout this process, EORT has repeatedly threatened to sue Street for what it describes as malfeasance in office.

13.    Street has also been subject to an investigation, beginning in July of 2001, by the Department of Labor in connection with transactions between entities owned or controlled by EORT and an entity owned by a pension plan associated with EORT.

14.    In addition, Street was named as a defendant in a suit brought by creditors of Dorsey Trailer Company ("Dorsey"). Dorsey was owned by the pension plan referred to in Paragraph 13 above. Street was appointed to the board of Dorsey on behalf of EORT.

COUNT I

15.    Street repeats and realleges the allegations of paragraphs 1-14 as if fully set out herein.

16.    Both the EORT Employment Agreement and the Frudemex/ATII Employment Agreement contain broad indemnity and advancement provisions. More specifically, the agreements provide that Street is entitled to indemnification for: "[A]ll liabilities … incurred by Street in connection with any action, suit, proceeding or investigation arising out of or relating to the performance by Street of services for , or acting as trustee or in any other capacity on behalf of the Trust..." (Exhibit A, Section 5; *compare* Exhibit B, Section 5.) The agreements also provide that: "Expenses (including attorney's fees) incurred by Street in defending any civil, criminal, administrative or investigative action, suit or proceeding shall be

#8245112 v1

paid by the Trust in advance of the final disposition of said action, suit, or proceeding upon receipt of an undertaking by Street to repay such amount if it shall ultimately be determined by a court of competent jurisdiction that Street is not entitled to be indemnified by the Trust…" (Exhibit A, Section 5; *compare* Exhibit B, Section 5.)

17.    The investigation of Street by EORT is clearly an investigative action within the express terms of the indemnification provisions in the EORT Agreement. Consequently, Street is entitled to advancement for his attorney's fees so long as he has provided EORT with the undertaking required by the EORT Agreement.

18.    During the investigation of Street by EORT, EORT's counsel also undertook to investigate Street's conduct with respect to Frudemex/ATII – an entity owned by EORT.  Consequently, the EORT investigation of Street constituted an investigative action within the express terms of the indemnification provisions of the Frudemex/ATII Agreement.

19.    In February of 2006, Street sent Harrow, in his capacity as trustee of EORT, an undertaking that complies with the terms of the EORT Agreement.  (A copy of the EORT undertaking is included in Exhibit D.)  In February of 2006, Street sent ATII an undertaking that complies with the terms of the ATII Agreement. (A copy of the ATII undertaking is included in Exhibit D.)

20.    On March 17, 2006, Street sent Harrow a demand for advancement to cover his liabilities arising out of the EORT and ATII investigations. (A copy of the 2006 Demand is attached hereto as Exhibit E.)

21.    On March 31, 2006 counsel for EORT and ATII denied Street's demand for advancement (the "Denial Letter").  (*See*, Exhibit F hereto.)

-4-

22.    The Denial Letter confuses the right to advancement with the right to indemnity and asserts that Street is not entitled to advancement because he has not provided proof of any indemnifiable expenses.

23.    In April of 2006 when counsel for EORT was demanding additional depositions of Street, Counsel for Street inquired whether EORT would advance Street funds to cover his attorney's fees in connection with such depositions.  Counsel for EORT declined advancement citing the Denial Letter.

24.    On December 28, 2006, Street sent Harrow a demand letter (the December EORT Demand) seeking advancement of his attorneys fees incurred to date in the EORT investigation, the Department of Labor investigation and the Dorsey suit.  The December EORT Demand included copies of the bills received by Street on which the demand was made together with another undertaking which complies with the terms of the EORT Agreement.

25.    On December 28, 2006, Street sent ATII a demand letter (the December ATII Demand) seeking advancement of his attorney's fees incurred to date.  The December ATII Demand included copies of the bills received by Street on which the demand was made together with an undertaking which complies with the terms of the ATII Agreement.  (*See*, Exhibit F hereto.)

26.    Street has not received any response to the December EORT Demand or the December ATII Demand, but based upon EORT's and ATII's conduct in connection with past demands, Street does not expect a different result.

-5-

## COUNT II

27.    Street repeats and realleges the allegations of Paragraphs 1 through 26 as if fully set out herein.

28.    The EORT Agreement and the ATII Agreement provide, among other things, for indemnification of Street's liabilities incurred in connection with any action, suit, investigation or proceeding arising out of or relating to the services provided by Street to or on behalf of EORT or ATII.

29.    Street's liability for attorneys fees and the costs of this action were incurred in connection with investigations and a suit arising out of his provision of services to or on behalf of EORT or ATII.

30.    Under established precedents of this State, if successful, Street is entitled to indemnification for his costs and fees incurred in connection with this action without regard to the ultimate outcome of the underlying investigations and suit on which this action is based.

WHEREFORE Street asks that this Court:

a.    Enter judgment in favor of Street and against the End of the Road Trust and American Trailer Industries, Inc. for advancement of fees and costs in an amount to be determined by the Court subject to Street's obligation to repay if a court of competent jurisdiction ultimately determines that Street is not entitled to indemnity for these liabilities;

b.    Enter judgment in favor of Street and against the End of the Road Trust and American Trailer Industries, Inc. in an amount to be determined by the Court as indemnity for Street's costs and fees in bringing this action;

#8245112 v1

c.    Award Street prejudgment interest against the End of the Road

Trust and American Trailer Industries, Inc. from the time that he incurred liabilities in

connection with the investigations and suit underlying this action; and

d.    Grant Street such other and further relief as this Court deems just.

Dated:  January 9, 2007

Edmond D. Johnson (Del. Bar No. 2257)
Phillip T. Mellet (Del. Bar. No. 4741)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE   19899-1709
(302) 777-6500

-And-

Neil B. Glassman (Del. Bar No. 2087)
Peter B. Ladig (Del. Bar No. 3513)
The Bayard Firm
222 Delaware Avenue
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000

Attorneys for Chriss W. Street

EXHIBIT "B"

CR LENDERS                9165041900          10719   70 13.20 no.730   0.120 3/   .1120 31

**FA #** 371

FILED
in the office of the Secretary of State
of the State of California

NOV   6 1996

BILL JONES Secretary of State

STATEMENT AND DESIGNATION
BY
FOREIGN ASSOCIATION

The End of the Road Trust

_____
(Name of Association)

a business trust organized and existing under the laws of   Delaware
                                        (State or Place of Organization)

makes the following statements and designation:

1.  The address of its principal executive office is   1111 Bayside Drive, Suite 160,

Corona del Mar, California 92625-1755                                          .
        (Insert complete address of principal executive office wherever located.)
                    DO NOT USE POST OFFICE BOX

2.  The address of its principal office in the State of California is   1111 Bayside

Drive, Suite 160, Corona del Mar, California 92625-1755                        .
            (Insert complete address of principal office in California.)
                    DO NOT USE POST OFFICE BOX

DESIGNATION OF AGENT FOR SERVICE OF PROCESS WITHIN THE STATE OF CALIFORNIA

3.  (Use this paragraph if the process agent is a natural person.)

_____

a   natural   person   residing   in   the   State   of   California,   whose   complete   address   is

_____

_____

DO NOT USE POST OFFICE BOX

is   designated   as   its   agent   upon   whom   process   directed   to   the   association   may   be
served within the State of California in the manner provided by law.

4.  (Use this paragraph if the process agent is a corporation.   See instructions.)

_____United Corporate Services, Inc._____, a corporation organized

and existing under the laws of _____California_____ is   designated   as
agent upon whom process directed to the undersigned association may be served within
the State of California, in the manner provided by law.

NOTE:  Before it may be designated by any foreign association as its agent for
        service of process, a corporate agent must comply with Section 1505,
        California Corporations Code. (See Instruction 2.)

(FORM TO BE COMPLETED ON REVERSE SIDE)

CA LENDERS              9165647900          10/19 '98 13:20 NO.522  03/03

5. The undersigned association hereby irrevocably consents to service of process directed to it upon the agent designated above, and to service of process on the Secretary of State of the State of California if the agent so designated or the agent's successor is no longer authorized to act or cannot be found at the address given.

The End of the Road Trust
(Name of Association)

By _____
(Signature of Officer)

Chriss W. Street, sole trustee
(Typed Name and Title of Officer Signing)

NOTE: The Officers' Certificate must be signed by two of the Trustees, OR by the Chairman of the Board, President or any Vice-President and the Secretary, Chief Financial Officer, Treasurer, Assistant Secretary or Assistant Treasurer.

OFFICERS' CERTIFICATE

Chriss W. Street, sole trustee       and _____

he is the sole trustee
declare under penalty of perjury that they are the two trustees of   The End of

the Road Trust _____

which is a validly organized and existing business association and is organized as a

trust under the laws of  Delaware _____

Executed at  Carmichael Mar Culleson  on  10/19/98
            (City and State)                      (Date)

(SIGNED) _____
         Chriss W. Street, sole trustee

(SIGNED) _____

INSTRUCTIONS:

1. If an association is required to qualify under a D.B.A. (name other than the true association name) pursuant to Section 2106(b), California Corporations Code (CCC), then in the first line of this statement set out the correct association name, followed by "which will do business in California as _____," setting forth the D.B.A. in the space indicated. The D.B.A. should not be set out in connection with the association name anywhere else in the statement.

2. No domestic or foreign corporation may be designated as agent for service of process unless it has filed with the Secretary of State the certificate provided for by Section 1505, CCC.

3. If the association changes its name or if there are any changes in the information contained in this statement, then the association must file an Amended Statement and Designation by Foreign Association. A form may be obtained from the Secretary of State.

4. The fee for filing a Statement and Designation by Foreign Association is $330.00.

# EXHIBIT "C"

# State of Delaware - Annual Franchise Tax Report

| FILE NUMBER | CORPORATION NAME | | | | TAX YR. | PHONE NUMBER |
|---|---|---|---|---|---|---|
| 3104967 | AMERICAN TRAILER INDUSTRIES, INC. | | | | 2005 | |

| FEDERAL EMPLOYER ID NO. | INCORPORATION DATE | RENEWAL/REVOCATION DATE | DATE OF INACTIVITY | | | |
|---|---|---|---|---|---|---|
| | 1999/09/30 | 2005/02/16 | | | | |

| FRANCHISE TAX | $50.00 PENALTY | 1.5% MONTHLY INTEREST | ANNUAL FILING FEE | PREV CREDIT OR BALANCE | PREPAID QRTY. PAYMENTS |
|---|---|---|---|---|---|
| 35.00 | 0.00 | 0.00 | 25.00 | 0.00 | 0.00 |

| NATURE OF BUSINESS | AMOUNT DUE | AMOUNT PAID |
|---|---|---|
| To conduct or  engage in any lawful busi | 60.00 | 60.00 |

| PRINCIPAL PLACE OF BUSINESS OUTSIDE OF DELAWARE |
|---|
| 11766 Wilshire Blvd Suite 870 Los Angeles CA 90025 USA |

| AUTHORIZED BY (OFFICER, DIRECTOR OR INCORPORATOR) | TITLE | DATE |
|---|---|---|
| Daniel W. Harrow | Trustee | 2006-02-27 |

| REGISTERED AGENT | | | ASSETS FOR REGULATED INVESTMENT CORPS | JAN. 1st. | DEC. 31st. |
|---|---|---|---|---|---|
| 9000014 | 302/636-5401 | 302/636-5454 | | | |

CORPORATION SERVICE COMPANY
2711 CENTERVILLE ROAD
SUITE 400

WILMINGTON                DE  19808

| AUTHORIZED STOCK BEGIN DATE END DATE | DESIGNATION/ STOCK CLASS | NO. OF SHARES | PAR VALUE/ SHARE | NO. SHARES ISSUED | TOTAL GROSS ASSETS | ASSET DATE |
|---|---|---|---|---|---|---|
| 05/09/23 | COMMON | 3,000 | .001000 | | | |
| 99/09/30 05/09/23 | COMMON | 3,000 | .010000 | | | |

| OFFICER/DIRECTOR | NAME | STREET/CITY/STATE/ZIP | DATE TERM EXPIRES |
|---|---|---|---|
| Dir Daniel W. Harrow | | | |
| 11766 Wilshire Blvd. Suite 870 Los Angeles CA 900250000 | | | 2999/12/31 |
| Officer Daniel W. Harrow | | | |
| 11766 Wilshire Blvd. Suite 870 Los Angeles CA 900250000 | | | 2999/12/31 |

# EXHIBIT "D"

08/01/2006 11:01 FAX                                                                  ☑001/001

May 31, 2006

United States Bankruptcy Court
District of Delaware
Attn: Honorable Judge Peter J. Walsh
824 Market Street
Wilmington, Delaware 19801

VIA FACSIMILE: (302) 573-6014

RE: Objection to Entry of Order
    Case No. 96-1563

Your Honor:

I am a multiply disabled person and have requested assistance and accommodation under
ADA Title II with your court. I respectfully wish to exercise my right as an
accommodation to fax file this document with the court.

I wish to formally submit an Objection to Entry of Order in the matter of Fruehauf Trailer
Corporation, et al., Case No. 96-1563. According to the attorney's representing this
Debtors, Rosenthal, Monhait & Goddess I am to submit an objection as a creditor by 4pm
EST, on or before June 1, 2006. This letter is to serve as my objection.

Sincerely,

Alan Brody, Creditor


Cc/ Rosenthal, Monhait & Goddess

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

IN RE:                                          )     Jointly Administered
                                                )
FRUEHAUF TRAILER CORPORATION,                   )     Case no. 96-1563 (PJW)
et al.,                                         )
                Debtors.                        )     Chapter 11
                                                )
                                                )     Re: D.I. 1872

## NOTICE OF AGENDA OF MATTERS
## SCHEDULED FOR HEARING ON JUNE 8, 2006 AT 2:00 P.M.[1]

MATTER GOING FORWARD

1.   Motion By The Trust Advisory Committee Of The End Of The Road Trust For An
     Order Authorizing Amendment To Compensation Terms For Mr. Daniel W. Harrow,
     The Successor Trustee, *Nunc Pro Tunc* to May 1, 2006. (D.I. 1872, filed May 4,
     2006.)

     Related Documents:          Declaration Of Jeffrey S. Goddess. (D.I. 1873, filed
                                 May 4, 2006.) (At Tab 2.)

     Objection Deadline:         June 1, 2006 at 4:00 P.M. EST.

     Objection Received:         Objection from Alan Brody, Creditor (*pro se*).
                                 (D.I. 1876, filed June 1, 2006.) (At Tab 3.)

Dkt. No. 1877
Filed 6-5-06

---

[1]The hearing will be held at the United States Bankruptcy Court for the District of
Delaware, 824 Market Street, 6th Floor, Courtroom #2, Wilmington, DE 19801.

Status:                     Matter going forward.

_____
Jeffrey S. Goddess (Del. Bar No. 630)
Rosenthal, Monhait & Goddess, P.A.
Suite 1401, 919 Market Street
P. O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
 Attorneys for the Trust Advisory
Committee of The End of the Road Trust
as successor to Debtors and Debtors in
Possession

## CERTIFICATE OF SERVICE

I, Jeffrey S. Goddess, hereby certify that on June 5, 2006, I electronically filed the foregoing

**NOTICE OF AGENDA OF MATTERS SCHEDULED FOR HEARING ON JUNE 8, 2006 AT**

**2:00 P.M.** with the Clerk of the Court using CM/ECF which will send notification of such filing to

all registered participants. I further certify that I caused a copy of the foregoing document to be

served via first class mail upon the persons appearing on the attached service list:

Jeffrey S. Goddess (Del. Bar No. 630)
jgoddess@rmgglaw.com
(302) 656-4433

## FRUEHAUF 2002 SERVICE LIST

### Via First Class Mail

Neil B. Glassman, Esquire
Michael L. Vild, Esquire
Edmond D. Johnson, Esquire
The Bayard Firm
222 Delaware Avenue #900
PO Box 25130
Wilmington, DE 19899

Jennifer Bebko Jauffret, Esquire
Richards Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, DE 19899

Julianne E. Hammond, Esquire
Blank Rome Comisky & McCauley LLP
1201 N. Market Street #2100
Wilmington, DE 19801

William P. Bowden, Esquire
Ashby & Geddes
222 Delaware Avenue, 17th Fl.
P. O. Box 1150
Wilmington, DE 19899

Laura Davis Jones, Esquire
Pachulski Stang Ziehl Young
Jones & Weintraub
919 N. Market Street #1700
P. O. Box 8705
Wilmington, DE 19899

David L. Buchbinder, Esquire
Office of the U.S. Trustee
Federal Building
844 King Street #2313
Wilmington, DE 19801

John D. Mattey, Esquire
Ferry Joseph & Fink PA
824 N. Market Street #904
P. O. Box 1351
Wilmington, DE 19899

Edward P. Carney
IKON
901 N. Market Street #718
Wilmington, DE 19801

Francis A. Monaco, Jr., Esq.
Monzack and Monaco, P.A.
1201 N. Orange Street #400
P. O. Box 2031
Wilmington, DE 19899

Teresa KD Currier, Esquire
Katherine R. Witherspoon, Esquire
Klett Rooney
1000 West Street #1410
P. O. Box 1397
Wilmington, DE 19899

John D. Demmy, Esquire
Stevens and Lee, P.C.
1105 N. Market Street, 7th Fl.
Wilmington, DE 19801

James F. Bailey, Jr., Esquire
James F. Bailey & Associates
3 Mill Road #306A
Wilmington, DE 19806

David Fournier, Esquire
Pepper Hamilton LLP
1313 Market Street #5100
P. O. Box 1709
Wilmington, DE 19899

Norman L. Pernick, Esquire
Saul Ewing LLP
222 Delaware Avenue #1200
P. O. Box 1266
Wilmington, DE 19899

Laurie Selber Silverstein, Esq.
Potter Anderson & Corroon
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899

Ellen W. Slights, Esquire
Assistant U.S. Attorney
1007 Orange Street #700
P. O. Box 2046
Wilmington, DE 19899

Bayard J. Snyder, Esquire
Snyder & Associates, PA
300 Delaware Avenue #1014
P. O. Box 90
Wilmington, DE 19899

Al Brody
P. O. Box 6191
Folsom, CA 95763

Lisa B. Beckerman, Esquire
Stroock Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038

Toni Beckley
The Goodyear Tire & Rubber Co.
1144 E. Market Street
Dept. 602
Akron, OH 44316

Seyfarth Shaw LLP
55 E. Monroe Street #4200
Chicago, IL 60603

Woodson Bowe, V.P.
Southern Fabricators Inc.
P. O. Box 97
Polkton, NC 28135

Laura J. Campbell, Esquire
International Union UAW
8000 E. Jefferson Ave.
Detroit, MI 48214

John J. Chitkowski, Esquire
Chitkowski Law Offices
801 Warrenville Road #620
Lisle, IL 60532

Marilyn B. Cohn
c/o Lawson Products Inc. Georgia
1666 E. Trouhy Avenue
Des Plaines, IL 60018

Robert A. Eberle, Esquire
Jubelirer Pass & Intrieri
219 Fort Pitt Bldv.
Pittsburgh, PA 15222

Jeffrey B. Ellman, Esquire
Jones Day Reavis & Pogue
325 John H. McConnell Blvd. #600
Columbus, OH 43215

Gilson B. Gray, Esquire
Hughes Hubbard & Reed LLP
One Battery Park Plaza, 12th Fl.
New York, NY 10004

Walter D. Jannell, V.P.
Le Clerc Inc.
28 Palm Beach Ave.
Narragansett, RI 02882

Kenneth L. Kessler
Management Systems
3200 Ruan Center
666 Grand Avenue
Des Moines, IA 50309

Heather Lennox Esquire
Jones Day Reavis & Pogue
901 Lakeside Avenue
Cleveland, OH 44114

Anthony A. Longnecker, Esq.
Nyemaster Goode Voights West
 Hansell & O'Brien
700 Walnut #1600
Des Moines, IA 50309

Russell L. Munsch, Esquire
Munsch Hardt Kopf Harr
 & Dinan PC
4000 Fountain Place
1445 Ross Avenue
Dallas, TX 75202

John D. Penn, Esquire
Haynes and Boone LLP
201 Maine Street #2200
Ft. Worth, TX 76102

Robin E. Phelan, Esquire
Haynes and Boone, LLP
3100 Nationsbank Plaza
901 Main Street
Dallas, TX 75202

Jacob Pollock, President
Decatur Aluminum Corp.
861 E. Tallmadge Ave.
P. O. Box 4810
Akron, OH 44310

Bill Reimann
The Airlie Group
Texas Commerce Bank Towers
201 Main Street #3200
Ft. Worth, TX 76102

Aluminum Company of America
One Customer Plaza
Danville, IL 61834

Jonathan E. Scharff, Esquire
Harris Shelton Dunlap and Cobb LLPC
One Commerce Center #2700
Memphis, TN 38103

Laurence Z. Shiekman, Esq.
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103

Arthur A. Stewart, Esquire
Hughes & Luce LLP
1717 Main Street
Dallas, TX 75201

Marc A. Tenenbaum, Esquire
Pension Benefit Guaranty Corp.
Office of General Counsel
1200 K. Street NW
Washington, DC 20005

Robert Usadi, Esquire
Cahill Gordon & Reindel
80 Pine Street
New York, NY 10005

Jonathan Walters, Esquire
Markowitz & Richmond
1100 N. American Building
121 South Broad Street
Philadelphia, PA 19107

Joel B. Zweibel, Esquire
O'Melveny & Myers
Citicorp Center - 54th Fl.
153 East 53rd Street
New York, NY 10022

End of the Road Trust
Mr. Daniel Harrow
c/o Janet Dean Gertz, Esq.
Baker & McKenzie LLP
101 West Broadway, 12th Fl.
San Diego, CA 92101

Chriss Street & Co.
1111 Bayside Drive #100
Corona Del Mar, CA 92625

Charles D. Willmott, President
6829 Elm Street #203
McLean, VA 22101

**File a Notice:**
96-01563-PJW FRUEHAUF TRAILER CORPORATION

### U.S. Bankruptcy Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Goddess, Jeffrey S. entered on 6/5/2006 at 3:21 PM EDT and filed on 6/5/2006
**Case Name:**    FRUEHAUF TRAILER CORPORATION
**Case Number:**    96-01563-PJW
**Document Number:** 1877

**Docket Text:**
Notice of Agenda of Matters Scheduled for Hearing *June 8, 2006 at 2:00 p.m.* (related document(s) [1872] ) Filed by Trust Advisory Committee of the End of the Road Trust. Hearing scheduled for 6/8/2006 at 02:00 PM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #2, Wilmington, Delaware. Objections due by 6/1/2006. (Goddess, Jeffrey)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**G:\CMS\e-filings\fruehauf notice of agenda.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=6/5/2006] [FileNumber=4965804-0]
[6a9e392d97eb110fe32d91549cd8247c9fab418e7d013602c1642a04334c96e66dcb1
d7e8e99aeddd5a0096ef5f97124aa3b1f642a7bbb45f00a97d937dfef37]]

**96-01563-PJW Notice will be electronically mailed to:**

Derek C. Abbott    dabbott@mnat.com

Mary E. Augustine    bankserve@bayardfirm.com, maugustine@bayardfirm.com

James F. Bailey    jbailey@jfbailey.com, jtravers@jfbailey.com

William Pierce Bowden    wbowden@ashby-geddes.com

Stuart M. Brown    sbrown@eapdlaw.com, DEbankruptcy@eapdlaw.com

David L. Buchbinder    david.l.buchbinder@usdoj.gov, david.l.buchbinder@usdoj.gov

Linda Marie Carmichael    carmichaell@whiteandwilliams.com, debankruptcy@whiteandwilliams.com

Marc Stephen Casarino    casarinom@whiteandwilliams.com, debankruptcy@whiteandwilliams.com

Janet D. Gertz    janet.d.gertz@bakernet.com,

Jeffrey S. Goddess    jgoddess@rmgglaw.com,

Margaret M. Manning    manningmm@bipc.com

Michael Joseph Merchant    merchant@rlf.com, rbgroup@rlf.com

Curtis S. Miller    cmiller@mnat.com,

Ali M.M. Mojdehi    ali.m.m.mojdehi@bakernet.com,

Gilbert R. Saydah    gsaydah@mnat.com,

Gilbert R. Saydah    gsaydah@mnat.com, rfusco@mnat.com

Ashley B. Stitzer    bankserve@bayardfirm.com, astitzer@bayardfirm.com

William H. Sudell    wsudell@mnat.com

**96-01563-PJW Notice will not be electronically mailed to:**

Jennifer C Bebko
Richards Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

Michael L. Bernstein
Arnold & Porter LLP
555 Twelfth Street, N.W.
Washington, DC 20004

Alan Brody
,

Gregory Thomas Donilon
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
gdonilon@mnat.com,
aconway@mnat.com;vglaser@stroock.com;rparra@stroock.com;cdonoho@stroock.com;sstutman@stroc

Dun & Bradstreet
RMS Bankruptcy Recovery Services
9690 Deereco Road, Suite 200
Timonium, MD 21093

Barbara J. Gadbois
Law Offices of Peter G. Angelos
1300 N. Market Street
Suite 212
Wilmington, DE 19801

SUSAN G. HARRON
WHITE AND WILLIAMS LLP

824 MARKET ST., SUITE 902
WILMINGTON, DE 19801

NATIONAL UNION FIRE INSURANCE CO. OF PIT
Bailey & Associates
Three Mill Road
Suite 306A
Wilmington, DE 19806

Christopher S. Rhee
Arnold & Porter LLP
555 Twelfth Street, N.W.
Washington, DC 20004

Skadden, Arps, Slate, Meagher & Flom LLP

,

Michael L. Vild
The Bayard Firm
222 Delaware Avenue
Suite 900
Wilmington, DE 19899

Katherine Witherspoon
Klett Lieber Rooney & Schorling
P.O. BOX 1397
WILMINGTON, DE 19801

# EXHIBIT "E"

State of Delaware
Secretary of State
Division of Corporations
Delivered 06:34 PM 09/23/2005
FILED 06:12 PM 09/23/2005
SRV 050783344 - 3104967 FILE

# RESTATED CERTIFICATE OF INCORPORATION
## OF
## AMERICAN TRAILER INDUSTRIES, INC.

American Trailer Industries, Inc., a corporation organized and existing under the General Corporation Law of the State of Delaware, hereby certifies as follows:

1. The name of the corporation is American Trailer Industries, Inc. American Trailer Industries, Inc. was originally incorporated under the name, FDM, Inc., and the original Certificate of Incorporation of this corporation was filed with the Secretary of State of the State of Delaware on September 30, 1999.

2. Pursuant to Sections 242 and 245 of the General Corporation Law of the State of Delaware, this Restated Certificate of Incorporation restates and integrates and further amends the provisions of the Certificate of Incorporation of this corporation.

3. On September 2, 2005, the Board of Directors of this corporation approved by written consent, the following restatement, integration and further amendment to the Certificate of Incorporation of this corporation.

4. On September 2, 2005, the sole stockholder of this corporation approved by written consent, the following restatement, integration and further amendment to the Certificate of Incorporation of this corporation.

## ARTICLE I

The name of the corporation is American Trailer Industries, Inc. (hereinafter referred to as the "Corporation").

## ARTICLE II

The address of the Corporation's registered office in the State of Delaware is 2711 Centerville Road, Suite 400, City of Wilmington, County of New Castle, Delaware 19808. The name of its registered agent at such address is Corporation Service Company.

## ARTICLE III

The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

## ARTICLE IV

The total number of shares, which the Corporation shall have authority to issue is Three Thousand (3,000) shares of capital stock, to be designated as Common Stock, and the par value of each such share is $0.001 par value.

## ARTICLE V

Elections of directors of the Corporation need not be by written ballot except and to the extent provided in the bylaws of the Corporation.

## ARTICLE VI

In furtherance and not in limitation of the powers conferred by statute, the Board of Directors of the Corporation is expressly authorized to make, alter, amend, rescind or repeal the bylaws of the Corporation, but the stockholders may make additional bylaws and may alter or repeal any bylaws whether adopted by them or otherwise.

## ARTICLE VII

The Corporation shall indemnify to the fullest extent permitted by the General Corporation Law of Delaware any person who has been made, or is threatened to be made, a party to an action, suit or proceeding, whether civil, criminal, administrative, investigative, or otherwise (including an action, suit or proceeding by or in the right of the Corporation), by reason of the fact that the person is or was a director or officer of the Corporation, or a fiduciary within the meaning of the Employee Retirement Income Security Act of 1974 with respect to an employee benefit plan of the Corporation, or serves or served at the request of the Corporation as a director, or as an officer, or as a fiduciary of an employee benefit plan, of another corporation, partnership, joint venture, trust or other enterprise. In addition, the Corporation shall pay for or reimburse any expenses incurred by such persons who are parties to such proceedings, in advance of the final disposition of such proceedings, to the full extent permitted by the General Corporation Law of Delaware.

## ARTICLE VIII

The Corporation shall not be subject to the provisions of Section 203 of the Delaware General Corporation Law.

## ARTICLE IX

No director of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for conduct as a director; provided that this Article shall not eliminate the liability of a director for any act or omission for which such elimination of liability is not permitted under the General Corporation Law of Delaware. No amendment to that Act, or repeal or modification of this provision by the stockholders of the Corporation, that further limits the acts or omissions for which elimination of liability is permitted shall affect the liability of a director for any act or mission, which occurs prior to the effective date of such amendment, repeal or modification.

## [REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, this Restated Certificate of Incorporation of American Trailer Industries, Inc. has been executed by Daniel W. Harrow, its duly authorized officer this 2nd day of September, 2005.

Daniel W. Harrow, President

**[SIGNATURE PAGE TO THE
RESTATED CERTIFICATE OF INCORPORATION
OF AMERICAN TRAILER INDUSTRIES, INC.]**

# EXHIBIT "F"

**American Trailer Industries, Inc.**
**11766 Wilshire Blvd.**
**Suite 870**
**Los Angeles, CA 90025**

February 19, 2006

Mr. Myung Yi                                                      Via Telecopy and U.S. Mail
FdM U.S. Buyer, LLC
c/o 2 Bethesda Metro Center
14th Floor
Bethesda, MD 20814
Telecopy No. (301) 654-7749

Dear Myung:

I am writing because I feel that a comprehensive, formal response is necessary in light of your emails to me dated February 12, 2006 and February 18, 2006. A copy of your e-mail to me dated February 12, 2006 is attached as Exhibit "A" to this letter. A copy of your e-mail dated February 16, 2006 is attached as Exhibit "B" to this letter.

Myung, throughout the process of endeavoring to negotiate a definitive agreement with you for the sale of the Fruehauf de Mexico entity to American Capital Strategies, Ltd./FdM U.S. Buyer, LLC (herein referred to collectively as "Buyer" or "American Capital"), I have sought to be forthright and to operate in the utmost good faith towards both you and your colleagues at American Capital. As such, I feel it is important to set forth some of my thoughts and concerns regarding the current status of the negotiations concerning the sale of the Fruehauf de Mexico entity.

As you know, due to unexpected difficulties that arose with respect to Mexican income taxes, American Capital refused to Close on or before the original Outside Date of December 30, 2005 under the Stock Purchase Agreement between Buyer and American Trailer Industries, Inc. dated December 20, 2005 ("Agreement"). The parties proceeded under the premise that they would work together cooperatively to endeavor to find a mutually acceptable workaround to these difficulties.

Your February 12 e-mail, however, reflects a less cooperative approach. You there suggest that I should encourage the Trust Advisory Committee to approve of a sale structure for the Fruehauf de Mexico entity under which "the [Mexican income] tax bill [would] go away." Specifically, you proposed the funding of a short-term loan by the Trust Advisory Committee members' companies' investment capital, in an amount you suggest would be specifically designed to "make everyone comfortable" with the "tax structure." You then concluded this e-mail by stating that, if I was unwilling to proceed with this questionable plan, your "senior management would start pressuring [you] to do undesirable things." You then prompted me to "please work with me to get this done."

Although the Company's Mexican counsel has suggested that there may be creative ways to structure a mutually agreeable alternative transaction, this suggestion was subject to the strict

SDODMS1/658313 7

proviso that any such transaction would be fully transparent and, as such, would be approved by a court order. Notwithstanding, you have recently communicated to me in no uncertain terms that it is American Capital's desire that any such transaction be "kept off the radar screen," of the Mexican authorities, *i.e.*, concealed. Indeed, I am not "comfortable" with a concealed transaction, nor am I comfortable with your request that I place pressure on the Trust Advisory Committee members to fund such a transaction. In light of this, Seller regrets to inform you that it will be unable to entertain your suggested alternative strategy.

In light of the foregoing, this is a turning point. I believe it is therefore essential to set forth in writing what I believe to be the foundational principles that govern the parties' current relationship, as they are presently defined under the Stock Purchase Agreement dated December 20, 2005, the court order dated December 28, 2005, and the Liquidating Trust Agreement dated October 28, 1998.

Briefly, the Agreement provides for: (i) conditions that must be performed by each party prior to the Close, (ii) a mutual termination provision for failure of these conditions, (iii) a limitation of all remedies at law, except for that of termination, and (iv) a limited equitable remedy of specific performance/injunctive relief for breach of selected provisions of the Agreement, notably, the Post-Closing Covenants. In light of this basic structure, and under the present facts and circumstances, it is my conclusion that the parties are left with termination of the Agreement.

1.     **Tax Basis Determination**

First, as stated above, extraordinary unforeseen events have prevented Seller from making its necessary establishment and election of a tax basis for the transactions. As you know, the parties each entered into the transactions contemplated under the Agreement premised on the critical assumption that *no* Mexican income taxes were to be payable on the transaction under any circumstances. This expectation and material inducement for the transactions was memorialized in Section 4.3(i)(i) of the Agreement:

> Seller has provided the applicable information, *as determined by Buyer*, necessary for calculation of the tax basis on the Shares to the Mexican taxing authorities for purposes of demonstrating the forecasted capital gains taxes on the transaction hereunder and such calculation reflects *no capital gains taxes are or shall be payable on the transactions hereunder*.

The Agreement speaks for itself: the non-liability for Mexican income tax was a *material assumption and a material part of the bargained for consideration* of the Agreement. As such, if this assumption fails, the Agreement fails. Even assuming *arguendo* the Agreement does not fail, under such circumstances its performance cannot be specifically enforced

As you know, it was only shortly before the transactions were originally scheduled to close in late December that, contrary to the parties' expectations, the parties first became aware that there may be some insuperable difficulties with arriving at a calculation for the applicable tax basis for the shares of Fruehauf de Mexico on or before the Outside Date of December 30, 2005. As such, the Buyer refused to Close on or before the original Outside Date. The Agreement had thus lapsed, but the Seller, in good faith, indicated its willingness to execute an amendment to extended the Outside Date for the purpose of enabling the parties to work through a resolution that would eliminate the tax liability. The Seller again, in good faith and for the purpose of endeavoring to find a way to eliminate the tax liability, agreed to execute a second amendment extending the Outside Date to February 28, 2006.

Only recently has it come to light that it is presently impossible to calculate this tax basis and that a resolution to this dilemma cannot be arrived at quickly. As I have recently informed you, due to the gross neglect and extraordinary dereliction of duty by the former trustee, the United States Federal tax returns of the debtors (which were both required by law as well as dictated by the debtors' Plan of Reorganization to be filed by the trustee on behalf of the debtor corporations) were not filed by the former trustee, thus precluding Seller's election of a carryover basis calculation pending Seller's receipt of special relief from the United States Internal Revenue Service permitting it to establish a carryover basis. As a result, prior to receipt of this relief, the Seller cannot transfer the Stock without being burdened with an unanticipated—and totally *unnecessary*—Mexican Income Tax liability that, pursuant to the express provision of Section 4.3 of the Agreement, was never in the contemplation of the parties.

In light of this history, I respectfully suggest that for you to now assert in your e-mail of February 18 that you expect Seller to agree to your "alternate proposal by Wednesday the 22nd or you will force "Seller to "pay the associated capital gains tax," is overt bad faith and a breach of the covenant of good faith and fair dealing.[1] I would also suggest that you are overly sanguine as to American Capital's rights under the Agreement. First, as explained below, no enforceable obligations of Seller have arisen under the Agreement due to failure of conditions.

Second, assuming arguendo that any enforceable obligations have sprung into existence, the Agreement is not otherwise specifically enforceable. Courts will not enforce a bargain that is unfair, inequitable, and which will produce results not within the intent or understanding of the parties when the bargain was made. Particularly as here, where the case involves an estate in bankruptcy, if there are even *slight* circumstances suggesting that there is unfairness to the estate, a sale will not be enforced.

---

[1] I would also comment that your historical attempts to "re-trade" the business terms of this deal, as evidenced in the deal documents, reflect poorly on American Capital's approach and suggest its general sharp practices towards the Trust and lack of good faith

## 2.    Trust Advisory Committee Approval

The approval of the Trust Advisory Committee is an essential precondition to the Close. This is a result of the express language of the Agreement, the Liquidating Trust Agreement, the provisional language in the Motion under which the Bankruptcy Court Order was obtained, and the settled principle that an agreement will not be specifically enforced when made by a trustee or a fiduciary and where performance of that agreement would otherwise be a breach of trust

As you are aware, the Liquidating Trust Agreement requires that approval of the Trust Advisory Committee be obtained prior to the consummation of transactions such as those contemplated in the Agreement.[2] As evidenced in the Seller's Disclosure Schedules, to Close without such approval would be a breach of trust. Furthermore, the Court Order approving the sale was obtained based upon a representation to the Court that Committee approval would be sought and obtained on or prior to the Close.

### 2.1    *Initial Approval of the Transactions by the Committee Was Provisional*

As evidenced by the numerous e-mail traffic on this issue, you and your counsel have been on notice that the Committee's approval for the original, unamended Agreement, although signatures were obtained, was conditional and pending, and thus the delivery of the approval document was withheld as pending under the Disclosure Schedules. Approval for the original Close date of December 30, 2005 was conditional, pending the Committee's final satisfaction with the deal terms and favorable disposition of all of Seller's pre-Close conditions as follows:

- Approval was conditional on the accuracy of the Trustee's written representation to the Committee that the *net purchase price* would be $7 million U.S. Due to unforeseen extraordinary circumstances regarding Mexican income tax matters, this representation has proven to be incorrect

- Approval was contingent upon the satisfaction of all Seller contingent conditions on or before the Close. As noted below, these conditions have not been satisfied and are not waived by the Seller. See section 3 below.

### 2.2    *No Approval of the Amended Agreement*

As noted above, initial conditional approval was based upon a Close in fiscal year 2005 Buyer failed to Close by this date. In light of the fact that time is of the essence under the Agreement, any amendments to the Agreement modifying the Outside Date beyond the

---

[2] Your attorneys were specifically advised of this requirement via an email from my counsel dated November 14, 2005, accompanied by an attached copy of the Trust Agreement for their reference.

original Close date would be material and would necessarily require Trust Advisory Committee approval.[1]

Please be advised that, after a careful analysis of all the facts and circumstances, the Trust Advisory Committee is not now inclined to authorize these amendments. First, as mentioned above, the consideration for the sale is not pursuant to the Committee's approved deal terms. Second, as mentioned below, the pending investigation by the Department of Labor imposes unacceptable risk on the transactions.

### 5.    Department of Labor

As you know, American Capital has for some time expressed concern to the Seller that the pending proceeding by the Department of Labor concerning, *inter alia*, the Trust, American Trailer Industries, Inc. and Fruehauf de Mexico, may hinder or prevent the contemplated transactions. Your counsel was informed in writing on November 11, 2005 that we were only in the preliminary phases of our review of the applicable documents and that we would be able to assess the situation only after this review was complete.

As you know, throughout the parties' negotiations of the Agreement, as well as during the pre-Close period, your attorneys have had numerous discussions and have exchanged numerous e-mails with my counsel in an attempt to obtain more information on this topic. Your counsel acknowledged in writing that Fruehauf de Mexico was a party to the Department of Labor subpoena and repeatedly expressed in great detail his concern over the potential for this proceeding to hinder and/or prevent the transactions. Indeed, the language in the Agreement concerning distributions of proceeds was modified during the negotiations based on American Capital's expressed discomfort over this issue.

The four corners of the Agreement demonstrates the parties' intent that the transactions not be consummated if found to be potentially in violation of any law or in abrogation of the rights of third parties. As such, Seller expressly provided in Section 1.2(b) of the Agreement for the following pre-Close condition, to which Seller's performance under the Agreement was expressly "subject":

> Conditions to the Closing Related to Seller. Consummation
> by Seller of the transactions contemplated hereby is subject
> to the fulfillment, prior to or at the Closing, of each of the
> following conditions:
>
> . . .

---

[1] Although the Trustee had intended to obtain the approval of the Committee for these amendments, it has been futile for the Trustee to attempt do so in light of the aforesaid facts and circumstances.

(b) Litigation; Other Events  No applicable Law shall have been enacted, entered, issued, promulgated or enforced by any Governmental Entity, nor shall any Action be pending at what would otherwise be the Closing Date, which prohibits or restricts or would (if successful) prohibit or restrict the transactions contemplated by this Agreement.

"Action" is defined under Annex 1 to mean "any action, complaint, petition, suit or other proceeding, whether civil or criminal, in Law or in equity, or before any arbitrator or Governmental Entity."

The Trust has only recently completed its document review of the production in response to the Department of Labor Subpoena issued as a result of the Department of Labor proceeding. I met this week with representatives of the Department of Labor to discuss this issue. I have now reached the determination that (i) the proceeding by the Department of Labor will be pending upon what would have been the anticipated Close, (ii) the proceeding by the Department of Labor would (if successful) possibly prohibit or restrict the transactions contemplated by the Agreement, and (ii) as a result, the provisions of Section 4.4 will not be satisfied on or before the Outside Date.[1]

Therefore, you are hereby provided with written notice pursuant to the Notices provision of Section 8.1 of the Agreement that, effective immediately, the Agreement is terminated by Seller pursuant to Section 5.1(b) of the Agreement. All confidential information of the Seller and Company, as well as the Company's other property currently escrowed for Seller's benefit with American Capital's Mexican counsel, Kuri Breña (such as the Company minute books, stock certificates, corporate resolutions, books and records, etc.) are to be immediately returned to the attention of Ms. Dulce Pacheco at the Company. Furthermore, you are hereby put on notice that Seller will immediately proceed to act in accordance with its termination of the Agreement.

Note that any attempt to solicit or interfere with the contract and/or employment of the key employees of Fruehauf de Mexico related to or arising out of such termination, as was suggested in your email February 12, will be immediately referred to Seller's counsel. I would also refer you to the terms of the Confidentiality Agreement dated July 30, 2004, and I would expect you to both respect as well as abide by its terms.

In sum, the Stock Purchase Agreement dated December 20, 2005 is terminated in light of (i) the tax issue, (ii) lack of Trust Advisory Committee approval, and (iii) the Department of Labor investigation. As such, our business discussions concerning the sale of the Fruehauf

---

[1] The provisions of Section 4.3(d)(ii) of the Seller's Disclosure Schedule are hereby amended accordingly.

Mr. Myung Yi
February 19, 2006
SDODMS1/558313.7

Page 6

de Mexico entity have come to an end.  Indeed, although I regret this outcome, this step is a required exercise of my fiduciary duty under the circumstances.

Please contact me with any questions.

Sincerely,

*American Trailer Industries, Inc.*
By Daniel W. Harrow, Its President and Chairman
Trustee of the End of the Road Trust


Cc:     c/o 2 Bethesda Metro Center
        14th Floor
        Bethesda, MD  20814
        Attention: General Counsel
        Telecopy No. (301) 654-6714

and

        O.Melveny & Myers LLP
        1625 Eye Street, N.W.
        Washington, DC 20006
        Attention:  Andrew J. Varner
        Telecopy No : (202) 383-5414

and

        Rafael Gómez Vicensio
        Kuri Breña, Sánchez Ugarte, Corcuéra y Aznar, S.C
        Corporativo Punta Santa Fe Torre "B"
        Prolongación Paseo de la Reforma No. 1015, Piso 8
        Col. Desarrolla Santa Fe
        01376 México D.F
        Telecopy No.  (52-55) 5292-5928


Mr. Myung Yi
February 19, 2006
SDODMS1/658313 7

Page 7

# EXHIBIT "G"

CO.    FILE    DEPT.    CLOCK  NUMBER    070
CRG  001007              0000000256  1

# Earnings Statement



AMERICAN TRAILER INDUSTRIES, INC
1111 BAYSIDE DRIVE, SUITE 160
CORONA DEL MAR, CA 92625

Period Beginning:    01/14/2006
Period Ending:       01/27/2006
Pay Date:            01/30/2006

Taxable Marital Status: Married
Exemptions/Allowances:
    Federal:  0
    State:    0

CHRISS W STREET
25 PINEHURST LANE
NEWPORT BEACH, CA 92660

Social Security Number: XXX-XX-6511

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 9615.39 | | 61,126.27 | 61,126.27 |
| **Gross Pay** | | | **$61,126.27** | 61,126.27 |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Income Tax | -20,271.14 | 20,271.14 |
| | Social Security Tax | -3,789.83 | 3,789.83 |
| | Medicare Tax | -886.33 | 886.33 |
| | CA State Income Tax | -5,742.26 | 5,742.26 |
| | CA SUI/SDI Tax | -489.01 | 489.01 |
| | **Net Pay** | **$29,947.70** | |

Your federal taxable wages this period are
$61,126.27

© 1994 ADP, Inc.

/2007 Automatic Data Processing, Inc

TEAR HERE

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

16:49/1220

AMERICAN TRAILER INDUSTRIES, INC
1111 BAYSIDE DRIVE, SUITE 160
CORONA DEL MAR, CA 92625

Payroll check number:  00000256
Pay date:              01/30/2006

Pay to the
order of:    **CHRISS W STREET**

This amount:  TWENTY NINE THOUSAND NINE HUNDRED FORTY SEVEN AND 70/100 DOLLARS          $29947.70

UNION BANK
1090 BAYSIDE DR #02
NEWPORT BEACH, CA 92880

AUTHORIZED SIGNATURE

⑈00000256⑈ ⑆122000496⑆ 06200388830⑈

■ THE ORIGINAL DOCUMENT HAS AN ARTIFICIAL WATERMARK ON THE BACK.    HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT. ■

# EXHIBIT "H"



U.S. POSTAGE
PAID
SANTA ANA, CA
92799
JAN 31 07
AMOUNT
$4.64
0004357I-26

92650

0060

UNITED STATES POSTAL SERVICE

RETURN RECEIPT REQUESTED

7004 1350 0004 0111 2085

Employer use only
A

Control number    Dept.    Corp.
07 10/CRG

Employer's name, address, and ZIP code
AMERICAN TRAILER
INDUSTRIES INC
1111 BAYSIDE DRIVE
CORONA DEL MAR STE 160 CA 92625

Important Year-End Tax Information

TO

CHRISS W STREET
25 PINEHURST LANE
NEWPORT BEACH, CA 92660

# EXHIBIT "I"

# EMPLOYMENT AGREEMENT

EMPLOYMENT AGREEMENT (the "Agreement") made as of October 27, 1998 between THE END OF THE ROAD TRUST, Chriss W. Street, Trustee (the "Trust"), a trust created under a trust agreement dated as of October 27, 1998 ("Trust Agreement"), with its principal offices located at 1111 Bayside Drive, Suite 160, Corona del Mar, California 92625, and CHRISS W. STREET, an individual with offices located at 1111 Bayside Drive, Suite 160, Corona Del Mar, California 92625 ("Street").

## WITNESSETH:

WHEREAS, Fruehauf Trailer Corporation, a Delaware corporation ("Fruehauf Trailer"), and certain of its direct and indirect subsidiaries (collectively, the "Debtors") filed petitions for relief under Chapter 11 of the U.S. Bankruptcy Code on October 7, 1996 and have operated as debtors-in-possession from that date through the date hereof;

WHEREAS, the Amended Joint Plan of Reorganization filed by the Debtors with the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on July 28, 1998, as amended by the Amended First Modifications to Debtors' Amended Joint Plan of Reorganization dated September 17, 1998 and further amended by an order of the Bankruptcy Court dated October 20, 1998 (collectively, the "Plan"), became effective on October 27, 1998 (the "Effective Date");

WHEREAS, pursuant to the Plan the Trust has been established as a liquidating trust for the benefit of certain creditors of the Debtors as of the Effective Date, including as the principal beneficiaries of the Trust persons and entities holding certain Series A Senior Secured Notes of Fruehauf Trailer (the "Senior Notes") in the aggregate principal amount of $54,505,000 as of the Effective Date of the Plan, to hold and liquidate assets of the Debtors which have been transferred to the Trust as of the Effective Date;

WHEREAS, also pursuant to the Plan certain securities of Wabash National Corporation ("Wabash") registered in the name of Fruehauf Trailer will be distributed directly to the holders of the Senior Notes shortly following the Effective Date and the remaining assets of the Debtors will be transferred to the Trust; and

WHEREAS, Street has served as Chairman of the Board and President of Fruehauf Trailer since April 1997 and has agreed to serve as trustee of the Trust pursuant to the terms of the Trust Agreement and the terms and conditions of this Agreement.

G:\WORD\Corp24\24960106.eag.wpd

Trustee 3

NOW, THEREFORE, in consideration of the foregoing premises and the covenants and agreements hereinafter set forth, the parties hereto agree as follows:

1. <u>Appointment as Trustee; Term</u>.  Street is hereby constituted and appointed as trustee of the Trust and hereby agrees to serve as trustee of the Trust and assume the duties and powers of the trustee for an initial term commencing on the Effective Date and continuing until the earlier of the third anniversary of the Effective Date and the dissolution of the Trust. If the Trust has not been dissolved prior to the third anniversary of the Effective Date, the term of this Agreement shall be automatically renewed for an additional one year term (subject to earlier termination in the event of dissolution of the Trust prior to the end of the renewal term) and shall continue to be renewed for additional one year terms on each succeeding anniversary of the Effective Date until dissolution of the Trust; <u>provided</u>, <u>however</u>, that this Agreement shall not be renewed beyond the initial three year term or any one year renewal term, if applicable, if the Trust Advisory Committee (as defined in the Trust Agreement) notifies Street in writing at least 90 days prior to the end of the applicable term that the Trust will not renew this Agreement at the end of the then current term.

2. <u>Power and Authority</u>.  Street, as trustee, shall have such authority and powers as shall be vested in him by the Trust Agreement and by further order of the Bankruptcy Court in the bankruptcy proceeding relating to the Debtors.  In furtherance of such powers, Street shall be entitled to employ or retain such employees, advisers, agents (including but not limited disbursing agents), counsel, accountants and consultants as he deems necessary and appropriate to manage the affairs of the Trust on such terms and conditions as he deems appropriate, and the compensation paid or to be paid to such persons for services rendered to the Trust or to Street in his capacity as trustee shall be a cost and expense of the Trust.  The Trust hereby acknowledges that Street will initially employ Worth Frederick and Courtney Watson as employees of the Trust at initial salaries of $20,000 per annum and $65,000 per annum, respectively.  So long as Street is serving as trustee, no co-trustee will be appointed without Street's prior written consent.

3. <u>Compensation as Trustee</u>. For serving as trustee of the Trust, Street shall receive the following compensation:

(a) An annual fee of $200,000 (the "Annual Fee"), payable in semi-monthly installments during each year of the initial term and any renewal term.

(b) In addition to the Annual Fee, Street shall receive a bonus ("Percentage Fee") equal to 12.5% of the value, in excess of the aggregate principal amount of the Senior Notes outstanding on the Effective Date (such principal amount hereinafter referred to as the "Par Amount"), of all assets which are distributed to the holders of the Senior Notes pursuant to

the Plan, either directly by Fruehauf Trailer or by the Trust, calculated on a cumulative basis from and after the Effective Date; provided, however, that if the assets distributed prior to the first anniversary of the Effective Date have a value equal to or in excess of the Par Amount, the Percentage Fee payable to Street will be equal to 15% of the value of the assets distributed in excess of the Par Amount. For purposes of determining the value of assets distributed to the holders of the Senior Notes pursuant to the Plan and calculation of the Percentage Fee, the following shall apply:

(i)    The value of shares of Common Stock of Wabash ("Common Stock") distributed to the holders of the Senior Notes will be equal to the higher of (A) the average of the closing sale prices of the Common Stock as reported by the New York Stock Exchange for the 10 consecutive trading days immediately prior to the date (which shall not be any earlier than the Effective Date) which Fruehauf Trailer establishes as the record date for determining the holders of the Senior Notes who will be entitled to receive the shares of Common Stock to be distributed to such holders (the "Distribution Record Date") and (B) the average of the daily closing sale prices of the Common Stock as reported by the New York Stock Exchange for the period of 90 days following the date on which the certificates representing the Common Stock are first delivered to the holders of the Senior Notes (the "Distribution Date") (the higher of (A) or (B) being referred to as the "Average Price"). No other change in the market price of the Common Stock will be given any effect in calculating the value of the Common Stock distributed to the holders of the Senior Notes.

(ii)   The value of the shares of Series B 6% Cumulative Convertible Exchangeable Preferred Stock of Wabash (the "Preferred Stock") distributed to the holders of the Senior Notes will be equal to the product of (A) and (B), where (A) is the result obtained by dividing the sum of $17,600,000 plus the proportionate amount, calculated through the Distribution Date, of the dividends paid in respect of the Preferred Stock on the first dividend payment date following the Distribution Date, by the conversion price of the Preferred Stock (i.e. $21.375, subject to anti-dilution adjustments) and (B) is the Average Price. No other change in the market price of the Common Stock will be given any effect in calculating the value of the Preferred Stock distributed to the holders of the Senior Notes.

(iii)  The value of all other assets distributed to the holders of the Senior Notes shall be fair market value of such assets on the respective dates of distribution, which fair market value shall be determined by mutual

G:\WORD\Corp2f\24860106.cag.wpd                 3

agreement of Street and the Trust Advisory Committee, except if no such agreement is reached, fair market value shall be determined by an independent appraiser whose selection will be mutually agreed upon by Street and the Trust Advisory Committee.

(c) The determination of the cumulative value of assets distributed to the holders of Senior Notes pursuant to the Plan shall be made on a quarterly basis as of the close of business on the last day of each calendar quarter, commencing with the quarter ending December 31, 1998, except that if the value of assets distributed to the holders of the Senior Notes on or before September 30, 1999 (i.e., the last day of the calendar quarter immediately preceding the first anniversary of the Effective Date) has not equaled or exceeded the Par Amount, a determination shall also be made as of the close of business on the day prior to first anniversary of the Effective Date to determine whether the cumulative value of the assets distributed on or before that date equals or exceeds the Par Amount. The Percentage Fee, if any, payable to Street in respect of any calendar quarter shall be paid within thirty days following the last day of such quarter.

(d) Except as provided in subparagraph (i) and (ii) of paragraph (b) above, in the event that an asset is distributed in kind, it shall be valued on the date of distribution and no subsequent change in value will be given effect in determining the value of such asset for purposes of determining the cumulative value of assets distributed to holders of Senior Notes.

4. __Termination as Trustee.__

(a) In the event Street ceases to serve as trustee prior to the end of the initial term or any renewal term for any reason other than as a result of termination for Cause (as hereinafter defined), Permanent Disability (as hereinafter defined), death or voluntary resignation, he shall continue to receive the Annual Fee that is payable for the remainder of the applicable term. In addition, in the event of such termination and the amount distributed to the holders of the Senior Notes prior to the date of termination has equaled or exceeded the Par Amount, Street will continue to be entitled to receive the Percentage Fee (if any) for a period of two years following the date on which he ceases to serve as trustee; provided, however, that if, as of the date on which Street ceases to serve as trustee, an amount equal to or greater than 90% but less than 100% of the Par Amount has been distributed to the holders of the Senior Notes and within one year following such date the cumulative amount distributed to the holders exceeds 100% of the Par Amount, Street will be entitled to receive the Percentage Fee on amounts distributed to the holders in excess of the Par Amount within 18 months after the date he ceases to serve as trustee and, provided, further, that if Street is terminated as trustee at any time prior to the first anniversary of the Effective Date other than for Cause, Street will be entitled to receive the Annual Fee and Percentage Fee (if any) until

G:\WORD\Corp24\24860106.rag.wpd                    4

the third anniversary of the Effective Date irrespective of the cumulative amount which has been distributed to the holders of the Senior Notes on the date of termination. Upon Street's death or termination as trustee as a result of a Permanent Disability during the initial or any renewal term, Street (or his heirs, as the case may by) shall be entitled to receive the Annual Fee and Percentage Fee (if any) for a period of one year following the date on which he ceases to serve as trustee. The Trust shall be authorized to obtain insurance to cover the amount owed to Mr. Street in the event of death or termination as a result of Permanent Disability and Street agrees to submit to a physical or such other test as may be required to obtain such insurance. If Street is terminated as trustee either for Cause or ceases to serve as trustee as a result of a voluntary resignation, Street shall be entitled to the Annual Fee and Percentage Fee (if any) through the date of termination. For purposes of this paragraph (a) only, any cash received by the Trust from and after the date on which Street ceases to serve as trustee shall, for purposes of calculation of the Percentage Fee, be deemed to have been distributed to the beneficiaries of the Trust.

    (b)  For purposes of this Section 4, the following definitions shall apply:

        (i)  "Cause" shall mean Street shall have either (A) been engaged in an act of fraud or dishonesty against the Trust, (B) been convicted of, or entered a pleas of *nolo contendre* to, a felony or a misdemeanor involving moral turpitude under the laws of the United States or any state thereof, (C) admitted or been found by a court of law to have been involved in either the distribution, possession or use of illegal drugs or (D) knowingly violated in a material way any policy maintained by the Trust.

        (ii)  "Permanent Disability" shall mean that Street, as a result of an incapacity due to physical or mental illness, has been unable to perform the duties of trustee for a period of not less than 90 consecutive days and, within 30 days of notice of termination being sent to him by the Trustee Advisory Committee based on such incapacity, shall have failed to return to the performance of his duties at trustee.

    (c)  The Trust and Street agree that it is impossible to determine with any reasonable accuracy the amount of prospective damages that would be incurred by Street in the event of his termination as trustee of the Trust before the end of any applicable term of this Agreement and the parties further agree that, based upon the facts and circumstances of the parties at the time of entering this Agreement and with due regard to future expectations, amounts payable to Street pursuant to this Section 4 are in the nature of liquidated damages and are not a penalty.

5. Indemnification. In addition to any right of indemnification which may be available to Street pursuant to the Trust Agreement, the Trust hereby agrees to indemnify Street for all liabilities (including, without limitation, judgements, fines, settlement payments, losses, damages, costs and expenses, including attorneys' fees) incurred by Street in connection with any action, suit, proceeding or investigation arising out of or relating to the performance by Street of services for, or acting as trustee or in any other capacity on behalf of the Trust, so long as Street acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the Trust and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. Expenses (including attorney's fees) incurred by Street in defending any civil, criminal, administrative or investigative action, suit or proceeding shall be paid by the Trust in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by Street to repay such amount if it shall ultimately be determined, by a court of competent jurisdiction, that Street is not entitled to be indemnified by the Trust as provided in this Section 5. The Trust hereby agrees, during the term of this Agreement, to maintain fiduciary liability insurance on behalf of Street in such amounts as Street deems reasonable.

6. Miscellaneous.

(a) The Trust acknowledges that Street will be employed by, or perform services on behalf of, other persons and entities during the term of this Agreement and that he shall only be required to devote as much of his business time as he, in his sole discretion, reasonably deems necessary to perform his duties as trustee.

(b) The Trust acknowledges that Street will be entitled to perform his duties as trustee at such location as he deems appropriate. Street shall be entitled, on behalf of the Trust, to procure such office space and arrange for such secretarial and/or administrative assistance, office supplies, support services and such other facilities and services as he deems reasonable necessary for the performance of his services as trustee, the cost of which shall be borne by the Trust Estate. All reasonable and customary expenses incurred by Street in the performance of his duties as trustee, including but not limited to entertainment and travel expenses, shall be promptly reimbursed to him by the Trust. Street shall also be entitled to participate in all fringe benefits, including but not limited to medical insurance coverage, which the Trust may offer to its employees generally.

(c) No amounts paid to Street by any of the Debtors prior to, on or following the Effective Date, including but not limited to the confirmation bonus of $350,000 paid to Street as described in the Disclosure Statement concerning the Plan, shall be deemed in satisfaction of, or credited against, any amount to be paid to Street pursuant to this Agreement.

(d) This Agreement and all rights of Street hereunder shall inure to the benefit of and be enforceable by Street's personal or legal representatives, executors, administrators, successors, heirs, distributees, devisees and legatees. If Street should die while any amounts would still be payable to him hereunder if he had continued to live, all such amounts shall be paid in accordance with the terms of this Agreement to Street's devisee, legatee or other designee or, if there be no such designee, to Street's estate.

(e) For purposes of this Agreement, notices, demands and all other communications provided for in this Agreement shall be in writing and shall be deemed to have been duly given when delivered or (unless otherwise specified) mailed by United States certified or registered mail, return receipt requested, postage prepaid, to the addresses set forth on the first page hereof or to such other address as either party may have furnished to the other in writing in accordance herewith, except that notices of change of address shall be effective only upon receipt.

(f) No provisions of this Agreement may be modified, waived or discharged unless such waiver, modification or discharge is agreed to in writing signed by Street and a member of the Trust Advisory Committee on behalf of the Trust. No waiver by either party hereto at anytime of any breach by the other party hereto of, or compliance with, any condition or provision of this Agreement to be performed by such other party shall be deemed a waiver of similar or dissimilar provisions or conditions at the same or at any prior or subsequent time. No agreements or representations, oral or otherwise, express or implied, with respect to the subject matter hereof have been made by either party which are not set forth expressly in this Agreement. The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the State of Delaware without regard to its conflicts of law principals.

(g) The invalidity or unenforceability of any provisions or provisions of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.

(h) This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which together will constitute one and the same instrument.

(i) Any dispute or controversy arising under or in connection with this Agreement shall be settled exclusively by the Bankruptcy Court.

(j) This Agreement sets forth the entire agreement of the parties hereto in respect to the subject matter contained herein and supersedes any and all other prior agreements,

G:\WORD\Corp24\24360106.eag.wpd                              7

promises, covenants, arrangements, communications, representations or warranties, whether oral or written, by and officer, employee or representative of any party hereto, and any prior agreement of the parties hereto in respect of the subject matter contained herein is hereby terminated and canceled.

IN WITNESS WHEREOF, the parties hereto have entered this Agreement as of the date first above written.

THE END OF THE ROAD TRUST

By: _____

Name:

Title: As Trustee

_____

Chriss W. Street

# EXHIBIT "J"

# EMPLOYMENT AGREEMENT

EMPLOYMENT AGREEMENT (the "Agreement") made as of October 27, 1998 between FRUDEMEX, INC., a corporation organized under the laws of the State of Delaware with its principal offices located at 1111 Bayside Drive, Suite 160, Corona del Mar, California 92625 (the "Company"), and CHRISS W. STREET, an individual with offices located at 1111 Bayside Drive, Corona del Mar, California 92625 ("Employee").

## W I T N E S E T H :

WHEREAS, Fruehauf Trailer Corporation, a Delaware corporation ("Fruehauf Trailer"), and certain of its direct and indirect subsidiaries (collectively, the "Debtors") filed petitions for relief under Chapter 11 of the U.S. Bankruptcy Code on October 7, 1996 and have operated as debtors-in-possession from that date through the date hereof;

WHEREAS, the Amended Joint Plan of Reorganization filed by the Debtors with the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on July 28, 1998, as amended by the Amended First Modifications to Debtors' Amended Joint Plan of Reorganization dated September 17, 1998 and further amended by an order of the Bankruptcy Court dated October 20, 1998 (collectively, the "Plan"), became effective on October 27, 1998 (the "Effective Date");

WHEREAS, pursuant to the Plan, a liquidating trust (the "Trust") has been established for the benefit of certain creditors of the Debtors to hold and liquidate assets of the Debtors which have been transferred to the Trust as of the Effective Date;

WHEREAS, one of the assets transferred to the Trust pursuant to the Plan is the capital stock of the Company, which was a subsidiary of Fruehauf Trailer and whose principal asset is the capital stock of Fruehauf de Mexico, S.A. de C.V., a corporation organized under the laws of Mexico ("Fruehauf de Mexico");

WHEREAS, the Company desires that the Employee serve as Chairman of the Board and Chief Executive Officer of the Company from and after the Effective Date pursuant to the terms and conditions of this Agreement; and

WHEREAS, Employee is also serving as trustee ("Trustee") of the Trust pursuant to an Employment Agreement dated as of October 27, 1998 (the "Trustee Employment Agreement").

NOW, THEREFORE, in consideration of the mutual premises and agreements contained herein, and intending to be legally bound hereby, the parties hereto agree as follows:

G:\WORD\Corp24\24860109.cag.wpd

Trustees 4

CWS 00001

1. <u>Nature of Employment; Term of Employment</u>. The Company hereby employs Employee, and Employee agrees to serve the Company, as its Chairman of the Board and Chief Executive Officer, upon the terms and conditions contained herein. Employee shall serve as an employee of the Company for an initial term commencing on the Effective Date and continuing until the earliest of (i) the third anniversary of the Effective Date, (ii) the dissolution of the Trust and (iii) the date on which either (A) the Trust no longer owns, directly or indirectly, a majority of the voting stock of the Company, (B) the Company no longer owns, directly or indirectly, a majority of the voting stock of Fruehauf de Mexico, or (C) all of the assets of Fruehauf de Mexico have been sold and Fruehauf de Mexico is subsequently liquidated. If the Trust has not been dissolved prior to the third anniversary of the Effective Date and none of the events specified in (iii) above have occurred by the third anniversary of the Effective Date, the term of this Agreement shall be automatically renewed for an additional one year term (subject to earlier termination in the event of dissolution of the Trust or occurrence of any of the events specified in (iii) above prior to the end of the renewal term) and shall continue to be renewed for additional one year terms on each succeeding anniversary of the Effective Date until dissolution of the Trust or occurrence of any of the events specified in (iii) above; <u>provided</u>, <u>however</u>, that this Agreement shall not be renewed beyond the initial three year term or any one year renewal term, if applicable, if the Company notifies Employee in writing at least 90 days prior to the end of the applicable term that the Company will not renew this Agreement at the end of the then current term.

2. <u>Power and Authority</u>.

(a) As Chairman of the Board and Chief Executive Officer of the Company, Employee shall have full power and authority as chief executive officer and full supervisory authority over all operations and employees of the Company. In the performance of his duties, Employee shall be subject to the direction of the Board of Directors of the Company.

(b) So long as Employee is employed by the Company, the Company shall use its best efforts to cause Employee to be nominated as a director of the Company and shall appoint Employee as chairman of the board and chief executive officer and a director of such subsidiaries of the Company as Employee deems appropriate. In addition, for so long as he serves as Chairman of the Board and Chief Executive Officer of the Company, Employee shall be entitled to designate those persons whom the Company will nominate for election as directors of the Company and any of the Company's subsidiaries, including himself.

3. <u>Compensation</u>. For serving as Chairman of the Board and Chief Executive Officer of the Company, Employee shall receive an annual salary of $50,000 per year, payable in semi-monthly installments (the "Base Salary"). Collection and payment of all withholding and other payroll taxes due with respect to the Base Salary shall be the responsibility of the Company. Employee will also be provided with all of the fringe benefits and perquisites that

CWS 00002

are provided to senior executives of the Company or Fruehauf de Mexico, and shall be entitled to participate in all employee benefit plans, programs and arrangements of the Company or Fruehauf de Mexico, now or hereinafter in effect, that are applicable to the employees of the Company or Fruehauf de Mexico generally or to their senior executives.

4.   Termination of Employment.

(a) In the event Employee ceases to serve as Chairman of the Board and Chief Executive Officer of the Company, he shall receive payments as provided in (i), (ii), (iii) or (iv) below.

(i)    If some or all of the capital stock of the Company is sold or otherwise disposed of by the Trust, or some or all of the capital stock of Fruehauf de Mexico is sold or otherwise disposed of by the Company, or all or substantially all of the assets of Fruehauf de Mexico are sold and, as a result thereof, Employee no longer serves as Chairman of the Board and Chief Executive Officer of the Company, Employee will receive, upon the date of sale or other disposition of the stock or assets, as the case may be, a lump sum payment equal to the aggregate Base Salary that would have been paid to him pursuant to Section 3 of this Agreement had he continued to serve as Chairman of the Board and Chief Executive Officer of the Company until the end of the then current term of the Trust Employment Agreement (without any reduction or discount because of the advance nature of such payment).

(ii)   Except to the extent that payment is previously made to Employee pursuant to clause (i) of this paragraph (a), or as otherwise provided in (iii) and (iv) of this paragraph (a), in the event Employee ceases to serve as Trustee and he is entitled to receipt of the Annual Fee (as defined in the Trust Employment Agreement) from the Trust for any period thereafter, the Company shall be required to pay Employee the Base Salary and all other benefits payable to him pursuant to Section 3 of this Agreement for so long as he is entitled to receive payment of the Annual Fee, whether or not he continues to serve as an officer of the Company during such period.

(iii)  Upon Employee's death or termination as Chairman of the Board and Chief Executive Officer of the Company as a result of a Permanent Disability (as hereinafter defined), Employee (or his heirs, as the case may be) shall be entitled to receive the Base Salary for a period of one year following the date on which he ceases to serve as an officer. The Company shall be authorized to obtain insurance to cover the amount

CWS 00003

owed to Employee in the event of death or termination as a result of Permanent Disability and Employee agrees to submit to a physical or such other test as may be required to obtain such insurance.

(iv)   If Employee is terminated as an officer for Cause (as hereinafter defined) or ceases to serve as an officer as a result of a voluntary resignation, Employee shall be entitled to the Base Salary through the date of termination.

(b) For purposes of this Section 4, the following definitions shall apply:

(i)   "Cause" shall mean Employee shall have either (A) been engaged in an act of fraud or dishonesty against the Company, (B) been convicted of, or entered a plea of *nolo contendre* to, a felony or a misdemeanor involving moral turpitude under the laws of the United States or any state thereof, (C) admitted or been found by a court of law to have been involved in either the distribution, possession or use of illegal drugs or (D) knowingly violated in a material way any policy maintained by the Company.

(ii)   "Permanent Disability" shall mean that Employee, as a result of an incapacity due to physical or mental illness, has been unable to perform the duties of Chairman and Chief Executive Officer of the Company for a period of not less than 90 consecutive days and, within 30 days of notice of termination being sent to him by the Company based on such incapacity, shall have failed to return to the performance of his duties at Chairman of the Board and Chief Executive Officer.

(c) The Company and Employee agree that it is impossible to determine with any reasonable accuracy the amount of prospective damages that would be incurred by Employee in the event of his termination as Chairman of the Board and Chief Executive Officer of the Company and the parties further agree that, based upon the facts and circumstances of the parties at the time of entering this Agreement and with due regard to future expectations, amounts payable to Employee pursuant to this Section 4 are in the nature of liquidated damages and are not a penalty.

5. Indemnification. In addition to any right of indemnification which may be available to Employee pursuant to the Company's articles of incorporation, by-laws or otherwise, the Company hereby agrees to indemnify Employee for all liabilities (including, without limitation, judgements, fines, settlement payments, losses, damages, costs and expenses, including attorneys' fees) incurred by Employee in connection with any action, suit, proceeding or investigation arising out of or relating to the performance by Employee of

G:\WORD\Corp24\24860109.eag.v.pd

CWS 00004

services for, or acting as a director, officer or employee of, or in any other capacity for, the Company or any of its subsidiaries, so long as Employee acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the Company and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. Expenses (including attorney's fees) incurred by Employee in defending any civil, criminal, administrative or investigative action, suit or proceeding shall be paid by the Company in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by Employee to repay such amount if it shall ultimately be determined, by a court of competent jurisdiction, that Employee is not entitled to be indemnified by the Company as provided in this Section 5. During the term of this Agreement, the Company shall maintain directors and officers liability insurance on behalf of Employee in such amounts as Employee deems reasonable.

6. _Non-Competition._ Employee agrees that he will not (a) during the period he is employed by the Company, directly or indirectly, be employed by, or act as a consultant to, or be a director, officer, employee, owner, or partner of, any other business or organization that is or shall then be competing with the business of the Company or Fruehauf de Mexico, and (b) for a period of three months after he ceases to be employed by the Company, directly or indirectly compete with or be engaged in the same business as the Company or Fruehauf de Mexico, or be employed by, or act as consultant or lender to, or be a director, officer, employee, owner, or partner of, any business or organization which, at the time of such cessation, competes with or is engaged in the same business as the Company or Fruehauf de Mexico, except that in each case the provisions of this Section 6 will not be deemed breached merely because Employee owns not more than five percent (5.0%) of the outstanding common stock of a corporation, if, at the time of its acquisition by Employee, such stock is listed on a national securities exchange, is reported on The Nasdaq Stock Market, or is regularly traded in the over-the-counter market by a member of a national securities exchange.

7. _Patents; Copyrights._ Any interest in patents, patent applications, inventions, copyrights, developments, and processes ("Inventions") which the Employee now or hereafter during the period he is employed by the Company may own or develop relating to the fields in which the Company or Fruehauf de Mexico may then be engaged shall belong to the Company; and forthwith upon request of the Company, Employee shall execute all such assignments and other documents and take all such other action as the Company may reasonably request in order to vest in the Company all his right, title, and interest in and to such Inventions, free and clear of all liens, charges, and encumbrances.

8. _Confidential Information._ All confidential information which Employee may now possess or may obtain or create prior to termination of employment by the Company which relate to the business of the Company or of any customer or supplier of the Company shall not be published, disclosed, or made accessible by him to any other person, firm, or corporation during the period of employment by the Company or any time thereafter

CWS 00005

without the prior written consent of the Company. Employee shall return all tangible evidence of such confidential information to the Company prior to or at the termination of his employment.

9. Miscellaneous.

(a) The Company acknowledges that Employee will be employed by, or perform services on behalf of, other persons and entities during the term of this Agreement and that he shall only be required to devote as much of his business time as he, in his sole discretion, reasonably deems necessary to perform his duties as Chairman and Chief Executive Officer of the Company.

(b) The Company acknowledges that Employee will be entitled to perform his duties as Chairman and Chief Executive Officer of the Company at such location as he deems appropriate. Employee shall be entitled, on behalf of the Company, to procure such office space and arrange for such secretarial and/or administrative assistance, office supplies, support services and such other facilities and services as he deems reasonable necessary for the performance of his services hereunder, the cost of which shall be borne by the Company. All reasonable and customary expenses incurred by Employee in the performance of his duties hereunder, including but not limited to entertainment and travel expenses, shall be promptly reimbursed to him by the Company.

(c) No amounts paid to Employee by any of the Debtors prior to, on or following the Effective Date, including but not limited to the confirmation bonus of $350,000 paid to Employee as described in the Disclosure Statement concerning the Plan, shall be deemed in satisfaction of, or credited against, any amount to be paid to Employee pursuant to this Agreement.

(d) This Agreement and all rights of Employee hereunder shall inure to the benefit of and be enforceable by Employee's personal or legal representatives, executors, administrators, successors, heirs, distributees, devisees and legatees. If Employee should die while any amounts would still be payable to him hereunder if he had continued to live, all such amounts shall be paid in accordance with the terms of this Agreement to Employee's devisee, legatee or other designee or, if there be no such designee, to Employee's estate.

(e) For purposes of this Agreement, notices, demands and all other communications provided for in this Agreement shall be in writing and shall be deemed to have been duly given when delivered or (unless otherwise specified) mailed by United States certified or registered mail, return receipt requested, postage prepaid, to the addresses set forth on the first page hereof or to such other address as either party may have furnished to the other in writing in accordance herewith, except that notices of change of address shall be effective only upon receipt.

G:\WORD\Corp24\24860109.eag.wpd

6—

CWS 00006

(f)  No provisions of this Agreement may be modified, waived or discharged unless such waiver, modification or discharge is agreed to in writing signed by Employee and a designated representative of the Company.  No waiver by either party hereto at anytime of any breach by the other party hereto of, or compliance with, any condition or provision of this Agreement to be performed by such other party shall be deemed a waiver of similar or dissimilar provisions or conditions at the same or at any prior or subsequent time.  No agreements or representations, oral or otherwise, express or implied, with respect to the subject matter hereof have been made by either party which are not set forth expressly in this Agreement.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the State of Delaware without regard to its conflicts of law principals.

(g)  The invalidity or unenforceability of any provisions or provisions of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.

(h)  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which together will constitute one and the same instrument.

(i)  Any dispute or controversy arising under or in connection with this Agreement shall be settled exclusively by the Bankruptcy Court.

(j)  This Agreement sets forth the entire agreement of the parties hereto in respect to the subject matter contained herein and supersedes any and all other prior agreements, promises, covenants, arrangements, communications, representations or warranties, whether oral or written, by and officer, employee or representative of any party hereto, and any prior agreement of the parties hereto in respect of the subject matter contained herein is hereby terminated and canceled.

CWS 00007

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date first written above.

FRUDEMEX, INC.

By _____
Name: Chriss W. Street
Title: President

_____
CHRISS W. STREET

CWS 00008

## CERTIFICATE OF SERVICE

I, Edmond D. Johnson, hereby certify that on February 14, 2007 a true and correct copy of the foregoing *Petitioner Chriss W. Street's Memorandum in Support of Motion to Remand to Court of Chancery of the State of Delaware or For Abstention Under 28 U.S.C. § 1334(c)* was served upon the following parties in the manner indicated:

VIA HAND DELIVERY:

David L. Finger, Esquire
FINGER & SLANINA, LLC
Once Commerce Center
1201 Orange Street, Ste. 725
Wilmington, DE 19801-1155

Edmond D. Johnson (Del. Bar No. 2257)