# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CHRISS W. STREET,

               Plaintiff,

     v.

THE END OF THE ROAD TRUST AND
AMERICAN TRAILER INDUSTRIES, INC.,

               Defendants.

CIVIL ACTION NO. 07-65

---

## PETITIONER CHRISS W. STREET'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO REMAND TO COURT OF CHANCERY OF THE STATE OF DELAWARE OR FOR ABSTENTION UNDER 28 U.S.C. § 1334(c)

PEPPER HAMILTON LLP
Edmond D. Johnson (No. 2257)
Phillip T. Mellet (No. 4741)
1313 Market Street, Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: (302) 777-6539
Facsimile: (302) 421-8390
Email: johnsone@pepperlaw.com
Email: melletp@pepperlaw.com

THE BAYARD FIRM
Neil B. Glassman (No. 2087)
Peter B. Ladig (No. 3513)
Ashley B. Stitzer (No. 3891)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
Email: nglassman@bayardfirm.com
Email: pladig@bayardfirm.com
Email: astitzer@bayardfirm.com

*Counsel for Chriss W. Street*

Dated: March 7, 2007

653587-2

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................ ii

I.  INTRODUCTION ................................................................................1

II.  ARGUMENT........................................................................................2

    A.  Street's Conduct Is Not at Issue in the Chancery Court
        Action...........................................................................................2

    B.  The Chancery Court Action Is Not A Core Proceeding .............................6

    C.  The Court Does Not Have Related to Jurisdiction over the
        State Court Action.......................................................................9

    D.  Mandatory Abstention Under Section 1334(c)(2) of the
        Code Is Warranted ....................................................................11

        1.  Mandatory Abstention Is Not Waived ...........................................11

        2.  The Chancery Court Action Can Be Adjudicated
            Timely.............................................................................12

        3.  Street's Involvement in the Bankruptcy Case Is
            Irrelevant .......................................................................13

        4.  The Chancery Court Action Should Be Remanded
            On Equitable Grounds.................................................................14

III.  CONCLUSION...................................................................................15

## TABLE OF AUTHORITIES

Page

Cases

Citadel Holding Corp. v. Roven,
    603 A.2d 818 (Del. 1992) ..................................................................................... 5

In re Continental Airlines, Inc.,
    236 B.R. 318 (Bankr. D. Del. 1999) ........................................................... 11

In re Earned Capital Corp.,
    331 B.R. 208 (Bankr. W. D. Pa. 2005) .................................................... 6-7

Fasciana v. Electronic Data Systems Corp.,
    829 A.2d 160 (Del. Ch. 2003)................................................................... 3

Fasciana v. Electronic Data Sys. Corp.,
    829 A.2d 178 (Del. Ch. 2004).............................................................. 5, 6

Fuisz v. Biovail Technologies, Ltd.,
    2000 WL 1277369 (Del. Ch. 2000) ......................................................... 12

Homestore, Inc. v. Tafeen,
    886 A.2d 502 (Del. 2005) ........................................................................ 2

In re Insilco Technologies, Inc.,
    330 B.R. 512 (Bankr. D. Del. 2005) ......................................................... 11

Kaung v. Cole Nat'l Corp.,
    884 A.2d 500 (Del. 2005) .............................................................. 2, 4, 10

Lorence v. Does 1 through 50 (In re Diversified Contract Services),
    167 B.R. 591 (Bankr. N.D. Cal. 1994) ...................................................... 8

Marotta Gund Budd & Dzera LLC v. Costa,
    340 B.R. 661 (D. N.H. 2006).............................................................. 8, 9

Pacor, Inc. v. Higgins,
    743 F.2d 984 (3d Cir. 1984).................................................................... 13

Reddy v. Electronic Data Sys. Corp.,
    2002 WL 1358761 (Del. Ch.) .............................................................. 4, 5

In re Resorts International, Inc. (Binder v. Price Waterhouse & Co., LLP),
    372 F.3d 154 (3d Cir. 2004)............................................................. passim

Sanders Confectionary Products v. Heller Financial, Inc.,
    973 F.2d 474 (6th Cir. 1992) ................................................................... 8

ii

<u>TABLE OF AUTHORITIES</u>, continued

Page

<u>Cases</u>, continued

*Senior Tour Players 207 Management Co., LLC v. Golftown 207 Holding
   Co., LLC,*
      853 A.2d 124 (Del. Ch. 2004)...................................................................... 3

*In re Southmark Corp.,*
      163 F.3d 925 (5th Cir. 1999) ...................................................................... 7

*Stifel Financial Corp. v. Cochran,*
      809 A.2d 555 (Del. 2002) ........................................................................... 5

*Stoe v. Flaherty,*
      436 F.3d 209 (3d Cir. 2006)...................................................................... 13

*Tafeen v. Homestore, Inc.,*
      2004 WL 556733 (Del. Ch.) ....................................................................... 5

*Torkelsen v. Maggio (In re Guild & Gallery Plus),*
      72 F.3d 1171 (3d Cir. 1996)....................................................................... 6

*U.S. v. Unger,*
      949 F.2d 231 (8th Cir. 1991) ..................................................................... 9

*United States Trustee v. Gryphon at the Stone Mansion,*
      216 B.R. 764 (W.D. Pa. 1997).............................................................. 11-12

*Walsh v. Northwestern Nat'l Ins. Co., of Milwaukee, Wis. (In re Ferrante),*
      51 F.3d 1473 (9th Cir. 1995) ...................................................................... 8

*In re Wood,*
      825 F.2d 90 (5th Cir. 1987) ....................................................................... 9

<u>Statutes</u>

8 *Del. C.* § 145(k) ...................................................................................... *passim*

18 U.S.C.A. § 153........................................................................................... 9

28 U.S.C. § 157.......................................................................................... 6, 11

28 U.S.C. § 157(b) .......................................................................................... 7

28 U.S.C. § 1334 ...................................................................................... *passim*

28 U.S.C. § 1334(c)(2)............................................................................. *passim*

28 U.S.C. § 1334(c) .................................................................................. 1, 15

iii

<u>TABLE OF AUTHORITIES</u>, continued

<u>Page</u>

<u>Statutes</u>, continued

28 U.S.C. § 1447(c) ......................................................................................................... 15

28 U.S.C. § 1452(b) ............................................................................................... 2, 11, 14

<u>Other Authorities</u>

130 CONG. REC. S6088-89 (May 21, 1984) (remarks of Sen. Dole) ................................ 13

Donald Wolfe and Michael Pittenger, "Corporate and Commercial
    Practice in the Delaware Court of Chancery," §§ 8-1 and 8-6 (2006)........................ 12

iv

## I.    **INTRODUCTION**

The Defendants' arguments in the Removal Notice and the Answering Brief that subject matter jurisdiction exists are all based on a single flawed premise, namely, that the claims asserted in the Chancery Court Action implicate Street's conduct while acting as trustee of the Trust.[1]  In reality, the claims for advancement asserted in the Chancery Court Action are contract based claims that, according to well-settled Delaware law, do not require an inquiry into Street's underlying conduct.  Rather, resolution of the Chancery Court Action only requires review of the advancement provision of the Employment Agreements (defined hereafter) and a determination of whether the actions giving rise to the claims fall under the advancement provisions.

As discussed in the Opening Brief, the Chancery Court Action involves state law claims for advancement pursuant to post-confirmation agreements between the parties. The claims arose after Street's resignation as Trustee and after confirmation of the Plan. Therefore, the Court does not have jurisdiction over the subject matter of the Chancery Court Action under section 1334 of Title 28 of the United State Code (the "Code") because it is not a core proceeding (i.e., not arising under Title 11 or in a case under Title 11) and is not related to a case under chapter 11.  Even if the Court finds that it has "related to" jurisdiction under section 1334 of the Code, abstention is mandated under section 1334(c) and, in any case, abstention is warranted on equitable grounds.

The Defendants concede in the Answering Brief that diversity jurisdiction does not exist in this matter.  *See* Answering Brief, p. 20 n.4.  Therefore, this Reply

---

[1]  Capitalized terms not defined herein have the same meaning ascribed to them in Petitioner Chris Street's Memorandum in Support of Motion to Remand to Court of Chancery of the State of Delaware or for Abstention Under 28 U.S.C. § 1334(c) (the "Opening Brief").

Memorandum is limited to the issues of (i) whether "federal question" jurisdiction exists under section 1334 of the Code, (ii) whether abstention is warranted under section 1334 of the Code, and (iii) whether remand of the Chancery Court Action is warranted on equitable grounds under section 1452(b) of the Code.

## II.    ARGUMENT

### A.    Street's Conduct Is Not at Issue in the Chancery Court Action

The Defendants argue that the Court has subject matter jurisdiction of the Chancery Court Action because the underlying claims in the Chancery Court Action are the product of Street's conduct in administering the Trust. This argument flies in the face of the actual claims plead by Street and well-settled Delaware law.

The Chancery Court Action is a summary proceeding brought to enforce Street's contractual right to advancement of fees and expenses provided in the Employment Agreement and the Frudemex Agreement (collectively, the "Employment Agreements"). Under Section 145(k) of the General Corporation Law of the State of Delaware (the "DGCL"), the Chancery Court has exclusive jurisdiction to hear such claims against defendant ATII and may summarily determine a corporation's obligation to advance expenses. 8 *Del. C.* § 145(k). As a summary proceeding, the scope of a proceeding brought pursuant to Section 145(k) is limited in nature. The Delaware Supreme Court has stated,

> the scope of an advancement proceeding under Section 145(k) of the DGCL is limited to determining 'the issue of entitlement according to the corporation's advancement provisions and not to issues regarding the movant's alleged conduct in the underlying litigation.'

*Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 509 (Del. 2005) (citing *Homestore, Inc. v. Tafeen*, 886 A.2d 502, 503 (Del. 2005)) (emphasis supplied). Indeed, Delaware courts

have consistently held that "advancement and indemnification, although obviously related, are 'distinct types of legal rights' and that the right to advancement is not ordinarily dependent upon a determination that the party in question will ultimately be entitled to be indemnified." *Senior Tour Players 207 Management Co., LLC v. Golftown 207 Holding Co., LLC*, 853 A.2d 124, 128 (Del. Ch. 2004) (citations omitted).

Thus, the determination of whether Street is entitled to advancement does not involve review of his conduct while acting as trustee of the Trust. Rather, the determination is limited to (i) the interpretation of the words of the contract providing for advancement and (ii) a determination of whether the underlying investigation or action giving rise to the claim for advancement is one for which the contractual language provides a right to advancement of fees and expenses. *See Fasciana v. Electronic Data Systems Corp.*, 829 A.2d 160, 167 (Del. Ch. 2003) ("The key question [in a summary advancement action] is whether the plaintiff seeking advancement is facing claims that are subject to his advancement right, a determination that can, in this case and in most cases, be made based on a review of the pleadings against him in the actions for which advancement is sought.")

In the Answering Brief, the Defendants admit that the underlying investigation which gave rise to the claim for advancement was an investigation of Street's conduct as Trustee of the Trust and Street's conduct as an officer and director of ATII. Thus, the only issue to be decided in the Chancery Court Action is whether the contractual language provides a right to advancement for Street's fees and expenses incurred in responding to such investigations.

The plain language of the two contractual provisions in the Employment Agreements shows that there is no exception to the general rule that Street's underlying conduct is not at issue here.    Defendants argue that Street's ultimate right to indemnification under the Employment Agreements is contingent upon Street having acted in good faith.  *See* Answering Brief at 11, 13.  Whether Street is ultimately entitled to indemnification, however, is not at issue before the Court.    Street's right to advancement of fees and expenses is the only issue before the Court in the Chancery Court Action.  The Employment Agreements do not condition Street's right to receive advancement of legal fees and expenses on a prior determination that his underlying conduct was in good faith.  Rather, not unlike most agreements providing for the right to advancement, the Employment Agreements both make the right to advancement conditioned only on the submission of an undertaking to repay the amounts advanced should it ultimately be determined that Street is not entitled to indemnification.  *See* Employment Agreement, ¶ 5; Frudemex Agreement, ¶ 5.  Under well-settled Delaware law, these types of agreements do not require, nor even permit, any inquiry into whether Street would ultimately be entitled to indemnification.  *See Reddy v. Electronic Data Sys. Corp.*, 2002 WL 1358761, at *9 (Del. Ch.) (denying request to inquire into underlying conduct with similar advancement provision and holding that "the clear authorization of advancement rights presupposes that the corporation will front expenses before any determination is made of the corporate official's ultimate right to indemnification"); *see also Kaung*, 884 A.2d at 510 (reversing Court of Chancery's decision in advancement proceeding to require former officer to repay funds advanced to former officer because "an advancement proceeding is summary in nature and not appropriate for litigating

4

indemnification or recoupment"); *Tafeen v. Homestore, Inc.*, 2004 WL 556733, at *4 (Del. Ch.) (rejecting defenses to advancement claim based on officer's conduct giving rise to underlying proceedings where advancement right was based on language similar to language on which Street relies); *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del. 1992) (holding that language similar to language on which Street relies "in no way renders the right to advances dependent upon the right to indemnity").

Street's request in Count II of the Chancery Court Action does not change this analysis. Count II asserts a limited claim for indemnity for the fees associated with bringing the action for advancement. *See* Count II of Petition, Opening Brief, Exhibit A. It is well-settled under Delaware law that a party who is forced to file a lawsuit to enforce his right to advancement of fees and expenses is entitled, if successful, to "fees on fees," or the costs of pursing the action. *See Reddy*, 2002 WL 1358761 at *9 (extending right to receive "fees on fees" to advancement claims); *Fasciana v. Electronic Data Sys. Corp.*, 829 A.2d 178, 182-83 (Del. Ch. 2004) (awarding party seeking advancement fees for successful prosecution of claim for advancement); *see also Stifel Financial Corp. v. Cochran*, 809 A.2d 555, 560-61 (Del. 2002) (referring to the expenses incurred in successfully prosecuting indemnification suit as "fees on fees"). The public policy behind this rule is that, without an award of attorneys' fees for prosecuting the suit itself, the right to advancement would be incomplete. *Fasciana*, 829 A.2d at 183.

This right to seek fees on fees is a request for indemnification, rather than advancement, because even if the party who sought advancement is ultimately determined not to be entitled to indemnification, that fact would not cure the corporation's wrongful denial of the plaintiff's advancement rights and the harm that

denial caused to the plaintiff. *Id.* at 184. Thus, the success of Street in Count I of the Chancery Court Action is the only predicate fact necessary to be entitled to an award of "fees on fees" in Count II and no inquiry into Street's underlying conduct is necessary to resolve Count II. A request for "fees on fees" is common to most complaints filed in Chancery Court for advancement of defense costs.

### B.    The Chancery Court Action Is Not A Core Proceeding

"[A] core proceeding under section 157 is one that " 'invokes a substantive right provided by title 11' " or one that " 'by its nature, could arise only in the context of a bankruptcy case.' " *In re Resorts International, Inc. (Binder v. Price Waterhouse & Co., LLP)*, 372 F.3d 154, 162-63 (3d Cir. 2004) (citing *Torkelsen v. Maggio (In re Guild & Gallery Plus)*, 72 F.3d 1171, 1178 (3d Cir. 1996)).

In *Resorts*, a litigation trust established pursuant to a confirmed plan retained an accounting firm to provide tax services to the trust. The trustee was later replaced and the subsequent trustee commenced a proceeding against the accounting firm asserting malpractice claims. When considering whether the action was a core proceeding, the Third Circuit noted that it involved a claim that arose post-confirmation and therefore did not directly affect the debtor or the liquidation of the estate's assets. *Id.*, 372 F.3d at 163. The Third Circuit further found that the alleged malpractice proceeding was not a proceeding that could arise only in the context of a bankruptcy case.[2] *Id.*

This distinction regarding when the claim arose for post-confirmation jurisdictional purposes was followed in the case of *In re Earned Capital Corp.*, 331 B.R.

---

[2] The Third Circuit determined ultimately that it did not need to decide the issue of whether the matter was a core proceeding and only needed to determine whether non-core related to jurisdiction existed. *Resorts*, 372 F.3d at 163.

208 (Bankr. W. D. Pa. 2005), on which the Defendants rely.  In *Earned Capital*, the Court distinguished *Resorts* on the basis that the claim in *Resorts* resulted from post-confirmation misconduct by the accounting firm for a litigation trust.  The *Earned Capital* Court distinguished the facts in *Resorts*, where the plaintiffs' claims lay against a court appointed professional for work performed <u>during</u> the bankruptcy case.  Finding that jurisdiction existed, the Court stated:

> The facts of the present case are analogous to the facts in [*Southmark, supra*], where the claims of professional malpractice were based on services provided during the bankruptcy, under the supervision of, and subject to the approval of, the bankruptcy court. The Plaintiffs' claims against the Defendants "implicate the integrity of the bankruptcy process." The claim is a claim "arising in" a bankruptcy case and as a result, this court has jurisdiction. *Id.*, 331 B.R. 218 (citations omitted).

The present case is directly on point with the *Resorts* case.  The claims asserted in the Chancery Court Action arose post-confirmation when there was no longer any bankruptcy estate.  The Fruehauf Plan was confirmed and became effective October of 1998.  Street's advancement claims are based on investigations and actions that occurred at least three years after the Plan was confirmed.  Therefore, under the teaching of *Resorts*, the Chancery Court Action does not fall under any of the factors delineated in section 157(b) of the Code; it does not invoke a substantive right provided under title 11 and it could arise outside the context of a bankruptcy case.

Unlike the facts of the present case, all the cases relied on by the Defendants to support their argument that the Chancery Court Action is a core proceeding involve claims that rose during the course of the bankruptcy case while the debtor's estate was in existence.  In the *Resorts* decision, the Third Circuit distinguished *In re Southmark Corp.*, 163 F.3d 925 (5th Cir. 1999) on the basis that the case involved malpractice claims against an accountant to a court-appointed examiner based on services that were provided

during the debtor's reorganization case. *Resorts*, 372 F.3d at 163.  In *Lorence v. Does 1 through 50 (In re Diversified Contract Services),* 167 B.R. 591 (Bankr. N.D. Cal. 1994), a former chapter 11 trustee brought a state court action against a law firm based on its actions while representing her in the bankruptcy case.  In *Sanders Confectionary Products v. Heller Financial, Inc.,* 973 F.2d 474 (6th Cir. 1992), the plaintiffs sued the debtor's lenders, the lender's law firm, and the bankruptcy trustee for their actions during the bankruptcy case prior to confirmation of the plan.  Finally, *Walsh v. Northwestern Nat'l Ins. Co., of Milwaukee, Wis. (In re Ferrante),* 51 F.3d 1473 (9th Cir. 1995) involved a suit brought by the substituted chapter 11 trustee against the entity that bonded the initial chapter 11 trustee based on the original chapter 11 trustee's wrongful liquidation of the debtors assets and commingling of funds while administering the debtor's estate.

*Marotta Gund Budd & Dzera LLC v. Costa,* 340 B.R. 661 (D. N.H. 2006), actually supports Street's position rather than the Defendant's position.  In *Marotta*, the Court noted that the defendants' alleged conduct did not occur during the course of the bankruptcy proceedings.  The defendants' characterized the state court action as a proceeding arising in bankruptcy because "[t]he alleged defamatory statements concerned plaintiffs' appointment in the bankruptcy case as fiduciaries of the Debtors and their 'improper actions' relating to the management of the bankruptcy estate" and therefore "would not have occurred but for the existence of the Bankruptcy Case."  The Court rejected this argument (which is similar to the Defendants' argument in the present case) and found that it was an overly expansive view of the standard for "arising in" jurisdiction because it did not involve any administrative matters that arise only in

8

bankruptcy cases. *Id.*, 340 B.R at 666 (citing *In re Wood*, 825 F.2d 90 (5th Cir. 1987)). The Court held, *inter alia*, that the plaintiffs' defamation action did not "arise in" the bankruptcy case for jurisdictional purposes.

Finally, *U.S. v. Unger*, 949 F.2d 231 (8th Cir. 1991), is also distinguishable. First, the decision is not binding on this Court. Moreover, the issue before the Court was whether the Court had jurisdiction to prosecute the defendant under 18 U.S.C.A. § 153 for misappropriating funds of the estate for personal use.

### C.    The Court Does Not Have Related to Jurisdiction over the State Court Action

In *Resorts*, *supra*, the Third Circuit examined whether post-confirmation "related to" jurisdiction exists in the context of continuing trusts and other entities established by a confirmed plan. *Id.* 372 F.3d at 165-66 n.8. The Third Circuit found that "[a]t the post-confirmation stage, the claim must affect an integral aspect of the bankruptcy process-there must be a close nexus to the bankruptcy plan or proceeding." *Id.*, 372 F.3d at 167. "Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus to establish 'related to' jurisdiction." *Id.* "Under those circumstances, bankruptcy court jurisdiction would not raise the specter of 'unending jurisdiction' over continuing trusts." *Id.* Applying this analysis to the case before it, the Third Circuit found that "related to" jurisdiction did not exist because, *inter alia*, resolution of the state law malpractice claims would not affect the bankruptcy estate even though the corpus of a post-confirmation trust might be affected significantly; not would it interfere with implementation of the confirmed plan and did not require interpretation of the plan. *Id.*, 372 F.3d at 169-71.

653587-2

The *Resorts* decision is factually on point with the present case and is binding precedent. As in *Resorts*, the Chancery Court Action involves state law claims that arose post-confirmation between non-debtor parties when Street was no longer trustee of the Trust.[3] There is no need to interpret or even apply the Plan to resolve the Chancery Court Action. Therefore, under *Resorts*, the Court does not have "related to" jurisdiction.

In an unsuccessful effort to show that the Chancery Court Action is related to the bankruptcy case, the Defendants argue that resolution of the state law claims requires a determination of whether Street acted in good faith while trustee of the Trust thereby entitling him to indemnification under the Employment Agreements. In essence, the Defendants argument goes to whether the underlying claims that give rise to Street's claim for advancement would support a claim of "related to" jurisdiction.

The claims in the Chancery Court Action are for advancement and indemnification for fees incurred in pursuing the advancement claim (i.e., fees on fees). Delaware case law is clear that the determination of whether Street is entitled to relief on his claims does not involve examination of his conduct while acting as trustee of the Trust, no matter how much the Defendants attempt to vilify Street. *See Kaung v. Cole Nat'l Corp.*, *supra.* Thus, the analysis is limited to interpretation of the employment contract provisions and a determination of whether the underlying investigation or actions giving rise to the claims provide a right to advancement of fees and expenses under the contracts. The Chancery Court Action does not in any way involve any inquiry regarding the interpretation, implementation, consummation, execution, or administration

---

[3] The Defendants state that the Bankruptcy Court removed Street as trustee. *See* Answering Brief, pp. 13, 23. This is patently false. On August 18, 2005, the Bankruptcy Court entered a consent order approving the resignation of Street as trustee, effective August 1, 2005. *See* Answering Brief, Exhibit 9.

10

of the Plan.  Accordingly, the claims asserted in the Chancery Court Action lack the required nexus to establish post-confirmation jurisdiction.

### D.    Mandatory Abstention Under Section 1334(c)(2) of the Code Is Warranted

If the Court finds that it has "related to" jurisdiction of the Chancery Court Action under section 1334 of the Code, all of the elements for mandatory abstention are met under subsection (c)(2) of section 1334.  In addition, remand of the Chancery Court Action is warranted for equitable grounds under section 1452(b) of the Code.

### 1.    Mandatory Abstention Is Not Waived

The Defendants argue incorrectly that Street waived his right to seek mandatory abstention because of the forum selection clauses in the Employment Agreements.

"Retention of jurisdiction provisions will be given effect, assuming there is bankruptcy court jurisdiction." *Resorts*, 372 F.3d at 161.  "Subject matter jurisdiction 'cannot be conferred by consent' of the parties." *Id*. (citations omitted).  Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement, even in a plan of reorganization.  *Id*. (citations omitted).  If there is no jurisdiction under 28 U.S.C. § 1334 or 28 U.S.C. § 157, retention of jurisdiction provisions in a plan of reorganization or trust agreement are fundamentally irrelevant.  *Id*.  *See also In re Insilco Technologies, Inc.,* 330 B.R. 512, 521 (Bankr. D. Del. 2005) (Court refused to assert jurisdiction over a cause of action created solely by state law and that did not otherwise fall within the provisions of 28 U.S.C. § 157); *In re Continental Airlines, Inc.*, 236 B.R. 318, 323 (Bankr. D. Del. 1999) (bankruptcy court explaining that when the court lacks subject matter jurisdiction over a matter, the parties cannot create such jurisdiction by adding a retention of jurisdiction provision to a plan or confirmation order); *United States*

11

*Trustee v. Gryphon at the Stone Mansion*, 216 B.R. 764, 769 (W.D. Pa. 1997) ("A retention of jurisdiction provision within a confirmed plan does not grant a bankruptcy court jurisdiction.").

Here, the Court does not have jurisdiction under section 1334 of the Code and no agreement between the parties can confer jurisdiction on it. Therefore, the forum selection clauses in the Employment Agreements are void.

## 2.    The Chancery Court Action Can Be Adjudicated Timely

The Defendants argument that Chancery Court Action cannot be adjudicated timely in the Chancery Court is simply wrong. First, the argument relies on the Defendant's erroneous premise that the Chancery Court Action requires adjudication of Street's alleged misconduct while acting as trustee. In addition, the Chancery Court Action is a summary proceeding brought to enforce Street's contractual right to advancement of fees and expenses provided in the Employment Agreements. Therefore, the Chancery Court Action would receive expedited treatment in the Chancery Court. *See Fuisz v. Biovail Technologies, Ltd.*, 2000 WL 1277369, *3 (Del. Ch. 2000) (Court finding that the passage of Section 145(k) reflects "a policy determination by the General Assembly that the [Chancery Court] should be receptive to and accord expedited treatment to claims for advancement of expenses raised by putative corporate indemnitees."); *see also* Donald Wolfe and Michael Pittenger, "Corporate and Commercial Practice in the Delaware Court of Chancery," §§ 8-1 and 8-6 (2006) ("Indeed, it has been observed that the filing of a motion to expedite in a proceeding designated as summary in nature, such as proceedings initiated pursuant to Section[ ] 145(k) . . . is superfluous and unnecessary."). Thus, had the Chancery Court Action not

been removed, resolution of Street's claims would likely have been achieved within a few months.

### 3.    Street's Involvement in the Bankruptcy Case Is Irrelevant

Mandatory abstention is not discretionary.  Nor is it a creature of familiarity with a forum, such as is the case with personal jurisdiction.  It is binary; either it applies or it does not.  As discussed in the Opening Brief, all of the requirements for mandatory abstention under section 1334(c)(2) of the Code are met in the present case.  *See Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006).

The Defendants cannot rely on *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984) to support of their argument that mandatory abstention is unwarranted..  In *Pacor*, the plaintiffs brought suit against the defendant for work-related exposure to asbestos.  The defendant then filed a third party complaint impleading the original manufacturer of the asbestos as third-party defendant.  The third-party defendant later filed for bankruptcy protection.  The Third Circuit affirmed the District Court's decision remanding the action to state court because "related to" jurisdiction did not exist.

The *Pacor* case was filed before the 1984 Bankruptcy Amendments and therefore was not subject to the current section 1334(c)(2) of the Code.  The Third Circuit noted that, had the matter been subject to the section 1334(c)(2) of the Code, it could not have been heard in federal court without the plaintiffs' consent because the district court would be mandated to abstain.  *Pacor*, 743 F.2d at 996 n.16.  The Court reasoned that "[t]he legislative history reveals that Congress was concerned about the *constitutionality* of granting to the federal courts 'related to' jurisdiction in cases where no independent basis for federal jurisdiction existed."  *Id.* (citing 130 CONG. REC. S6088-89 (May 21, 1984) (remarks of Sen. Dole)); *see also Stoe v. Flaherty*, 436 F.3d at 214 n.1 (Court finding that

13

the legislative history of section 1334(c)(2) tends to confirm that, out of deference to state courts and concern over the constitutional validity of the broad statutory reach of bankruptcy jurisdiction, Congress sought to give effect to the preferences of litigants who prefer a state forum, when state court adjudication would not unduly interfere with the administration of the bankruptcy estate.).

4.    The Chancery Court Action Should Be Remanded On Equitable Grounds

As discussed in the Opening Brief, equitable factors exist to justify remand of the Chancery Court Action under section 1452(b) of the Code, including: that section 1334(c)(2) of the Code directs that the Court must abstain from exercising jurisdiction; the Chancery Court Action involves only state law claims; there is no jurisdictional basis other than 28 U.S.C. § 1334; the Chancery Court Action is non-core; the Chancery Court Action will not affect the administration of the estate other than perhaps the amount available for final distribution to the Trust's beneficiaries; the plaintiff's choice of forum in the Delaware Chancery Court; and the Chancery Court Action can be adjudicated timely in the Delaware Chancery Court.

The Defendants argument that equitable grounds for remand do not exist is again based on their flawed premise that the claims asserted in the Chancery Court Action implicate and require a determination regarding Street's conduct while acting as trustee of the Trust.  As discussed above, a determination of the claims asserted in the Chancery Court Action is limited to interpretation of the employment contract provisions and a determination of whether the underlying investigation or actions giving rise to the claims provide a right to advancement of fees and expenses under the contracts.  The Chancery Court Action asserts claims that are routinely handled by the Chancery Court.  In

14

addition, the Chancery Court Action is a summary proceeding that is usually heard on an expedited basis. Therefore, remand of the Chancery Court Action to the Chancery Court is warranted.

## III.    CONCLUSION

For all of the foregoing reasons, Mr. Street respectfully requests that this Court (i) grant the Motion and remand the Chancery Court Action to the Delaware Chancery Court and abstain under section 1334(c) of the Code, (ii) grant Street attorneys fees and costs relating to the Removal Notice and this Motion under section 1447(c) of the Code, and (iii) grant any other relief the Court finds just and appropriate under the circumstances.

Dated:  March 7, 2007

/s/ Edmond D. Johnson
Edmond D. Johnson (No. 2257)
Phillip T. Mellet (No. 4741
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE   19899-1709
(302) 777-6500

- and -

Neil B. Glassman (No. 2087)
Peter B. Ladig (No. 3513)
Ashley B. Stitzer (No. 3891)
THE BAYARD FIRM
222 Delaware Avenue
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000

*Counsel for Chriss W. Street*

## CERTIFICATE OF SERVICE

I, Mary E. Augustine, hereby certify that on the 7th day of March, 2007, I caused a copy

of the **Petitioner Chriss W. Street's Reply Memorandum in Support of Motion to Remand**

**to Court of Chancery of the State of Delaware or for Abstention under 28 U.S.C. § 1334(c)**

to be served upon the parties listed below in the manner indicated


*VIA* **HAND DELIVERY**

David L. Finger, Esquire
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155

*VIA* **FIRST CLASS MAIL**

Robert T. Kugler, Esquire
Jacob B. Sellers, Esquire
LEONARD, STREET AND DEINARD,
  *Professional Association*
150 South Fifth Street, Suite 2300
Minneapolis, MN 55402



Mary E. Augustine (No. 4477)


653705-1