# FINGER & SLANINA, LLC
## ATTORNEYS AT LAW

David L. Finger, Resident, Wilmington Office:
One Commerce Center, 1201 Orange St., Suite 725
Wilmington, Delaware 19801-1155
Ph: (302) 884-6766 | Fax: (302) 984-1294
E-mail: dfinger@delawgroup.com
www.delawgroup.com

September 18, 2007

<u>Via E-Filing and Hand Delivery</u>
The Hon. Mary Pat Thynge
United States District Court
J. Caleb Boggs Federal Building
844 N. King Street
Room 6100, Lockbox 8
Wilmington, DE 19801

Re:     Chriss W. Street v. The End of the Road Trust, and American Trailer
        Industries, Inc.; Adv. Proceeding No. 07-00065-***; Proposed Scheduling
        Order.

Dear Magistrate Judge Thynge:

I write in accordance with the Court's instruction at Friday's teleconference regarding submission of Judge Walsh's June 22, 2007, Memorandum Opinion in the Daniel W. Harrow, as Successor Trustee of the End of the Road Trust, and American Trailer Industries, Inc. v. Chriss W. Street, Adv. Proc. No. 07-50398 (PJW) matter. Enclosed for the Court's consideration and as a supplemental exhibit to Defendants Memorandum in Opposition to Plaintiff's Motion for Remand, please find a copy of that Memorandum Opinion. Also, I note for the Court's convenience that Judge Walsh's Memorandum Opinion is reported at 369 B.R. 817 (Bankr. D. Del. 2007).

As always I am available at the convenience of the Court to answer any questions Your Honor may have.

Respectfully,

David L. Finger
(DE Bar ID #2556)

cc:     Clerk of the Court (via CM/ECF)
        Neil B. Glassman, Esq. (via CM/ECF)

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FRUEHAUF TRAILER CORPORATION, et al., | ) ) | Case Nos. 96-1563 through 96-1572(PJW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| DANIEL W. HARROW, AS SUCCESSOR TRUSTEE OF THE END OF THE ROAD TRUST, AND AMERICAN TRAILER INDUSTRIES, INC., | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 07-50398(PJW) |
| | ) | |
| CHRISS W. STREET, AS FORMER TRUSTEE OF THE END OF THE ROAD TRUST, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Neil B. Glassman
Ashley B. Stitzer
The Bayard Firm
222 Delaware Avenue
P.O. Box 25130
Wilmington, DE 19899

Edmond D. Johnson
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709

Attorneys for Defendant
Chriss W. Street

Robert T. Kugler
Robert L. DeMay
Jacob B. Sellers
Leonard, Street and Deinard
 Professional Association
150 South Fifth Street
Suite 2300
Minneapolis, MN 55402

David L. Finger
Finger & Slanina, LLC
One Commerce Street, Suite 725
Wilmington, DE 19801

Attorneys for Plaintiffs
Daniel W. Harrow and American
Trailer Industries, Inc.

Dated: June 22, 2007

2

**WALSH, J.**

        This opinion is with respect to the motion (Adv. Doc. #
14) of defendant Chriss W. Street ("Street") to dismiss the
complaint of Daniel W. Harrow ("Harrow") and American Trailer
Industries Inc. ("ATII") (collectively, "Plaintiffs").  For the
reasons described below, Street's motion to dismiss is denied.

BACKGROUND

        On October 7, 1996, Fruehauf Trailer Corp. ("Fruehauf")
and certain of its subsidiaries (collectively, the "Debtors") filed
voluntary petitions for bankruptcy under Chapter 11 of the
Bankruptcy Code.  (Adv. Doc. # 1, ¶ 7.)  On September 17, 1998,
this Court issued Findings of Fact and Conclusion of Law (the
"Confirmation Order") (Doc. # 1524) confirming the Debtors' Amended
Joint Plan of Reorganization (the "Plan") (Doc. # 1467), which
provided for an orderly liquidation of the Debtors' remaining
assets.  Under the terms of the Plan and a Liquidating Trust
Agreement (Adv. Doc. # 18, Ex. D), the Debtors' assets were
transferred to the End of the Road Trust (the "Trust"), which was
created for the sole purpose of liquidating the Debtors' assets and
effecting distributions to claimants.  (Adv. Doc. # 1, ¶ 9.)
Street was appointed as the Trustee under the Liquidating Trust
Agreement and commenced his initial term on October 27, 2001.  (Id.
at ¶ 34.)  Street also entered into employment agreements with the

3

Trust and with ATII (the "Employment Agreements").[1]  (<u>Id.</u> at ¶¶ 35, 37.)  On August 1, 2005, Street resigned from his positions and Harrow replaced him as the Trustee and as CEO and Chairman of the Board of ATII.  (<u>Id.</u> at ¶¶ 36, 38.)

Plaintiffs commenced this adversary proceeding on February 2, 2007.  The complaint alleges that Street mismanaged the Trust's assets and failed to properly execute his duties under the Liquidating Trust Agreement and the Employment Agreements by (1) engaging in self-interested business transactions (<u>Id.</u> at ¶¶ 39-77); (2) failing to prosecute adversary proceedings, file tax returns and otherwise appropriately administer the Trust's assets (<u>Id.</u> at ¶¶ 78-94); (3) ignoring corporate government formalities (<u>Id.</u> at ¶¶ 95-97); (4) authorizing improper gifts to third parties (<u>Id.</u> at ¶¶ 98-104); (5) commingling trust assets (<u>Id.</u> at ¶¶ 105-13); and (6) drawing far more compensation for himself than what he was entitled to under the Employment Agreements (<u>Id.</u> at ¶¶ 114-48). In light of these alleged actions, Plaintiffs assert the following claims against Street: (1) breach of the fiduciary duty of loyalty/self-dealing; (2) breach of the fiduciary duty of care; (3) breach of the fiduciary duty of good faith; (4) breach of the Liquidating Trust Agreement; (5) breach of the Employment Agreement

---

[1] ATII is a holding company formed for the sole purpose of holding shares of Fruehauf de Mexico, S.A. de C.V., a manufacturer of cargo trailers and the only operating asset of the Trust.  (Adv. Doc. # 1, ¶ 10.)  At the time that Street entered into the Employment Agreements, ATII was known as Frudemex, Inc.

4

with the Trust; (6) breach of the Employment Agreement with ATII;
(7) breach of the fiduciary duty to keep and render accounts; (8)
breach of the fiduciary duty to preserve the Trust's property; (9)
breach of the fiduciary duty to enforce claims; (10) breach of the
fiduciary duty to keep Trust property separate; (11) fraud; and
(12) conversion.    (<u>Id.</u> at ¶¶ 164-246.)    The breadth of the
complaint suggests a possible significant recovery for the Trust.

## DISCUSSION

Street has moved to dismiss Plaintiffs' complaint under
Rule 12(b) of the Federal Rules of Civil Procedure, which is made
applicable to this case by Rule 7012 of the Federal Rules of
Bankruptcy Procedure.    Street argues that Plaintiffs' complaint
should be dismissed under Rule 12(b)(1) because this Court lacks
subject matter jurisdiction over him and the issues raised in the
complaint.    Additionally, Street argues that Plaintiffs' counts for
breach of fiduciary duty should be dismissed under Rule 12(b)(6)
because they are based on the same underlying facts as Plaintiffs'
counts for breach of contract.

In considering a motion to dismiss under Rule 12(b)(1),
courts must determine "whether the allegations on the face of the
complaint, taken as true, allege facts sufficient to invoke the
jurisdiction of the district court." <u>Turicentro, S.A. v. Am.
Airlines Inc.</u>, 303 F.3d 293, 300 (3d Cir. 2002).    In considering a
motion to dismiss under Rule 12(b)(6), courts must again accept as

true all allegations in the complaint and draw all reasonable inferences in the light most favorable to the plaintiff. <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997); <u>Rocks v. Philadelphia</u>, 868 F.2d 644, 645 (3d Cir. 1989). A motion to dismiss under Rule 12(b)(6) should be granted "if it appears to a certainty that no relief could be granted under any set of facts which could be proved." <u>D.P. Enters. Inc. v. Bucks County Cmty. Coll.</u>, 725 F.2d 943, 944 (3d Cir. 1984).

## I. Subject Matter Jurisdiction

Street argues that Plaintiffs' complaint should be dismissed because this Court does not have subject matter jurisdiction over this dispute. Under 28 U.S.C. § 1334, "the district courts shall have original and exclusive jurisdiction of all cases under title 11 . . . [and] original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a), (b) (2007). Pursuant to 28 U.S.C. § 157(a), this matter has been referred to this Court by the District Court for the District of Delaware and this Court determines the § 1334(a) and (b) jurisdiction issue.[2]

---

[2] Street argues that this is a non-core proceeding while the Plaintiffs argue that it is a core proceeding. Presumably, these arguments are, in the case of Street, intended to distance this dispute from the bankruptcy case, and as to Harrow to show that the dispute is an integral part to the bankruptcy case. However, this Court need not resolve whether this is a core proceeding in order to determine whether subject matter jurisdiction exists. The distinction between core and non-core proceedings only exists

6

Plaintiffs argue that this Court has jurisdiction because this proceeding is "related to" the Debtors' bankruptcy case.  28 U.S.C. § 1334(b).  In the Third Circuit, the exercise of "related to" jurisdiction is appropriate where "the outcome could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984).[3]  While the standard extends broadly to cases where there need not even be a "likelihood" of effect on the estate, In re Marcus Hook, 943 F.2d at 264, "related to" jurisdiction "does not extend indefinitely, particularly after the confirmation of a plan and the closing of a case." In re Resorts, 372 F.3d at 164 (quoting Donaldson v. Bernstein, 104 F.3d 547, 553 (3d Cir. 1997)).  After confirmation, "the scope of the bankruptcy court's 'related to' jurisdiction diminishes." AstroPower Liquidating Trust v. Xantrex Tech., Inc. (In re AstroPower Liquidating Trust), 335 B.R. 309, 323

to dictate when a court may enter final judgments.  As I noted in EXDS v. CB Richard Ellis, Inc., "Whether a proceeding is core or non-core has no bearing on the court's subject matter jurisdiction over the case." 352 B.R. 731, 732 n.1 (Bankr. D. Del. 2006) (citing Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.), 372 F.3d 154, 163 (3d Cir. 2004); and In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 266 (3d Cir. 1991)).  As evidenced in the ensuing discussion, I find that this Court has "related to" jurisdiction over this proceeding.  I reserve for a later date the determination of whether this is a core or non-core proceeding.

[3] The U.S. Supreme Court favorably discussed the Pacor test for "related to" jurisdiction in Celotex Corp. v. Edwards, and noted that eight other circuit courts had adopted the Pacor test with little or no variation.  514 U.S. 300, 308 n.6, 115 S. Ct. 1493, 1499, 131 L. Ed.2d 403, 411 (1995).

7

(Bankr. D. Del. 2005).  However, courts may exercise post-confirmation jurisdiction where "there is a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement."  In re Resorts, 372 F.3d at 168-69.

Courts in the Third Circuit have shown a willingness to exercise "related to" jurisdiction over cases involving trusts that are successors to the interests of liquidating or reorganized debtors.  See, e.g., In re AstroPower Liquidating Trust, 335 B.R. 309; Michaels v. World Color Press, Inc. (In re LGI, Inc.), 322 B.R. 95, 108 (Bankr. D.N.J. 2005); EXDS, 352 B.R. 731; but see In re Resorts, 372 F.3d 154; Shandler v. DLJ Merch. Banking, Inc. (In re Insilco Techs., Inc.), 330 B.R. 512 (Bankr. D. Del. 2005). These trusts "by their nature maintain a connection to the bankruptcy even after the plan has been confirmed" because they are constructed as instrumentalities for the execution of the plan.  In re Resorts, 372 F.3d at 167.

Both parties cite extensively to In re Resorts, 372 F.3d 154.  Therefore I start with a brief statement of the Resorts holding.  The case involved an accounting malpractice suit against Price Waterhouse filed by the trustee of a litigation trust created by the debtor's (Resorts International, Inc.) plan of reorganization.  The debtor's plan of reorganization was confirmed

8

in August 1990 and provided for the transfer of certain causes of action to the litigation trust. The beneficial interests in the litigation trust were divided among certain classes of claims as designated by the plan. It appears that other classes of claims remained with the reorganized debtor and that these claimants did not become beneficiaries of the litigation trust. The sole assets of the trust were causes of action that the debtor asserted against Donald J. Trump and affiliated entities ("Trump"). Id. at 158 ("The assets assigned to the Litigation Trust were claims originally held by the debtor, Resorts International, Inc., against Donald J. Trump and affiliated entities, arising from Trump's 1988 leveraged buyout of the Taj Mahal Resort.") In May 1991, the trustee entered into a settlement agreement with Trump whereby Trump paid the Trust $12,000,000. In April 1997, the trustee sued Price Waterhouse alleging errors in accounting and tax advice. That advice was received by the trustee in connection with his dispute with the debtor as to the entitlement to certain accrued interest. The trustee sought damages for fees in excess of $500,000. The Third Circuit stated a general rule for "related to" jurisdiction following a confirmed plan: "Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus" to the bankruptcy case to permit "related to" jurisdiction. Id. at 167. However, the court found the nexus

9

to be too attenuated to permit "related to" jurisdiction.  As to

the application of Resorts to the matter before me, I particularly

note the following statements by the Third Circuit:

> [W]e believe this proceeding lacks a close
> nexus to the bankruptcy plan or proceeding and
> affects only matters collateral to the
> bankruptcy process.  The resolution of these
> malpractice claims will not affect the estate;
> it will have only incidental effect on the
> reorganized debtor; it will not interfere with
> the implementation of the Reorganization Plan;
> though it will affect the former creditors as
> Litigation Trust beneficiaries, they no longer
> have a close nexus to bankruptcy plan or
> proceeding because they exchanged their
> creditor status to attain rights to the
> litigation claims;
>
> * * *
>
> The Litigation Trust's connection to the
> bankruptcy is not identical to that of the
> estate. . . . The deliberate act to separate
> the litigation claims from the bankruptcy
> estate weakens the Trustee's claim that the
> Litigation Trust has the same jurisdictional
> nexus as that of the estate.
>
> * * *
>
> Resolution of this matter will not require a
> court to interpret or construe the Plan or the
> incorporated Litigation Trust Agreement.
> Whether Price Waterhouse was negligent or
> breached its contract will not be determined
> by reference to those documents.  There is no
> dispute over their intent.  The Trustee's
> claims are "ordinary" professional negligence
> and breach of contract claims that arise under
> state common law.  Though the Plan and Trust
> Agreement provide the context of the case,
> this bare factual nexus is insufficient to
> confer bankruptcy jurisdiction.

Id. at 169-170.

10

Relying primarily on <u>Resorts</u>, Street argues that "related to" jurisdiction does not exist here.  However, <u>Resorts</u> is readily distinguishable from the facts here.  There are factual and contractual elements in this adversary proceeding that make it clear that the connection between this proceeding and the related bankruptcy case is markedly closer than the trustee's suit and the related bankruptcy case in <u>Resorts</u>.  Street had the primary authority and responsibility in the liquidation of all non-cash assets of the estate and in effecting distributions to all remaining claimants.  This is amply shown in numerous provisions of the Plan documents as discussed below.

In <u>Resorts</u> the plan and the confirmation order contemplated that the litigation trust would hire an accounting firm, but did not name an accounting firm.  <u>Id.</u> at 171 n.12.  By contrast, the Plan, the Disclosure Statement and the Confirmation Order in this case specifically state that Street should be the Trustee.  Section 1.44 of the Plan provides the following definition: "'Liquidating Trustee' or 'Trustee' means Chriss Street or his successor selected in accordance with the Liquidating Trust Agreement, as trustee for the Liquidating Trust." (Doc. # 1467, p. 5.)  The Disclosure Statement states:

> It is anticipated that Mr. Street, on or before the Effective Date of the Plan, will enter into (i) an employment agreement with the Liquidating Trust which will provide for his employment as Trustee, and (ii) an employment agreement with Fruehauf de Mexico,

11

> which will provide for his employment as
> Chairman of the board and Chief Executive
> Officer of Fruehauf de Mexico.

(Doc. # 1466, p. 34.)  The Confirmation Order states:

> The Debtors are authorized to engage the
> services of Chriss Street as Liquidating
> Trustee . . . and, by entry of this Order, his
> retention is hereby approved.

(Doc. # 1524, p. 7.)  Street was not merely selected by the Trust,

but was approved by the Court to carry out the substantial and

important tasks in the consummation of the Plan.  (Id.)  Approval

of this Court is also required under the Liquidating Trust

Agreement to remove a Trustee and appoint a successor trustee.  The

Liquidating Trust Agreement provides:

> Removal.  Any person serving as Trustee may be
> removed at any time, for cause, upon entry of
> a Final Order of the Bankruptcy Court removing
> the Trustee and acceptance by a successor
> Trustee of his appointment.
>
> Appointment of a Successor Trustee.  If the
> Trustee gives notice of his intent to resign .
> . . or is removed . . . or dies or becomes
> incapable of acting, the Trust Advisory
> Committee shall select a successor Trustee to
> act under this Agreement and such successor
> shall be approved by the Bankruptcy Court.

(Adv. Doc. # 18, Ex. D, p. 12.)  Pursuant to these provisions, on

August 18, 2005 this Court entered a consent order confirming

Street's resignation as trustee and approving the selection of

Harrow as successor trustee. (Doc. # 1807.)

More than just a professional retained by the trust,

Street was a fiduciary appointed by this Court.  The Fifth Circuit

12

has recognized bankruptcy courts' inherent authority to police their own fiduciaries:

> A *sine qua non* in restructuring the debtor-creditor relationship is the court's ability to police the fiduciaries, whether trustees or debtors-in-possession and other court-appointed professionals, who are responsible for managing the debtor's estate in the best interest of creditors. The bankruptcy court must be able to assure itself and the creditors who rely on the process that court-approved managers of the debtor's estate are performing their work, conscientiously and cost-effectively.

Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.), 163 F.3d 925, 931 (5th Cir. 1999), cert. denied, 527 U.S. 1004, 144 L. Ed. 2d 236, 119 S. Ct. 2339 (1999), cited with approval in In re Resorts, 372 F.3d at 163.[4]

While the accounting firm's involvement in Resorts was only "collateral to the bankruptcy process," In re Resorts, 372 F.3d at 169, the role of the Trustee under the Plan is central and essential. The trust in Resorts had a very narrow focus, namely, the liquidation of claims against a single person and related entities for the benefit of limited classes of creditors. In re Resorts, 372 F.3d at 158. By comparison, the Trust in this matter has a much broader scope, having succeeded to all of the remaining

---

[4]    The Fifth Circuit made this statement in the context of determining whether the case was core or non-core, which, as noted in footnote 2 supra, is an issue that is distinct from the issue of subject matter jurisdiction. However, inasmuch as this statement addresses the permissible scope of bankruptcy court oversight, it seems to also apply to the appropriate exercise of jurisdiction.

13

assets and claims of the estate, the Trust undertook the tasks of liquidating the remaining assets, being the sole entity authorized to object to claims, effecting distributions pursuant to the Plan, and supervising the Plan consummation process over a three to five year period. The broad scope of the Trust is evidenced by the following provisions of the Plan, the Liquidating Trust Agreement and the Confirmation Order.  The Plan provides:

> 6.6   Transfer by Debtors of Assets to the Liquidating Trust.  On the Effective Date, the Debtors shall convey all of their remaining assets to the Liquidating Trust free and clear of all liens, claims and encumbrances on behalf of and for the benefit of the creditors who will receive a beneficial interest in the liquidating Trust.
>
> 6.13  Objections to Claims. . . . After the Effective Date, the Liquidating Trust shall have the exclusive right to object to Claims.
>
> 7.2    Cash    Distributions.    All Cash distributions made pursuant to the Plan shall be made by the Liquidating Trustee from the Liquidating Trust estate. . . .

(Doc. # 1467, pp. 14-17.)   The Liquidating Trust Agreement provides:

> 2.2 Property of the Liquidating Trust.  Upon execution hereof, the Debtor and the Indenture Trustee,   on   behalf   of   the   Beneficial Interestholders, shall grant, convey, transfer and   assign   to   the   Liquidating   Trust   the property described on Exhibit "A" attached hereto and made a part hereof. . . . The Trustee   shall   hold   such   property   in Liquidating   Trust   to   be   administered   and disposed of by him pursuant to the terms of the Plan and this Agreement.

14

> 2.3 <u>Purpose of Liquidating Trust</u>. This
> Liquidating Trust is organized for the sole
> purpose of conserving and liquidating the
> Trust Estate for the benefit of the Beneficial
> Interestholders as herein set out, with no
> objective to engage in the conduct of a trade
> or business (although companies whose stock is
> owned by the Liquidating Trust may operate a
> business). Pursuant to this express purpose,
> the Trustee is hereby authorized and directed
> to take all reasonable and necessary actions
> to conserve and protect the Trust Estate and
> to sell, lease, or otherwise dispose of the
> Trust Estate, and to distribute the net
> proceeds of such disposition, as hereinafter
> set out, in as prompt, efficient and orderly a
> fashion as possible in accordance with the
> provisions of Section Six hereof and the Plan.

(Adv. Doc. # 18, Ex. D, pp. 2-3.) The Confirmation Order provides: "After the Effective Date, the Liquidating Trust shall retain and have the exclusive right to object to Claims on any basis." (Doc. # 1524, p. 17.)

While the trust in <u>Resorts</u> was responsible for executing on a very limited portion of the estate, the Trust in this case is responsible for the disposition of the entirety of the remaining assets of, and the claims against, the estate. Unlike the malpractice claim in <u>Resorts</u>, the claims against Street in this case may have a significant effect on the Plan implementation because Street's alleged bad conduct occurred in the course of his duties as the central figure in the consummation of the Plan and administration of the estate assets.

In addition to this Court's involvement in placing Street in the central role of carrying out the Plan as noted above, this

15

Court's intended involvement in the Plan's long term implementation

is further found in the relevant documents.  The Plan provides:

> 6.7(h) Limitation on the Liquidating Trustee.
> Two holders of Senior Notes will serve as the
> Trust Advisory Committee.  Either Bankruptcy
> Court approval or unanimity among the Trust
> Advisory Committee members and Liquidating
> Trustee is required before the Liquidating
> Trustee can [enter into certain large monetary
> transactions]. . . .If unanimity does not
> exist regarding the proposed action and
> Bankruptcy Court approval is requested, the
> Liquidating Trust shall pay the attorneys fees
> incurred by the objecting Committee member, up
> to $25,000 per member during the term of the
> Liquidating Trust.

(Doc. # 1467, p. 15.)

> 12.4 Governing Law.  Except to the extent the
> Bankruptcy Code, the Bankruptcy Rules or the
> Delaware General Corporation Law are
> applicable, the rights and obligations arising
> under the Plan shall be governed by, and
> construed and enforced in accordance with the
> laws of the State of Delaware, without giving
> effect to the principles of conflicts of law
> thereof.

(Id. at p. 25.)  The Liquidating Trust Agreement provides:

> 5.4.2 Court Approval.  In the event there is
> not unanimous agreement by the Trust Advisory
> Committee members and a dispute exists between
> the members of the Trust Advisory Committee
> with respect to any actions described in 5.4.1
> [i.e., certain large financial transactions]
> proposed by the Liquidating Trustee, and the
> dispute cannot be resolved by agreement, the
> Liquidating Trustee shall seek Bankruptcy
> Court approval of the proposed course of
> action.

(Adv. Doc. # 18, Ex. D, p. 6.)

      8.2  <u>Discretionary Submission of Questions to the Court</u>.  The Trustee, in his discretion and judgment, may submit to the Court any question or questions regarding which the Trustee may desire to have explicit approval of the Court for the taking of any specific action proposed to be taken by the Trustee with respect to the Trust Estate, or any part thereof, or the administration and distribution of the Trust Estate.

(<u>Id.</u> at p. 10.)

      8.7.1 <u>Resignation</u>.  The Trustee may resign and be discharged from any future obligations hereunder by filing written notice thereof with the Bankruptcy Court and serving the notice on the Trust Advisory Committee at least thirty (30) days prior to the effective date of such resignation.  Such resignation shall become effective on the later of (i) thirty (30) days after the giving of such notice, or (ii) after appointment of a permanent or interim successor trustee.

(<u>Id.</u> at p. 12.)

      Section 9.2  <u>Determination of Liquidation</u>. The Trustee may request that the Bankruptcy Court find that the Trustee has disposed of such of the Trust Estate that it has effectively been liquidated.  If the Bankruptcy Court so finds, the Liquidating Trust shall be deemed terminated pursuant to Section 9.1(b).

(<u>Id.</u> at p. 13.)  The Confirmation Order provides:

      The Liquidating Trustee shall have the right, to the full extent permitted by section 1142 of the Code, to apply to this Court for an order, notwithstanding any otherwise applicable nonbankruptcy law, directing any appropriate entity to execute and deliver an instrument or perform any other act necessary to implement the Plan or the provisions of this Order.

(Doc. # 1524, p. 13.)

> Notwithstanding the entry of this Order or the
> occurrence of the Effective Date, this Court
> shall retain such jurisdiction over the
> Reorganization Case after the Effective Date
> as is set forth in Article 11 of the Plan.

(Id. at p. 18.)  Included in Article 11 of the Plan are the matters

for which this Court retained jurisdiction, including to

"[d]etermine any other matters that may arise in connection with or

relate to the Plan, the Disclosure Statement, the Confirmation

Order or any contract, instrument, release, or other agreement or

document created in connection with the Plan or the Disclosure

Statement."  (Doc. # 1467, p. 24.)   The Employment Agreement

between the Trust and Street provides: "6(i) Any dispute or

controversy arising under or in connection with this Agreement

shall be settled exclusively by the Bankruptcy Court."  (Adv. Doc.

# 18, Ex. E, p. 7.)   (In that document, "Bankruptcy Court" is

defined as the "U.S. Bankruptcy Court for the District of

Delaware.")  The Employment Agreement between Frudemex, Inc. and

Street contains an identical provision.  (Adv. Doc. #18, Ex. F, p.

7.)

Although the court in <u>Resorts</u> found that jurisdiction did

not exist, it noted that post-confirmation jurisdiction can exist

in some cases.  <u>In re Resorts</u>, 372 F.3d at 165 (finding that

"though the scope of bankruptcy court jurisdiction diminishes with

plan confirmation, bankruptcy court jurisdiction does not disappear entirely"). In fact, as the court stated:

> Post-confirmation jurisdiction is assumed by statute and rule: 11 U.S.C. § 1142(b) authorizes the bankruptcy court to "direct the debtor and any other necessary party . . . to perform any other act . . . that is necessary for the consummation of the plan," and Fed. R. Bankr. P. 3020(d) provides that "notwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate."

Id. at 165 (interior citations omitted). I find that this proceeding is the type of dispute where the court in Resorts suggested that post-confirmation jurisdiction would be appropriate because it arises out of conduct that is "necessary for the consummation of the plan" under 11 U.S.C. § 1142(b) and "necessary to administer the estate" under Fed. R. Bankr. P. 3020(d). Id.

In addition to the numerous provisions in the Plan documents discussed above that favor the exercise of "related to" jurisdiction, I note the following matters that lend further support:

(1) When Fruehauf filed its petition, Street was the CEO and chairman of the Board (with just two directors). Street was involved in the formation of contracts that provided for jurisdiction in this Court. As noted above, in the Employment Agreements, the parties, including Street, selected this Court as the exclusive venue for resolution of disputes and controversies arising out of those agreements. Also as noted above, the Plan

contains a provision that retains jurisdiction for this Court to "[d]etermine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Disclosure Statement." (Doc. # 1467, p. 24.)  The provisions in the Plan and the Employment Agreements alone are not sufficient to establish subject matter jurisdiction, because neither courts nor parties can write their own jurisdictional tickets. In re Resorts, 372 F.3d at 161.  Where subject matter jurisdiction does not exist, it cannot be artificially created in a plan of reorganization.  In re Continental Airlines, Inc., 236 B.R. 318, 323 (Bankr. D. Del. 1999), aff'd, 2000 WL 1425751 (D. Del. September 12, 2000), aff'd, 279 F.3d 226 (3rd Cir. 2002).  "However, while preserving jurisdiction in the plan does not act to confer jurisdiction, it can provide proof of a close nexus between the claims and the bankruptcy case."  EXDS, Inc. v. CB Richard Ellis, Inc. (In re EXDS, Inc.), 352 B.R. 731, 735 (Bankr. D. Del. 2006).  As Plaintiffs point out, (and Street nowhere denies) Street was responsible for the formulation of the Plan and drafted the Employment Agreements.  Therefore, exercise of jurisdiction is not only warranted, but was explicitly agreed to by Street.

(2) Following Street's resignation as Trustee in August 2005, in November 2005 Harrow sought permission from the Court to

take discovery of Street pursuant to Rule 2004.  The purpose of the discovery was to investigate Street's conduct during his tenure as Trustee.  An agreed upon Order was entered by the Court on December 2, 2005 (Doc. # 1826) pursuant to which, the Trust issued a subpoena for extensive document discovery and a deposition of Street.  Street produced the documents and appeared for an extensive deposition.  Following Harrow's investigation, he filed the complaint in this action on February 2, 2007.  (Adv. Doc. # 1.)

(3) On March 2, 2007, Harrow filed a motion in this Court seeking authorization to effect an unusual arrangement for substantial distributions to the Trust beneficiaries.  (Doc. # 1916.)  Claiming certain indemnification rights, Street filed an objection to the motion.  Notably, Street did not challenge the Court's jurisdiction in his objection.  On May 10, 2007 the Court entered an order granting Harrow's motion. (Doc. # 1945.)  Street's stance that this Court does not have subject matter jurisdiction over this dispute contradicts Street's earlier request that the Court exercise its jurisdiction to ensure him his indemnification rights.

In summary, this adversary proceeding is closely tied to the execution and administration of the Plan and the Liquidating Trust Agreement so that there is clearly a sufficiently close nexus between this proceeding and the Fruehauf bankruptcy case to warrant the exercise of post-confirmation "related to" jurisdiction.

21

## II. Breach of Fiduciary Duty Claims

Street argues that Plaintiffs' counts for breach of fiduciary duty must be dismissed under Delaware law because they are based on the same conduct as Plaintiffs' counts for breach of contract. Analyzing Plaintiffs' claims under the framework of fiduciary law, Street argues, would undermine the primacy of contract law over fiduciary law in matters involving contract rights. Gale v. Bershad, Civ. No. 15714, 1998 Del. Ch. LEXIS 37, at *22 (Del. Ch. Mar. 3, 1998). Plaintiffs argue that, regardless of what Delaware law says about the primacy of contract law, federal pleading rules allow Plaintiffs to allege alternative theories of liability. Verizon N.J., Inc. v. Ntegrity Telecontent Servs., 219 F. Supp. 2d 616, 635 (D.N.J. 2002). Rule 8(e)(2) of the Federal Rules of Civil Procedure allows parties to "set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses." Because federal pleading rules apply in federal courts even where the underlying rights at issue are derived from state law, Abrams v. Koether, 766 F. Supp. 237, 257-58 (D.N.J. 1991), Plaintiffs argue that their breach of fiduciary duty claims are properly pled and should not be dismissed.

Plaintiffs are correct in asserting that they have properly pled their claim for breach of fiduciary duty under federal procedural rules. However, this only shows the procedural

sufficiency, not the substantive sufficiency of Plaintiffs' breach of fiduciary duty claims.  While it is clear under Rule 8(e)(2) that Plaintiffs' claims are *procedurally* adequate, Plaintiffs must respond to Street's argument and show that a complaint alleging overlapping claims for breach of contract and breach of fiduciary duty is *substantively* viable under Delaware law.

Street cites a line of cases where courts have dismissed breach of fiduciary duty claims that arise out of the same facts as asserted breach of contract claims.  <u>Gale</u>, 1998 Del. Ch. LEXIS 37; <u>Blue Chip Capital Fund II L.P. v. Tubergen</u>, 906 A.2d 827 (Del. Ch. 2006); <u>Solow v. Aspect Res., LLC</u>, Civ. No. 20397, 2004 Del. Ch. LEXIS 151 (Del. Ch. Oct. 19, 2004); <u>BAE Sys. N. Am. Inc. v. Lockheed Martin Corp.</u>, Civ. No. 20456, 2004 Del. Ch. LEXIS 119 (Del. Ch. Aug. 3, 2004); <u>Winston v. Mandor</u>, 710 A.2d 835 (Del. Ch. 1997).  For ease, I will refer to these cases as the "<u>Gale</u> Cases." There is another line of cases where Delaware courts have allowed overlapping fiduciary duty and contract claims to go forward.  <u>RJ Assocs. v. Health Payors' Org. Ltd. Pshp.</u>, C.A. No. 16873, 1999 Del. Ch. LEXIS 161 (Del. Ch. July 16, 1999); <u>Cantor Fitzgerald, L.P. v. Cantor</u>, 724 A.2d 571 (Del. Ch. 1998); <u>Universal Studios v. Viacom Inc.</u>, 705 A.2d 579 (Del. Ch. 1997).  These cases I will call the "<u>RJ</u> Cases."  None of these cases can be applied to the case at hand without some difficulty; none of them address relationships

that compare closely to the relationship between the trustee and the beneficiaries of the Trust in this case.

## A. The Gale Cases

The courts in the <u>Gale</u> Cases dismissed overlapping fiduciary duty claims because

> To allow a fiduciary duty claim to coexist in parallel with an implied contractual claim, would undermine the primacy of contract law over fiduciary law in matters involving the essentially contractual rights and obligations of preferred stockholders. Stated differently, because the contract claim addresses the alleged wrongdoing by the Board, any fiduciary duty claim arising out of the same conduct is superfluous.

<u>Gale</u>, 1998 Del. Ch. LEXIS 37, at *22. This rule allows courts to view contracting parties' actions through "the framework created and crafted by the parties themselves," rather than the one-size-fits-all framework of fiduciary law. <u>Solow</u>, 2004 Del. Ch. LEXIS 151 at *18.

Several of the <u>Gale</u> Cases involve breach of contract and breach of fiduciary duty claims brought by preferred shareholders who claim that their fiduciaries deprived them of their preferred shareholder rights. <u>Gale</u>, 1998 Del. Ch. LEXIS 37; <u>Blue Chip Capital Fund II</u>, 906 A.2d 827; <u>Winston</u>, 710 A.2d 835. Plaintiffs argue that these cases only hold that preferred shareholders cannot bring breach of fiduciary duty claims for rights that arise out of contracts and that are particular to preferred shareholders. According to Plaintiffs, these cases do not apply to cases like the

one at hand where Plaintiffs claim that they were denied rights that are shared equally among all of the Trust's beneficiaries to whom Street owed fiduciary duties. In support of this argument Plaintiffs quote from <u>Jedwab v. MGM Grand Hotels, Inc.</u>, 509 A.2d 584 (Del. Ch. 1986) where the Chancery Court stated:

> [W]ith respect to matters relating to preferences or limitations that distinguish preferred stock from common, the duty of the corporation and its directors is essentially contractual and the scope of the duty is appropriately defined by reference to the specific words evidencing that contract; where however the right asserted is not to a preference as against the common stock but rather a right shared equally with the common, the existence of such right and the scope of the correlative duty may be measured by equitable as well as legal standards.

<u>Id.</u> at 594.

Without necessarily buying into Plaintiffs' distinction, I find the <u>Gale</u> Cases difficult to apply here given the quite dissimilar facts in the matter before me versus those cases. Plaintiffs' breach of fiduciary duty claims do not seem superfluous to their breach of contract claims because the claims involve differing standards for analyzing Street's conduct. Under a fiduciary law analysis, Street's conduct would be held to the standard applicable to fiduciary trustees: "[A] Trustee's duty to his trust and to his beneficiaries in administering the trust is to exercise the care and skill a man of ordinary prudence would exercise in dealing with his own property in the light of the

situation existing at the time." <u>Wilmington Trust Co. v. Coulter</u>, 200 A.2d 441, 448 (Del. 1964); <u>see also</u> <u>Law v. Law</u>, 753 A.2d 443, 447 (Del. 2000). Furthermore, "[a] trustee is also under a duty to deal fairly with the beneficiaries and not to place his personal interests . . . ahead of the interests of the Trust and its other beneficiaries." <u>In re Estate of Howell</u>, C.A. No. 17760-NC, 2002 Del. Ch. LEXIS 153, at *6 (Del. Ch. Dec. 20, 2002). Under a contractual analysis, Street's conduct must be held to the standard agreed upon by the parties. The Liquidating Trust Agreement states:

> No provision of this Agreement shall be construed to impart any liability upon the Trustee unless it shall be proved in a court of competent jurisdiction that the Trustee's actions or omissions constituted gross negligence or willful misconduct in the exercise of or failure to exercise any right, power or duty vested in him under this Agreement. The Trustee shall have no personal liability for any of the rights, obligations, duties, or liabilities of the Debtor, Debtor's bankruptcy estate, or the Liquidating Trust.

(Adv. Doc. # 18, Ex. D, p. 11.) As the applicable standards may be different under the contract and the fiduciary analyses, it is conceivable that Street could be found not liable for the breach of contract claims, but liable for the breach of fiduciary duty claims. Therefore, the breach of fiduciary duty claims do not appear to be "superfluous" at this stage of the proceedings.

<u>    B. The RJ Cases</u>

26

The <u>RJ</u> Cases do not apply to this case with any more similarity than the <u>Gale</u> Cases.  In <u>RJ Associates</u>, the Chancery Court ruled in direct contrast to the <u>Gale</u> Cases that "[conduct by an entity that occupies a fiduciary position . . . may form the basis of both a contract and a breach of fiduciary duty claim." 1999 Del. Ch. LEXIS 161, at *34.  However, that statement was made in the context of the Chancery Court's observation that the relevant partnership agreement "expressly states that [the defendant] 'shall be under a fiduciary duty to conduct and manage the affairs for the Partnership in a prudent, businesslike and lawful manner.'"  <u>Id.</u> at *33 n.36.

The Chancery Court cited two prior Chancery Court cases, <u>Cantor Fitzgerald, L.P. v. Cantor</u>, 724 A.2d 571; and <u>Universal Studios, Inc. v. Viacom, Inc.</u>, 705 A.2d 759, in support of its ruling.  The Chancery Court in <u>Cantor Fitzgerald</u> also allowed for overlapping breach of fiduciary duty and breach of contract claims in a situation where the fiduciary duty was acknowledged in the contract itself.  724 A.2d at 582.  The Chancery Court opined that "[w]here a fiduciary duty of loyalty is expressly written into an agreement, or where authority is granted to include this provision at a later time, I must conclude that the parties bargained for the provision."  <u>Id.</u>  However, in <u>Universal Studios</u>, there appears to be no such contractual fiduciary duty statement.  705 A.2d 579.  In that case the parties were involved as co-ventures and partners

pursuant to a detailed contract. The Chancery Court found that the defendant's fiduciary obligations arose out of the relationship between the parties, Id. at 594, and were only "implied in the terms of the covenant not to compete" from which the dispute arose. Id. at 600.

I believe that the fiduciary duty is implicit in the Liquidating Trust Agreement. To rule otherwise would elevate form over substance. If an agreement unequivocally creates a trust and appoints an individual to act as the trustee with respect to trust property, it seems anomalous to suggest that a fiduciary relationship has not been created. The Third Circuit has stated that "[a] trust is defined as a fiduciary relationship with respect to property, subjecting the person with legal title to equitable duties to deal with the property for the benefit of another person, 'which arises as a result of a manifestation of an *intention* to create it.'" In re Columbia Gas Sys., 997 F.2d 1039, 1064 (3d Cir. 1993), cert. denied, 510 U.S. 1110, 114 S. Ct. 1050, 114 S. Ct. 1050, 127 L. Ed. 2d 372 (1994) (quoting Restatement (Second) of Trusts, § 2 (1959)).

Likewise in Legatski v. Bethany Forrest Associates, the Delaware Superior Court, quoting Black's Law Dictionary (8th ed. 2004), defined "fiduciary" as "A person who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good

faith, trust, confidence, and candor." C.A. No. 03C-10-011-RFS, 2006 Del. Super. LEXIS 196, at *9 (Del. Super. Ct. Apr. 28, 2006). Finally, I note the Black's definition of a "trustee" as "One who, having legal title to property, holds it in trust for the benefit of another and owes a fiduciary duty to that beneficiary."

There is some suggestion in the Gale Cases that contractual analysis is preferable to fiduciary analysis because enforcing contracts gives effect to "the framework created and crafted by the parties themselves." Solow, 2004 Del. Ch. LEXIS 151 at *18. From a policy perspective, there is value in allowing parties to custom tailor standards to govern their conduct in contracts. However, in this case the Plan, the Disclosure Statement, and the Litigation Trust Agreement provided for the creation of a "trust," and the Employment Agreements gave Street a job as a "trustee." By definition these terms connote the creation of fiduciary duties. In this sense, the application of fiduciary duty law is arguably part and parcel of what was intended in the relevant documents.

The relevant agreements here are quite unlike the agreements addressed by the Chancery Court in the cases that hold that the fiduciary duty counts are superfluous to the breach of contract counts. In Moore Business Forms v. Cordant Holdings, the Chancery Court noted that determinations of whether a given claim is governed by contract or fiduciary principles "are highly fact-

29

specific and contextual and do not easily lend themselves to a 'bright line' rule."  1995 Del. Ch. LEXIS 134, at *16.  Thus, I will deny the motion to dismiss Plaintiffs' breach of fiduciary duty claims without prejudice to revisit the issue later, likely at trial time.  This disposition will not be prejudicial to Street since if, as he asserts, the fiduciary duty counts are based on the same facts as the breach of contract counts there will be no additional burden on Street in the discovery and trial preparation phase of the proceeding.

## CONCLUSION

Based on the foregoing discussion, Street's motion to dismiss Plaintiffs' claims for breach of fiduciary duty is denied without prejudice.  In all other respects, Street's motion is denied with prejudice.