

# FINGER & SLANINA, LLC
## ATTORNEYS AT LAW

David L. Finger, Resident, Wilmington Office:
One Commerce Center, 1201 Orange St., Suite 725
Wilmington, Delaware 19801-1155
Ph: (302) 884-6766 | Fax: (302) 984-1294
E-mail: dfinger@delawgroup.com
www.delawgroup.com

February 20, 2008

***Via E-Filing and Hand Delivery***
The Honorable Joseph J. Farnan, Jr.
United States District Court
844 N. King Street, Lockbox 27
Wilmington, DE 19801

> **Re:** *Chriss W. Street v. The End of the Road Trust, and American Trailer Industries, Inc.,* C.A. No. 07-00065-JJF

Dear Judge Farnan:

I respectfully write in accordance with Local Rule 7.1.3 to bring to the Court's attention subsequent authority bearing on the issues raised in Plaintiff's Motion for Remand and Defendants' Opposition thereto (collectively the "Remand Motion").

Briefing on the Remand Motion was concluded on May 10, 2007. Since then the Third Circuit has spoken on the issues raised in the Remand Motion and the United States District Court for the Central District of California has addressed those issues in the context of another case between the parties. In that regard, enclosed for the Court's consideration and as a supplemental exhibit to Defendants Memorandum in Opposition, please find a copy of the Third Circuit's opinion in *In re Seven Fields Dev. Corp.*, 505 F.3d 237 (3rd Cir. 2007), and the Honorable Alicemarie H. Stotler's Memorandum Opinion and Order in *Chriss Street v. Daniel Harrow, et al.*, C.A. No. 07-829 (AHS) (C.D. Ca. Nov. 29, 2007).

With respect to Plaintiff's February 15, 2008 letter to this Court (D.I. 32), Defendants do not intend to respond to that letter, but Defendants' silence on the factual and legal allegations contained therein should in no way be deemed as Defendants' agreement with or acquiescence to those allegations. Defendants intend to address those assertions at the appropriate time.

Counsel is available at the convenience of the Court to discuss this matter further.

Respectfully,

David L. Finger
(DE Bar ID #2556)

cc:    Charlene D. Davis, Esq. (via CM/ECF and e-mail)

Westlaw

505 F.3d 237                                                                                  Page 1
505 F.3d 237, 48 Bankr.Ct.Dec. 276, Bankr. L. Rep. P 81,040
(Cite as: 505 F.3d 237)

In re Seven Fields Development Corp.
C.A.3 (Pa.),2007.

United States Court of Appeals,Third Circuit.
In re SEVEN FIELDS DEVELOPMENT
CORPORATION, Debtor.
Mary Geruschat; Dolores Speney; Antoinette
Morocco; and Donna M. Buxton, Appellants
v.
Ernst Young LLP; Charles Modispacher.
**No. 06-3658.**

Argued June 28, 2007.
Filed: Oct. 24, 2007.

**Background:** Creditors filed state court action against accountants that had represented debtors in Chapter 11 case for their alleged malpractice. After removal, the Bankruptcy Court, Warren W. Bentz, J., 331 B.R. 208, denied investors' motion to remand and dismissed complaint. Investors appealed. The United States District Court for the Western District of Pennsylvania, Gary L. Lancaster, J., 346 B.R. 123, affirmed, and investors appealed.

**Holdings:** The Court of Appeals, Greenberg, Circuit Judge, held that:

(1) Court of Appeals lacked jurisdiction to review decision not to remand;

(2) statute in effect at time creditors filed action governed issue of whether Court of Appeals had authority to review bankruptcy court's decision not to abstain; and

(3) creditors' malpractice action was core proceeding.

Affirmed.

West Headnotes

**[1] Bankruptcy 51 ☜2091**

51 Bankruptcy

51I In General
51I(D) Venue; Personal Jurisdiction
51k2086 Transfer or Removal of Proceedings
51k2091 k. Remand to State Court.
Most Cited Cases
Bankruptcy court's decision not to remand case to state court on basis of defendant's filing of notice of removal with bankruptcy clerk and not district court clerk and defendant's failure to seek to reopen bankruptcy case before filing its notice of removal addressed proposed remand on equitable grounds, and thus Court of Appeals lacked jurisdiction to review decision. 28 U.S.C.A. § 1452(b).

**[2] Bankruptcy 51 ☜3444.50(2)**

51 Bankruptcy
51XI Liquidation, Distribution, and Closing
51k3444 Reopening
51k3444.50 Proceedings
51k3444.50(2) k. Standing; Sua Sponte Determinations. Most Cited Cases
It is within bankruptcy judge's discretion to reopen bankruptcy case sua sponte so that matters that have significant connection with case's administration can be addressed. 11 U.S.C.A. §§ 105(a), 350.

**[3] Bankruptcy 51 ☜2091**

51 Bankruptcy
51I In General
51I(D) Venue; Personal Jurisdiction
51k2086 Transfer or Removal of Proceedings
51k2091 k. Remand to State Court.
Most Cited Cases
Decisions of bankruptcy and district courts not to remand case to state court on basis that bankruptcy court lacked jurisdiction and argument that bankruptcy court did not have authority to exercise final adjudicative authority, while not per se reviewable under statute prohibiting review of decisions not to remand, nevertheless were subject to appellate review to ensure that court did not exceed their constitutional and statutory authority. 28 U.S.C.A. §§ 157(c), 158(a), 1452(b).

505 F.3d 237                                                      Page 2
505 F.3d 237, 48 Bankr.Ct.Dec. 276, Bankr. L. Rep. P 81,040
(Cite as: 505 F.3d 237)

**[4]** Bankruptcy 51 ☞3765

51 Bankruptcy
  51XIX Review
    51XIX(B) Review of Bankruptcy Court
      51k3762 Jurisdiction
        51k3765 k. Court of Appeals. Most Cited Cases
Statute in effect at time creditors filed state court action against accountants that represented debtor in bankruptcy case, rather than statute in effect when bankruptcy petition was filed, governed issue of whether Court of Appeals had authority to review bankruptcy court's decision not to abstain. 28 U.S.C.A. § 1334.

**[5]** Statutes 361 ☞278.1

361 Statutes
  361VI Construction and Operation
    361VI(D) Retroactivity
      361k278.1 k. In General. Most Cited Cases
      (Formerly 51k3789.1)
Court is to apply law in effect at time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to contrary.

**[6]** Bankruptcy 51 ☞3782

51 Bankruptcy
  51XIX Review
    51XIX(B) Review of Bankruptcy Court
      51k3782 k. Conclusions of Law; De Novo Review. Most Cited Cases

Bankruptcy 51 ☞3784

51 Bankruptcy
  51XIX Review
    51XIX(B) Review of Bankruptcy Court
      51k3784 k. Discretion. Most Cited Cases

Bankruptcy 51 ☞3786

51 Bankruptcy
  51XIX Review
    51XIX(B) Review of Bankruptcy Court

      51k3785 Findings of Fact
        51k3786 k. Clear Error. Most Cited Cases
Court of Appeals' review of district court's ruling in its capacity as appellate court is plenary, and it reviews bankruptcy judge's legal determinations de novo, and its factual findings for clear error and its exercise of discretion for abuse thereof.

**[7]** Bankruptcy 51 ☞3570

51 Bankruptcy
  51XIV Reorganization
    51XIV(B) The Plan
      51k3570 k. Execution and Performance. Most Cited Cases
Creditors' malpractice action against accounting firm for misconduct during Chapter 11 case on which bankruptcy judge relied in confirming plan of reorganization, and in reliance on which bankruptcy court approved fees to firm, and on which creditors' representatives relied to their detriment in selling assets to pay their claims, in manner contravening reorganization plan's terms, arose in bankruptcy, and thus constituted core proceeding, even though creditors did not discover firm's malpractice until after plan of reorganization had been confirmed, where claims of professional negligence were based on services provided before confirmation, under supervision of, and subject to approval of, bankruptcy court. 28 U.S.C.A. § 157(b).

**[8]** Bankruptcy 51 ☞2043(1)

51 Bankruptcy
  51I In General
    51I(C) Jurisdiction
      51k2043 Core, Non-Core, or Related Proceedings in General; Nexus
        51k2043(1) k. In General. Most Cited Cases
Claims that "arise in" bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in context of bankruptcy case. 28 U.S.C.A. § 157.

**[9]** Bankruptcy 51 ☞3570

51 Bankruptcy
  51XIV Reorganization

51XIV(B) The Plan

51k3570 k. Execution and Performance.

Most Cited Cases

"Close nexus" test is applicable to bankruptcy court's "related to" jurisdiction over any claim or cause of action filed post-confirmation, regardless of when conduct giving rise to claim or cause of action occurred. 28 U.S.C.A. § 157(b).

**\*238** Vincent A. Coppola (argued), Pribanic & Pribanic, Pittsburgh, PA, for Appellants.

William H. Schorling (argued), Samuel W. Braver Stanley J. Parker, Christopher P. Schueller, Buchanan Ingersoll & Rooney, Pittsburgh, PA, for Appellees.

**\*239** Before: SMITH and GREENBERG, Circuit Judges, and POLLAK, District Judge.[FN*]

> FN* The Honorable Louis H. Pollak, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. INTRODUCTION

This matter comes on before the court on an appeal by Mary Geruschat, Dolores Speney, Antoinette Morocco, and Donna M. Buxton ("appellants") from the district court's memorandum order dated July 14, 2006, which adopted as its own and affirmed the bankruptcy court's opinion and order dated September 2, 2005, in which the bankruptcy court (1) asserted its jurisdiction to resolve a state-law malpractice, negligence, and fraud suit that appellants, creditors in a consolidated Chapter 11 bankruptcy proceeding, brought in a state court against the accountants who performed work during the bankruptcy, Ernst & Young LLP and its employee, Charles Modispacher (together "Ernst & Young"), (2) refused to remand appellants' case to the state court from which Ernst & Young removed it, and (3) dismissed the complaint on its merits. This appeal, however, primarily is about jurisdiction, both our jurisdiction to review the bankruptcy and district courts' decisions not to abstain from exercising

jurisdiction and not to remand the matter to the state court, and, depending on the extent, if any, that we have jurisdiction to review those courts' decisions, whether the district court properly found that the bankruptcy court had subject matter jurisdiction and the final adjudicative authority to resolve the state-law actions.

As we will discuss in detail later, appellants initially filed their suit in a state court, but Ernst & Young removed the case to a federal court, i.e., a bankruptcy court. Appellants then sought an order remanding the case to the state court on the grounds that (a) there were procedural irregularities in the removal process, (b) the bankruptcy court did not have subject matter jurisdiction over the dispute, and (c) even if the bankruptcy court did have jurisdiction, it should have abstained permissively or was required to abstain mandatorily from exercising its jurisdiction. The bankruptcy court disagreed with appellants, exercised jurisdiction, and dismissed the case on its merits. On appellants' appeal, the district court affirmed the bankruptcy court's order and, though to a degree writing separately, adopted the bankruptcy court's opinion and order as its own.

This appeal followed. But appellants challenge only the decisions regarding the procedural irregularities in the removal process, the bankruptcy court's finding that it had jurisdiction and final adjudicative authority, and its decision not to abstain from exercising that jurisdiction. Thus, we are not reviewing the disposition of the malpractice, negligence, and fraud dispute on the merits. Inasmuch as we conclude that we lack jurisdiction to review a substantial portion of the issues appellants raise on this appeal, and that the bankruptcy and district courts did not err in the rulings over which we have appellate jurisdiction, we will affirm the July 14, 2006 memorandum order of the district court and, accordingly, in effect, will affirm the bankruptcy court's opinion and order dated September 2, 2005.

II. FACTS AND PROCEDURAL HISTORY

The case has grown out of the activities of Earned Capital Corporation, Managed **\*240** Properties, Inc., Canterbury Village, Inc., and Eastern Arabian, Inc. (collectively "Debtors"), corporations engaged in developing real property. To raise capital, the Debtors sold investment shares in the property,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

505 F.3d 237                                                                                    Page 4
505 F.3d 237, 48 Bankr.Ct.Dec. 276, Bankr. L. Rep. P 81,040
**(Cite as: 505 F.3d 237)**

and, in return, promised the investors an annual return.

The Debtors' plan involved the development of 600 acres in the Borough of Seven Fields, Butler County, Pennsylvania, with townhouses and recreational facilities. Unfortunately for the Debtors, however, their plan did not go as expected. Thus, they became delinquent in making the payments they promised to the investors, leading the Debtors to oversell shares to maintain the promised payments. The Debtors could not continue this Ponzi-type scheme indefinitely, and, consequently, on June 3, 1986, they filed separate voluntary petitions under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Western District of Pennsylvania. That court consolidated the Chapter 11 proceedings on June 5, 1986, in a case entitled *In re Earned Capital Corporation,* No. 86-21474.

Prior to the time that the Debtors filed their bankruptcy petitions, they had employed the accounting firm of Arthur Young & Company (a predecessor of Ernst & Young) to review their financial records and prepare the financial schedules needed for the bankruptcy. On June 12, 1986, the bankruptcy court approved the appointment of Ernst & Young.<sup>FN1</sup> Ernst & Young determined that the Debtors were insolvent and that they owed the vast majority of their obligations (totaling over $60,000,000) to the approximately 2,500 investors. An Official Committee of Unsecured Creditors ("Committee"), selected from among the investors, represented the investors in the bankruptcy case. The Committee and the Debtors filed competing plans of reorganization, both calling for consolidation of the Debtors' assets and liabilities into one surviving reorganized corporation.

> FN1. As a matter of convenience we will use the name Ernst & Young when referring to Arthur Young & Company.

The bankruptcy court found the Debtors to be insolvent and confirmed an Amended Plan of Reorganization ("Amended Plan") on October 21, 1987. According to appellants, the court based this disposition on information that Ernst & Young provided the court and the Debtors' creditors. Under the Amended Plan, the Debtors were merged into a successor entity, Seven Fields Development

Corporation ("Seven Fields"), and their assets, the principal one of which was the Butler County real estate, became assets of Seven Fields. Under the Amended Plan, all of the secured and trade creditors' claims were to be paid in full or in accordance with agreements otherwise negotiated, but the investor class of unsecured creditors was to receive common stock in Seven Fields at a par value equal to 5% of their allowed claims with the remaining 95% classified as unsecured, nondischargeable debt. Under the Amended Plan, "[a]ll activities of [Seven Fields] shall seek to achieve the goal of full payment to [the investors/stockholders]," app. at 33, and assets were to "be managed, improved, developed and sold, etc. where appropriate, to the end that all creditors will eventually achieve maximum returns,"*id.* at 22. The investors voted overwhelmingly in favor of the plan, 2,179 to 87, on an individual basis, and, in claims terms, $62,639,067 to $13,758,972. After confirmation, Seven Fields liquidated its assets, substantially through the sale of the Butler County real estate, and made distributions to the investors. Seven *241 Fields, however, did not pay the allowed claims of the investors in full through this liquidation.

On September 29, 2004, appellants, on behalf of themselves and others similarly situated as shareholders of Seven Fields, filed a complaint against Ernst & Young in the Court of Common Pleas of Butler County, alleging professional negligence (Count I), fraud and deceit (Count II), and negligent misrepresentation (Count III). Because, as will be seen, the precise allegations in the complaint are significant in determining a central issue on appeal, i.e., the jurisdiction of the bankruptcy court over appellants' state-law causes of action, we recite the relevant allegations verbatim:

2. Prior to the formation of Seven Fields ..., the predecessor entities were involved in a bankruptcy in which [Ernst & Young] acted as accountants and performed services on behalf of, *inter* alia, the [appellants] and other members of the class-during and after the bankruptcy.

3. As a result of the work performed by [Ernst & Young], all of the predecessor entities were represented by [Ernst & Young] to be insolvent, the predecessor entities were consolidated and a successor corporation, Seven Fields ..., acceded to ownership of the assets of the predecessor entities which included a substantial tract of land in Butler County, Pennsylvania.

4. In addition to declaring the predecessor

entities insolvent, [Ernst & Young] advised the United States Bankruptcy Court, the [appellant] class and others, that even after the reorganization and bankruptcy and in spite of the fact that Seven Fields ... owned a substantial tract of land in Butler County, Pennsylvania, [Ernst & Young] represented to the [appellant] class members and others that the new company had a debt of about $280 million to the group of investors.

5. The foregoing had been represented previously and throughout the bankruptcy by [Ernst & Young] to the United States Bankruptcy Court, the investor class and others.

6. [Appellants] and the remaining class members had all invested varying sums of money in one or more of the predecessor entities including Earned Capital, Inc. and upon being advised by [Ernst & Young] that the company was $280 million in debt, [appellants] and the remaining class members were horrified in that [Ernst & Young], in effect, represented that [appellants] and the remaining class members had either lost all of their money or were going to lose a substantial portion of the money.

7. As a result of the advice received by [FN2] [Ernst & Young], an effort to develop the property and other assets was made which included sales of assets at prices below their market value and a general development scheme was put together by the successor corporation and its officers, which instead of emphasizing the highest use of the properties to which the new corporation had title, was instead calculated to generate cash as quickly as possible in an effort to both 'repay' [appellants] and other class members 'their loss' and in a further effort to reassure [appellants] and other class members that some money would be returned.

> FN2. The complaint uses the words "received by" but we believe that appellants intended to mean "given by" or "received from."

*242 8. As a result of the state of mind and perception on the part of the new corporation, [appellants] and other class members, the property was developed and/or sold in a manner which caused all of the investors to suffer losses on the investment previously made and to fail to realize even a return of the full amount of their investment.

App. at 43-44.

On November 5, 2004, Ernst & Young filed a notice of removal of the Butler County case with the clerk of the bankruptcy court, removing the case to the United States Bankruptcy Court for the Western District of Pennsylvania under Rule 9027(a) of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. §§ 1452 and 1334. Then, Ernst & Young filed a motion to dismiss appellants' complaint on November 11, 2004, arguing that even though their claims "are in the nature of a shareholder derivative suit," appellants failed to assert the claims on behalf of Seven Fields and had not made any demand on Seven Fields as required under Federal Rule of Civil Procedure 23.1. App. at 56-57. Additionally, Ernst & Young argued that the doctrines of res judicata, collateral estoppel, and judicial estoppel required dismissal of the complaint because the claims "necessarily require [the court] to disturb a valid, final and binding reorganization plan and confirmation order, as well as [the court's] order approving [its] fees." Id. at 57.[FN3]

> FN3. Ernst & Young raised other defenses that we need not describe.

Appellants responded with a motion requesting that the bankruptcy court remand the case to the Butler County Court of Common Pleas pursuant to 28 U.S.C. § 1452(b) and Federal Rule of Bankruptcy 9027(d), or, in the alternative, abstain from exercising jurisdiction under 28 U.S.C. §§ 1334(c)(1) and (c)(2). In this motion, appellants argued that the notice of removal was procedurally deficient in that Ernst & Young erroneously filed it with the clerk of the bankruptcy court and not the clerk of the district court, and that the bankruptcy court did not have subject matter jurisdiction. Appellants, in the alternative, also asserted that if the bankruptcy court did have jurisdiction, it should have abstained permissively or was required to abstain mandatorily from exercising its jurisdiction over the state-law causes of action. Moreover, appellants filed a "Motion to Strike Defendants' Notice of Removal," arguing that Ernst & Young was not permitted to remove the state-court case as the underlying bankruptcy case on which removal was predicated had been marked "closed" and Ernst & Young did not move to reopen the case before filing the notice of removal.

On September 2, 2005, the bankruptcy court

505 F.3d 237                                                                                           Page 6
505 F.3d 237, 48 Bankr.Ct.Dec. 276, Bankr. L. Rep. P 81,040
**(Cite as: 505 F.3d 237)**

issued an opinion and order in which it sua sponte reopened the underlying bankruptcy case and denied appellants' motions to remand and strike the notice of removal, thus asserting its subject matter jurisdiction to rule on the merits of the case. *In re Earned Capital Corp., 331 B.R. 208 (Bankr.W.D.Pa.2005).* On the merits, the bankruptcy court granted Ernst & Young's motion to dismiss for failure to state a claim because "[appellants'] claims are shareholder derivative claims that can only be presented by [appellants] through a shareholder derivative suit," and appellants failed to make a demand on "the board of directors or comparable authority" under Federal Rule of Civil Procedure 23.1 for them to bring the action against Ernst & Young. *Id.* at 222-24. The court also found that it should dismiss the complaint on the grounds of res judicata, collateral estoppel, and judicial estoppel inasmuch as the bankruptcy **\*243** court already had declared the Debtors insolvent in the confirmation proceedings and had awarded fees to Ernst & Young-litigation in which the Committee, which represented the interests of the investors, fully participated. *Id.* at 224-28. Appellants appealed from the opinion and order of the bankruptcy court to the district court under 28 U.S.C. § 158(a), which, in turn, on July 14, 2006, affirmed the order of the bankruptcy court and adopted the bankruptcy court's opinion and order as its own. *Geruschat v. Ernst & Young LLP, 346 B.R. 123 (W.D.Pa.2006).*

On August 7, 2006, appellants timely filed a notice of appeal, contesting the district court's affirmance of the bankruptcy court's order (1) granting Ernst & Young's motion to dismiss their case, (2) denying appellants' motion to strike Ernst & Young's notice of removal, (3) denying appellants' motion to remand the case to the state court, and (4) reopening the underlying bankruptcy case. However, when we examined appellants' brief, we observed that it was devoid of any discussion relating to the merits of the case insofar as the district court affirmed the bankruptcy court's opinion and order granting Ernst & Young's motion to dismiss. It thus appeared that between the time appellants filed their notice of appeal and the time that they filed their brief, they decided not to appeal the bankruptcy and district courts' disposition of the case on the merits and, instead, challenged only the resolution of jurisdictional issues in the bankruptcy proceedings. At oral argument, appellants confirmed that they had made a deliberate decision to forego their appeal insofar as it relates to the merits of the dispute.

Accordingly, the only issues appellants raise before us relate to removal procedure, subject matter jurisdiction, the bankruptcy court's adjudicative authority over the state-law claims, and abstention. In particular, appellants present the issues before us as follows:

1. Does a bankruptcy court have subject matter jurisdiction to adjudicate a case removed from state court where the underlying bankruptcy case on which removal is predicated was closed many years before removal and where the removing party did not seek to open the earlier bankruptcy case for cause pursuant to 11 U.S.C. § 350(b) prior to removal of the state court case?

2. May a party within this Circuit remove a case directly to the bankruptcy court under 28 U.S.C. § 1452(a) without a prior referral from the district court?

3. Did the requisite 'close nexus' exist under *Resorts Int'l, Inc. Litig. Trust v. Price Waterhouse* [, 372 F.3d 154 (3d Cir.2004),] to confer subject matter jurisdiction in the district court over [appellants'] state law claims where such claims affected neither the bankruptcy estate nor the debtor, and where success on the merits of such claims would have no impact on the property of the estate or distribution to any creditor?

4. Did [appellants'] state law malpractice action constitute a 'non-core' proceeding under 28 U.S.C. § 157 thus depriving the bankruptcy court of original jurisdiction to enter final orders and further requiring the district court to abstain from jurisdiction under 28 U.S.C. § 1334(c)(2)?

5. Did the bankruptcy court commit clear error of law when it assumed that the status of [appellants'] complaint as a 'core proceeding' was dispositive of the issue of discretionary abstention under § 1334(c)(1)?

Appellants' br. at 2. We have divided those issues into three categories: (1) removal **\*244** procedure errors (issues 1 and 2); (2) jurisdiction (issues 3 and 4); and (3) abstention (issues 4 and 5).

## III. JURISDICTION AND STANDARD OF REVIEW

Appellants' central issue in this case implicates the question of whether the bankruptcy court had jurisdiction under 28 U.S.C. §§ 157 and 1334. There is no question that the district court had jurisdiction

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

505 F.3d 237                                                                                                          Page 7
505 F.3d 237, 48 Bankr.Ct.Dec. 276, Bankr. L. Rep. P 81,040
**(Cite as: 505 F.3d 237)**

over the appeal of the bankruptcy court's September 2, 2005 opinion and order under 28 U.S.C. § 158(a).

But before we reach the question of whether the bankruptcy court had jurisdiction and the other issues appellants raise, we first must ensure that we have jurisdiction to review this case under 28 U.S.C. §§ 1291 and 158(d). *See Emerald Investors Trust v. Gaunt Parsippany Partners,* 492 F.3d 192, 193-94 (3d Cir.2007) ("As always, after we are satisfied of our own jurisdiction, the threshold, and, indeed, as it turns out, the only issue on this appeal is whether the district court had subject matter jurisdiction.") (footnote omitted). The parties initially did not question our jurisdiction.[FN4] Prior to argument, however, we observed that there might be a problem with respect to our jurisdiction. Thus, at our direction, our clerk sent a notice to the parties requesting that they "be prepared to briefly discuss whether 28 U.S.C. § 1334(d) precludes us from reviewing both the Bankruptcy Court's decision to abstain under § 1334(c)(1) and the District Court's affirmance of this decision, because discretionary abstention does not appear to be subject to appeal pursuant to § 1334(d)." [FN5] At oral argument, we expressed an additional concern with respect to our jurisdiction to review certain aspects of the case under 28 U.S.C. § 1452(b), the bankruptcy removal statute, which bars a court of appeals' review of decisions to remand or not to remand made on the basis of "any equitable ground." Accordingly, we asked the parties to submit supplemental memoranda addressing jurisdictional issues. Having given the parties an opportunity to address the questions relating to our jurisdiction, and having received those memoranda and heard their oral arguments, the issues with respect to our jurisdiction are now ripe for our disposition.

FN4. In appellants' opening brief they limit their discussion of our jurisdiction to the following sentence: "The United States Court of Appeals for the Third Circuit currently has jurisdiction over this matter pursuant to 28 U.S.C. § 1291 as an appeal from a final decision and order of the district court." Appellants' br. at 1. In Ernst & Young's brief it does not mention our jurisdiction, thus implying that it initially agreed with appellants on this point. Nevertheless, we have a "special obligation

to satisfy [ourselves] of [our] own jurisdiction" even if the parties agree that we have jurisdiction. *Korytnyuk v. Ashcroft,* 396 F.3d 272, 279-80 (3d Cir.2005). As will be seen, an inquiry into our jurisdiction is more complicated than the parties apparently originally believed.

FN5. Unfortunately our letter was exactly wrong because the bankruptcy court did not abstain. As it happens we are confident that the attorneys realized that we had erred and were not misled.

The essence of this appeal is that the bankruptcy or district court should have remanded the case to the state court because (1) Ernst & Young's notice of removal was procedurally defective, (2) the federal courts lacked subject matter jurisdiction over the state-law causes of action, (3) the bankruptcy court lacked final adjudicative authority, and (4) the federal courts should have abstained permissively or were required to abstain mandatorily **\*245** from asserting their jurisdiction.[FN6] There are three statutory provisions potentially affecting our jurisdiction to review the orders in which the bankruptcy and district courts declined to remand the case, assumed jurisdiction, and did not abstain from asserting jurisdiction: 28 U.S.C. § 1447(d) (general removal/remand); 28 U.S.C. § 1452(b) (bankruptcy removal/remand); and 28 U.S.C. § 1334(c) and (d) (bankruptcy abstention and limitation of appeals of orders with respect to abstention).

FN6. It is possible that we could grant relief to appellants without ordering that the bankruptcy and district courts remand the case to the state court but inasmuch as we do not find that they erred in any respect we need not set forth what that possible relief might be.

Section 1447(d) is the general statutory provision governing the reviewability of orders remanding cases removed from state courts. Section 1447(d) states "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise [except in certain civil rights cases]." Though the Supreme Court has concluded that section 1447(d) applies regardless of whether a party has removed a case pursuant to the general

removal provision, 28 U.S.C. § 1441(a), or the bankruptcy removal provision, 28 U.S.C. § 1452, *see Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 128, 116 S.Ct. 494, 497, 133 L.Ed.2d 461 (1995); section 1447(d) is inapplicable here as in this case we are not dealing with an order remanding the case. After all, the bankruptcy court denied appellants' motions seeking to remand the case and the district court affirmed the denial. *See City & County of San Francisco v. PG & E Corp.,* 433 F.3d 1115, 1122 (9th Cir.) (holding that section 1447(d) does not apply to decisions not to remand a case), *cert. denied,*--- U.S. ----, 127 S.Ct. 208, 166 L.Ed.2d 144 (2006); *In re Bissonnet Invs. LLC,* 320 F.3d 520, 525 (5th Cir.2003) (same). Indeed, we regularly entertain appeals following final judgments in which appellants contend that the district court erred in denying a motion to remand.

In contrast, under the removal statute applicable specifically to bankruptcy cases,

[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a *decision to not remand,* is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

28 U.S.C. § 1452(b) (emphasis added). Thus, section 1452(b), in addition to barring review of decisions to remand, precludes appellate review of decisions "to not remand," the type of order involved in this case.

But section 1452(b) makes clear that a decision to remand or not to remand a case is unreviewable by a court of appeals only when the district court relies on "any equitable ground" as the basis for its decision. While the statute does not define "equitable ground," we have recognized that "equitable" as used in section 1452(b) is not to be understood as distinguishing equitable from legal grounds in a traditional sense, but, instead, "equitable" "signals that which is reasonable, fair, or appropriate." *Allied Signal Recovery Trust v. Allied Signal, Inc.,* 298 F.3d 263, 268 (3d Cir.2002) (quoting *Things Remembered,* 516 U.S. at 133, 116 S.Ct. at 499 (Ginsburg, J., concurring)).

Accordingly, we first must decide which, if any, of the categories of issues appellants**246** raise contesting the bankruptcy and district courts' decisions not to remand the state-law causes of action are insulated from appellate review by section 1452(b). Additionally, we also must determine whether 28 U.S.C. § 1334, the bankruptcy abstention provision, insulates from our review the decisions relating to abstention.

A. *Removal Procedure Errors*

We have no doubt that the bankruptcy court's "decision to not remand" the case in the face of appellants' procedural arguments that Ernst & Young did not seek to reopen the bankruptcy case before filing its notice of removal and that Ernst & Young improperly filed the notice of removal directly with the bankruptcy clerk was based on the bankruptcy court's determination that there were not "equitable ground[s]," i.e., "reasonable, fair, or appropriate" grounds, for the remand, a decision that we cannot review. The Supreme Court in *Things Remembered* faced very similar circumstances. In that case, the issue was "whether a federal court of appeals may review a district court order remanding a bankruptcy court case to state court on grounds of untimely removal." *Things Remembered,* 516 U.S. at 125, 116 S.Ct. at 496. The Court decided that the general statutory provision governing the reviewability of remand orders, 28 U.S.C. § 1447(d), barred appellate review of the remand order.[FN7] *See Things Remembered,* 516 U.S. at 127-28, 116 S.Ct. at 496-97. While the majority opinion did not discuss the possibility that the bankruptcy remand provision of section 1452(b) similarly would bar review, Justice Ginsburg in her concurring opinion, joined by Justice Stevens, concluded that section 1452(b) independently would bar review of the order remanding the case by reason of untimely removal, finding that the basis for remand was on an "equitable ground." *Id.* at 131-34, 116 S.Ct. at 498-500 (Ginsburg, J., concurring).

> FN7. As we discussed above, section 1447(d) is inapplicable here as it only bars review of orders to remand, not orders not to remand.

[1] Surely, if a remand based on untimely

505 F.3d 237                                                                                     Page 9
505 F.3d 237, 48 Bankr.Ct.Dec. 276, Bankr. L. Rep. P 81,040
**(Cite as: 505 F.3d 237)**

removal is predicated on an "equitable ground," the decision not to remand based on the procedural defects raised here also addresses a proposed remand on equitable grounds, and thus we are precluded from reviewing it. We recognize that the issue in *Things Remembered* was whether a decision to remand was unreviewable and the issue here is whether a decision not to remand is unreviewable, and, although we can distinguish the cases on that basis, this difference is not material here as bankruptcy remand section 1452(b) tells us that appellate courts should treat decisions to remand or not remand alike in ascertaining their own jurisdiction.

Appellants do not specifically discuss in their supplemental memorandum whether we are barred from reviewing the issue raised relating to Ernst & Young's filing of the notice of removal with the bankruptcy clerk and not the district court clerk. Nevertheless, we are treating appellants' discussion relating to our obligation to review their challenges to the bankruptcy court's subject matter jurisdiction as incorporating this aspect of their appeal. However, we do not categorize this filing issue as relating to the bankruptcy court's subject matter jurisdiction, a holding that would be very significant with respect to our jurisdiction for, as we next discuss, section 1452(b) does not preclude a court of appeals from reviewing a challenge to a bankruptcy or district court's subject matter jurisdiction. Rather, Ernst & Young's error, if there was an error, was merely an **\*247** error relating to removal procedure in the nature of a "claim-processing" issue as the Supreme Court used that term in *Bowles v. Russell,* --- U.S. ----, 127 S.Ct. 2360, 2364, 168 L.Ed.2d 96 (2007). It had nothing to do with the "delineat[ion of] the classes of cases (subject matter jurisdiction) ... falling within a court's adjudicatory authority." *Kontrick v. Ryan,* 540 U.S. 443, 455, 124 S.Ct. 906, 915, 157 L.Ed.2d 867 (2004). Thus, section 1452(b) precludes us from reviewing the alleged procedural error here.[FN8]

> **FN8.** In any event, even if we had jurisdiction to consider the question of whether Ernst & Young filed the notice of removal with the appropriate clerk, appellants' argument would fail. Federal Rule of Bankruptcy Procedure 9027(a)(1) permits the filing of a notice of removal with the "clerk," a term that Rule 9001(3) defines as "bankruptcy clerk," and 28 U.S.C. §

1452(a) permits removal to the "district court," an entity of which the bankruptcy court is a unit. 28 U.S.C. § 151; *see In re Gianakas,* 56 B.R. 747, 750 (N.D.Ill.1985). We also point out that the Western District of Pennsylvania has a general order referring all bankruptcy cases and proceedings filed in the district to the bankruptcy judges. See Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc (Oct. 16, 1984), *available at* http:// www. pawb. uscourts. gov/ pdfs/ OrderOfReference.pdf. Moreover, even if we concluded that the notice of removal should have been filed with the district court and that the filing error compels us to reverse, our ruling would be meaningless. In this regard we take note of 28 U.S.C. § 1631 which provides that when a civil action is filed with a district court (of which the bankruptcy court is a unit) with a want of jurisdiction the court shall in the interest of justice transfer the case to a court in which it could have been filed originally. Thus, if the bankruptcy clerk thought that the removal should have been to the district court, he almost certainly would have sent the removal notice to that court which then would have referred it back to the bankruptcy court pursuant to the general referral order. Accordingly, if we reversed on the filing point, vacated the bankruptcy and district courts' orders, and remanded the matter to the bankruptcy court to enter an order not inconsistent with our opinion, we do not doubt that rather than dismissing the case, the bankruptcy court would transfer it to the district court which then would refer it back to the bankruptcy court following which all the vacated orders of the bankruptcy court, and, if appellants again appealed, the district court's memorandum order of July 14, 2006, would be reinstated.

[2] Appellants argue that section 1452(b) does not bar our review of issues attributable to Ernst & Young's failure to seek to reopen the bankruptcy case before filing its notice of removal, as they raised the issue with the bankruptcy judge "in a motion to strike defendant's notice of removal, and not by means of a motion to remand." Appellants' Suppl. Mem. at 2. We do not find this argument to be substantial. Inasmuch as section 1452 precludes our review of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

505 F.3d 237
505 F.3d 237, 48 Bankr.Ct.Dec. 276, Bankr. L. Rep. P 81,040
(Cite as: 505 F.3d 237)

Page 10

"decision[s] to not remand," we look to the substance of the bankruptcy court's decision and not the form of the party's motion in determining the applicability of section 1452.[FN9] It is clear that the bankruptcy court's decision *248 in which it denied "Plaintiffs' Motion to Strike Defendants' Notice of Removal," and the district court's affirmance thereof, are "decision[s] to not remand" inasmuch as they deny appellants' request to remand the matter to the state court because of the alleged procedural defect. We add that appellants themselves acknowledge this point for they requested in their proposed order attached to their motion that the court order recite that "Defendants' Notice of Removal is hereby stricken, and this case is remanded to the Court of Common Pleas of Butler County, Pennsylvania." App. at 145.[FN10]

> FN9. It is obvious why we look to the substance of the court's order and not the party's captioning of its motion in determining the applicability of section 1452. If we were to look at the form of the party's motion, we would encourage attempts to circumvent the broad bar precluding our review of remand orders under section 1452. This case provides a great example. Appellants caption their motion as a "Motion to Strike Defendants' Notice of Removal." However, ordinarily when a party files a motion to strike under the Federal Rules of Civil Procedure it files the motion under Federal Rule of Civil Procedure 12(f), which permits a party to seek to have "stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." But appellants did not file their motion to strike for any such purpose. In the circumstances the appropriate motion here would have been a "motion to remand" under 28 U.S.C. § 1447(c), which provides for "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction," or a motion under 28 U.S.C. § 1452, which provides for remand of removed claims relating to bankruptcy cases on "any equitable ground." We also point out that we are not aware of any rule or other authority authorizing a motion to strike a notice of removal, though we are aware that parties sometimes characterize

motions seeking certain relief other than those under Rule 12(f) as motions to strike.

> FN10. Although we do not have jurisdiction to review this issue, we point out that it was within the bankruptcy judge's discretion to reopen the bankruptcy case sua sponte so that "matters that have a significant connection with the administration of the case can be addressed." Earned Capital, 331 B.R. at 217;see 11 U.S.C. § 350 (providing for the reopening of a bankruptcy case "for other cause"); 11 U.S.C. § 105(a) (permitting court to act sua sponte); Donaldson v. Bernstein, 104 F.3d 547, 551-52 (3d Cir.1997) (rejecting contention that the bankruptcy court lacked jurisdiction on the ground that it was acting in a closed case when the court sua sponte reopened the case "for other cause").

B. *Bankruptcy Court Jurisdiction and Adjudicative Authority*

[3] We agree with appellants that the decisions of the bankruptcy and district courts not to remand the case on the basis that the bankruptcy court lacked jurisdiction and their argument that the bankruptcy court did not have the authority to exercise final adjudicative authority, while "not *per se* reviewable" under section 1452(b), nevertheless are subject to appellate review. See *Things Remembered,* 516 U.S. at 132 n. 1, 116 S.Ct. at 499 n. 1 (Ginsburg, J., concurring); *see also* City & County of San Francisco, 433 F.3d at 1121 ("This is a question of subject matter jurisdiction that does not implicate the jurisdictional limitations of section 1452(b)."); *In re V & M Mgmt., Inc.,* 321 F.3d 6, 7 (1st Cir.2003) ("Because [appellant's] argument attacks the lower court's subject matter jurisdiction, we not only have jurisdiction to review but are obligated to do so."); *Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex Corp.),* 124 F.3d 619, 625 (4th Cir.1997) ( "[W]e hold that § 1452(b)... does not preclude us from reviewing the district court's decision denying [the] motion to remand to the extent that [the] motion rested on the district court allegedly lacking subject matter jurisdiction."). We reach our conclusion because courts of appeals on appeals from bankruptcy and district courts must ensure that those courts do not exceed the authority that Article III of

505 F.3d 237                                                                    Page 11
505 F.3d 237, 48 Bankr.Ct.Dec. 276, Bankr. L. Rep. P 81,040
**(Cite as: 505 F.3d 237)**

the Constitution and Congress has granted them. Section 1452 cannot detract from this obligation and we are of the view that a bankruptcy judge absent consent of the parties does not have jurisdiction to enter a final order in a non-core matter. 28 U.S.C. § 157(c). Of course, there is no question that the district court had jurisdiction to entertain the appeal from the bankruptcy court. See 28 U.S.C. § 158(a).

### C. Abstention

The question of whether we have jurisdiction to review the district court's affirmance of the bankruptcy court's decision not to abstain under 28 U.S.C. § 1334(c)(2) (mandatory abstention) and \*249 section 1334(c)(1) (permissive abstention) is a two-step process. First, we must decide which version of section 1334 we are to apply in this case. This selection is significant as Congress adopted amendments to section 1334 altering courts of appeals' jurisdiction in 1984 ("the 1984 Amendments"), 1990 ("the 1990 Amendments"), and 1994 ("the 1994 Amendments"). Congress enacted the current version of section 1334 in the 1994 Amendments, though it further amended section 1334 in technical non-substantive respects in 2005.[FN11] Second, once we decide which version of section 1334 applies, we must construe the statute to determine the extent of and limitations on a court of appeals' jurisdiction over abstention decisions.

> FN11. The 2005 Amendments in Pub.L. 109-8, § 1219, struck out "made under this subsection" and inserted "made under subsection (c)" and substituted "Subsection (c) and this subsection" for "This subsection" in the last sentence of section 1334(d) dealing with stays. But we are satisfied that the 2005 Amendments did not make substantive changes in section 1334 material here.

Under the current version of section 1334(d),

[a]ny decision to abstain or not to abstain made under subsection (c) (other than a decision not to abstain in a proceeding described in subsection (c)(2) [mandatory abstention] ) is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title.... Subsection (c) and this subsection shall not be construed to limit the applicability of the stay....

Thus, we have recognized that, as section 1334(d) now stands, "appeals of decisions not to exercise mandatory abstention pursuant to § 1334(c)(2) are explicitly permitted," Stoe v. Flaherty, 436 F.3d 209, 212 (3d Cir.2006), yet appeals of decisions involving permissive abstention, whether or not the court abstains, are barred, see Allied Signal, 298 F.3d at 269. Moreover, under section 1334(d) a decision mandatorily abstaining is not appealable.

Inasmuch as appellants appeal the denial of their motion for mandatory abstention, it might be thought that they would contend that the current version of section 1334 is applicable here. Yet they contend that section 1334(d) in its current form does not control this case, a position they predicate on the circumstance that the Debtors filed their bankruptcy petitions in 1986, well before Congress enacted the current version of section 1334 through the 1994 Amendments and even well before Congress enacted the 1990 Amendments. Appellants' Suppl. Mem. at 3-4. Actually it is understandable that they take this position as they argue that the bankruptcy court should have abstained both mandatorily and permissively, and currently, as we have indicated, appeals of orders denying permissive abstention unquestionably are not allowed.

The appellants rely on the 1984 Amendments, i.e., the version the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333, enacted on July 10, 1984, because that version provided that "[a]ny decision to abstain made under this subsection is not reviewable by appeal or otherwise." See Christo v. Padgett, 223 F.3d 1324, 1331 (11th Cir.2000). But the 1984 Amendments did not limit appeals of decisions not to abstain. Accordingly, if we were to look to the 1984 Amendments for our rule of decision, the bankruptcy court's decision *not to abstain* mandatorily or permissively would be subject to our review and we could review all of appellants' abstention arguments.

Ernst & Young, on the other hand, urges us to look to the version of \*250 section 1334(c)(2) enacted in the Judicial Improvements Act of 1990, Pub.L. No. 101-650, 104 Stat. 5089, 5113, i.e., the 1990 Amendments, which provided that "[a]ny decision to abstain or not to abstain under this subsection is not reviewable by appeal or otherwise by the court of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

appeals...." Appellees' Suppl. Mem. at 3-4. Ernst & Young contends that under the 1990 Amendments we are prohibited from reviewing decisions not to abstain either mandatorily or permissively. *Id.* at 4-5. Thus, appellants and Ernst & Young take polar opposite approaches with respect to our jurisdiction to hear the appeal with respect to abstention.

[4] We have examined the question of which version of section 1334 is applicable, and have concluded that section 1334(d), as amended in 1994, and which, with the minor non-substantive 2005 Amendments, i.e., the current law, controls this case even though neither party contends that the 1994 Amendments are applicable. We reach this conclusion because Congress enacted the 1994 Amendments long before appellants initiated their action in the state court.<sup>FN12</sup>

> FN12. Ernst & Young does contend that "alternatively" to the 1990 Amendments being applicable "the 1994 Amendments apply" to appellants' case, Appellees' Suppl. Memo at 9, and that under "both the 1990 and 1994 amended versions of 28 U.S.C. § 1334, [we are] without jurisdiction to review [the bankruptcy judge's] decision not to remand and not to abstain." *Id.* at 10. We understand, however, that Ernst & Young primarily relies on the version of section 1334 as amended by the 1990 Amendments.

In considering whether the 1994 Amendments, and thus current law, are applicable we point out that Congress made it clear that the 1994 Amendments, with certain exceptions not relevant here, "shall not apply to cases commenced under title 11 of the United States Code before the date of the enactment of this Act [October 22, 1994]." Bankruptcy Reform Act of 1994, Pub.L. No. 103-394, § 702(b) (Application of Amendments), 108 Stat. 4106, 4150; *see also* 28 U.S.C. § 1334 (Historical and Statutory Notes, Effective and Applicability Provisions) (stating that the 1994 Amendments do "not apply with respect to cases commenced under Title 11 of the United States Code before Oct. 22, 1994"); *In re Middlesex Power Equip. & Marine, Inc., 292 F.3d 61, 67 n. 5 (1st Cir.2000); Christo, 223 F.3d at 1332.* While there has been some discussion in other courts of appeals as to whether a "case [ ] commenced under title 11" refers to the

bankruptcy case or the civil case which was removed, *see id.,* a distinction that is critical here as the Debtors filed their petitions in 1986 and appellants instituted this action in 2004, we need not concern ourselves at length with this question regarding application of the 1994 Amendments for we already have determined that "cases under Title 11" as used in section 1334(a) refers "merely to the bankruptcy petition itself," as opposed to "proceeding[s]," which refers "to the steps within the 'case' and to any subaction within the case that may raise a disputed or litigated matter." *In re Combustion Eng'g, Inc., 391 F.3d 190, 226 n. 38 (3d Cir.2004).* We do not see why "cases" should have a different meaning in the words "cases commenced under title 11" in Pub.L. No. 103-394 § 702(b), with respect to the effective date of the 1994 Amendments. Thus, as the 1994 Amendments do not apply to cases, i.e., the bankruptcy case itself, commenced under title 11 before October 22, 1994, they do apply in this proceeding which was instituted after October 22, 1994, and, rather than being a case within the meaning of Pub.L. No. 103-394, § 702(b), is a "subaction" within *251 the bankruptcy case initiated long after that date.

It might be thought from the foregoing analysis that we would conclude that we do not have jurisdiction over this appeal with respect to the bankruptcy court's refusal to abstain permissively but do have jurisdiction over its refusal to abstain mandatorily as appeals of decisions not to abstain in proceedings commenced after October 22, 1994, are permitted when mandatory abstention has been refused. Indeed, at first glance it would seem that nothing could be clearer as section 1334(d) provides that only "a decision not to abstain in a proceeding described in subsection (c)(2)" i.e., mandatory abstention, is reviewable.

Yet there is a special situation here. As we point out below in dealing with the distinction between "related to," i.e., non-core jurisdiction, and "arising under title 11 or arising in a case under title 11," i.e., core jurisdiction, in determining whether the bankruptcy court had final adjudicative power, in this case the bankruptcy court was applying "arising in" jurisdiction. Moreover, section 1334(c)(2) in providing for mandatory abstention applies only to "a proceeding based upon a State law cause of action related to a case under title 11 but not arising under

title 11 or arising in a case under title 11." Consequently, it necessarily follows from our holding that this is an "arising in" case, that there was no possible basis for the bankruptcy and district courts to abstain mandatorily under the 1994 Amendments or at any time since their enactment. *See In re Gober,* 100 F.3d 1195, 1206 (5th Cir.1996) ("Mandatory abstention applies only to non-core proceedings-that is, proceedings 'related to a case under title 11, but not arising under title 11, or arising in a case under title 11.' "). Thus, we are not dealing with a decision denying mandatory abstention as no matter how appellants entitled their application for abstention they did not make a motion for abstention coming within section 1334(c)(2).[FN13] Consequently, notwithstanding appellants' efforts to characterize this case as involving mandatory abstention, it is only a permissive abstention case and we do not have jurisdiction over the appeal of the denial of abstention.

> FN13. Even though our opinion has the effect of rejecting appellants' mandatory abstention contentions on their merits, we are not assuming jurisdiction contrary to the holding in *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 93-102, 118 S.Ct. 1003, 1012-16, 140 L.Ed.2d 210 (1998), in determining that this is a core case. In this regard we point out that we have jurisdiction to decide whether this case is core or non-core as appellants challenge the bankruptcy court's exercise of final adjudicative power, and a resolution of that question requires that we determine if the case is core or non-core. The determination of that issue has an incidental effect on the jurisdictional question of whether we have authority to hear appellants' arguments with respect to mandatory abstention and thus has the collateral effect of rejecting appellants' mandatory abstention claims on their merits.

We realize that our result differs from that of the Court of Appeals for the Fifth Circuit *In re Southmark Corp.,* 163 F.3d 925 (5th Cir.1999), a case on which appellants rely. In that case, the court apparently believed that it should look to the filing date of the bankruptcy petition when determining which version of section 1334 applied. *See id. at 929.* Thus, the court applied the 1984 Amendments in a

case in which the Chapter 11 bankruptcy petition was filed in 1989, even though the civil action before the court of appeals was filed in a state court and removed to a federal court in 1995, after the enactment of both the 1990 Amendments and the 1994 Amendments and prior to the matter being before the court of appeals in 1999. *251Id. at 927-29.* The court did not discuss the implications of the 1990 Amendments but seemed to think that inasmuch as "Southmark's case," evidently meaning its Chapter 11 filing, "predates [the 1994] Amendments and was filed when decisions not to abstain were reviewable on appeal,"*id. at 929,* it had jurisdiction. The court's reference to the appealability of decisions not to abstain must have been to the 1984 Amendments as they precluded only appeals of decisions to abstain.

[5] We cannot distinguish *Southmark* with respect to jurisdiction over abstention appeals but we will not follow it as we question whether *Southmark* in this respect is consistent with binding precedents.[FN14] It is well-settled that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. Sch. Bd. of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). We find no justification to disregard this longstanding legal principle and establish an exception wherein a court would look to the date that a debtor or creditor filed the bankruptcy case rather than the proceeding directly in issue in determining which version of section 1334 applies. Proceedings subject to the abstention provisions are causes of action initiated separately from the bankruptcy case itself and often arise well after the filing of bankruptcy petition, and sometimes, as in this case, even after the assets of the bankruptcy estate have been distributed and the bankruptcy case closed. Overall, we cannot justify applying the law that existed at the time the Debtors filed their bankruptcy petitions and not the law that existed at the time that appellants filed their separate civil action or the law as it currently stands which is materially the same.

> FN14. As we explain below we do follow *Southmark* in other respects.

In sum, with respect to our jurisdiction we find that we only can review the bankruptcy and district

courts' decisions relating to subject matter jurisdiction, including the authority of the bankruptcy court to issue final orders.[FN15] We do not have jurisdiction to review their decisions relating to the alleged procedural defects in the removal process and mandatory or permissive abstention. Consequently, inasmuch as appellants do not challenge the order dismissing their case on the merits, now that we have set forth the scope of our *253 jurisdiction, the subject matter of our review is quite limited.

FN15. Although we reject Ernst & Young's contention that the 1990 Amendments control this case we are satisfied that its contention that those amendments would bar, if applicable, any appeal of an abstention decision abstaining or not abstaining on mandatory or permissive grounds is correct. Moreover, we are satisfied that those amendments were in effect until Congress enacted the 1994 Amendments and if Congress had not adopted the 1994 Amendments the 1990 Amendments would control this case. The principal argument with respect to the 1990 Amendments centers on the point that their restriction on appealability of abstention decisions was contained in section 1334(c)(2) dealing with mandatory abstention rather than, as now, separately in section 1334(d) and thus the restriction might not apply to decisions with respect to permissive abstention. We believe, however, that Congress intended the restriction on appeals to apply to permissive abstention as authorized in section 1334(c)(1) both as a matter of what might be characterized as "mechanical" statutory construction and because we cannot understand why Congress would have wanted to preclude appeals of decisions denying mandatory abstention, as it undoubtedly did in the 1990 Amendments, but would have wanted to permit appeals of decisions denying permissive abstention. In fact, if anything, one would expect that Congress would have had the reverse intent, as it, in fact, did when it adopted the 1994 Amendments.

D. *Standard of Review*

[6] "Our review of the District Court's ruling in its capacity as an appellate court is plenary, and we review the bankruptcy judge's legal determinations de novo," *In re O'Lexa,* 476 F.3d 177, 178 (3d Cir.2007), and "its factual findings for clear error and its exercise of discretion for abuse thereof," *In re United Healthcare Sys., Inc.,* 396 F.3d 247, 249 (3d Cir.2005). Our review of the district court's order on jurisdiction and of the issue of whether the proceeding in the bankruptcy court was core or non-core is de novo. *See Stoe,* 436 F.3d at 212; *In re Resorts Int'l, Inc.,* 372 F.3d 154, 160 (3d Cir.2004).

IV. DISCUSSION

A. *The Statutory Framework of Federal Bankruptcy Jurisdiction*

As we have indicated in other litigation, "[b]ankruptcy courts fall outside of the constitutional authority of Article III and derive their authority from federal statutes." *Resorts,* 372 F.3d at 161. Congress, in turn, "has vested limited authority in bankruptcy courts" through 28 U.S.C. §§ 1334 and 157, sections within title 28 of the United States Code dealing with the judiciary and judicial procedure. *Id.* For the most part, however, title 11 of the United States Code governs bankruptcy proceedings.

Section 1334 describes the jurisdictional boundaries of a district court over bankruptcy cases and proceedings but, by itself, does not vest any authority in the bankruptcy courts. Rather, section 1334(a) states that "the district courts shall have original and exclusive jurisdiction of all cases under title 11," and section 1334(b) states that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." District courts, however, even though they have jurisdiction under subsections (a) or (b), are permitted, "in the interest of justice, or in the interest of comity with State courts or respect for State law[,] ... [to] abstain[ ] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1) (permissive abstention). Additionally,

[u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with

respect to which an action could not have been commenced in a court of the United States absent jurisdiction under [section 1334], the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (mandatory abstention).

28 U.S.C. § 157, on the other hand, lists the bankruptcy cases and proceedings that may be "referred" to the bankruptcy courts. Absent delegation of authority by the district court, much like the authority in 28 U.S.C. § 636(b), which provides for the delegation of certain judicial powers to magistrate judges, section 157 does not permit bankruptcy judges to hear and adjudicate cases in the absence of a reference from the district court. But under section 157(a), "[e]ach district may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." As we have indicated, "[t]he district courts' power to refer **254** is discretionary, but courts routinely refer most bankruptcy cases to the bankruptcy court." *Resorts,* 372 F.3d at 162 (internal quotation marks omitted).

Section 157 provides for two levels of authority that may be invested in a bankruptcy judge depending upon into which of two categories a case or proceeding falls. The two categories are (1) "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11," 28 U.S.C. § 157(b)(1) (collectively known as "core proceedings"),[FN16] and (2) "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," 28 U.S.C. § 157(c)(1) ("non-core proceedings"). *See Combustion Eng'g,* 391 F.3d at 225; *Resorts,* 372 F.3d at 162.

FN16. Core proceedings as defined in section 157 include, but are not limited to-(A) matters concerning the administration of the estate; (B) allowance or disallowance of claims against the estate or exemption from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11; (C) counterclaims by the estate against persons filing claims against

the estate; (D) orders in respect to obtaining credit; (E) orders to turn over property to the estate; (F) proceedings to determine, avoid, or recover preferences; (G) motions to terminate, annul, or modify the automatic stay; (H) proceedings to determine, avoid, or recover fraudulent conveyances; (I) determinations as to the dischargeability of particular debts; (J) objections to discharges; (K) determinations of the validity, extent, or priority of liens; (L) confirmations of plans; (M) orders approving the use or lease of property; (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; (O) other proceedings affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and (P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

The bankruptcy judge "determine[s], on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11." 28 U.S.C. § 157(b)(3). A correct determination of whether a matter is core or non-core establishes the bankruptcy judge's level of authority. With respect to core proceedings Congress has provided that "bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders or judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1). Sections 158(a) and (b) give jurisdiction to the district courts and the bankruptcy appellate panel (should one be established by the judicial council of a circuit and with the consent of all the parties) to hear appeals from final judgments, orders, and decrees, as well as from interlocutory orders and decrees under certain circumstances, entered by the bankruptcy courts.

However, the determination that a case is not a core proceeding does not mean that a bankruptcy judge lacks authority with respect to it. Rather,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo *255 those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1). Additionally, "the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(c)(2).

B. *Resorts International*

Appellants predicate a large part of their case on this appeal challenging the bankruptcy and district courts' jurisdiction on our opinion in *Resorts*, 372 F.3d 154, so we start with a discussion of that case. In *Resorts*, Resorts International and related entities entered into Chapter 11 bankruptcy proceedings in 1989. Id. at 157. The following year the bankruptcy court issued an order confirming their Second Amended Joint Plan of Reorganization ("the Reorganization Plan"). Id. at 158.

Less than one month after the court confirmed the Reorganization Plan, Resorts International and its creditors entered into a Final Plan and Litigation Trust Agreement creating a litigation trust in which the trustee was assigned claims Resorts International held against Donald J. Trump and affiliated entities arising from Trump's 1988 leveraged buyout of the Taj Mahal Resort. Id. The Final Plan authorized the trustee to prosecute the claims, with the debtor to provide the first $5,000,000 spent in the litigation in the form of an irrevocable letter of credit. Nevertheless the proceeds from the suit were to be distributed to certain creditors who were covered under the Final Plan. Id. at 157-58. The Final Plan also required the trustee to retain an independent public accounting firm to provide auditing and tax-related services for the trust, and on November 1, 1990, pursuant to this requirement, the trustee retained Price Waterhouse for this purpose. Id. at

158. On May 28, 1991, the trustee entered into a settlement, that the creditors subsequently approved, with Trump in the amount of $12,000,000. Id. The proceeds of the settlement became assets of the litigation trust. Id.

On April 15, 1997, the trustee filed an adversary proceeding in the bankruptcy court setting forth accounting malpractice and breach of contract claims against Price Waterhouse in which the trustee sought disgorgement of Price Waterhouse's fees in excess of $500,000 paid for accounting services that it performed for the trust, as well as damages. Id. The trustee's "principal allegation [was] that Price Waterhouse erroneously reported in its audit reports that certain accrued interest on the Litigation Trust accounts belonged to the debtor rather than the Trust," and that the bankruptcy court relied upon those erroneous reports in a separate suit between the trust and Resorts International in deciding on an allocation of the interest earned on the $5,000,000 litigation expense account created under the Final Plan. Id. at 158-59. Resorts International, whose estate no longer existed following the confirmation of the Reorganization Plan, was not a party to the malpractice action. Id. at 159.

The bankruptcy court held that it did not have jurisdiction over the adversary proceeding which set forth state-law claims and thus dismissed the proceedings. The trustee, however, appealed and the district court reversed, following which the district court certified its ruling for immediate appeal to us under 28 U.S.C. § 1292(b), and we granted leave to appeal. *Resorts*, 372 F.3d at 159-60. The case then came on before us to decide whether the bankruptcy court had jurisdiction over the state-law claims. Id. We discussed three separate issues in our opinion.

*256 First, we held that courts will give effect to retention-of-jurisdiction provisions that reorganization plans sometimes include only if there is bankruptcy court jurisdiction under 28 U.S.C. §§ 1334 and 157, as "neither the bankruptcy court nor the parties can write their own jurisdictional ticket." *Resorts*, 372 F.3d at 161. In other words, in the absence of statutory federal jurisdiction, "retention of jurisdiction provisions in a plan of reorganization or trust agreement are fundamentally irrelevant." Id. Of course, "if there is jurisdiction, we will give effect to retention of jurisdiction provisions." [FN17] Id. Thus, we

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

505 F.3d 237                                                                                                                                          Page 17
505 F.3d 237, 48 Bankr.Ct.Dec. 276, Bankr. L. Rep. P 81,040
**(Cite as: 505 F.3d 237)**

examined the question of whether the dispute fell within the bankruptcy court's subject matter jurisdiction. *Id.*

> FN17. Ernst & Young understandably does not argue that the Reorganization Plan's retention-of-jurisdiction provision is dispositive, an argument that it might have predicated on Section 9.01 of the plan which states that the bankruptcy court was to retain jurisdiction over, among other things, all disputes connected to the Final Plan or confirmation order and all adversary proceedings filed after the plan's confirmation date. Following *Resorts,* it is obvious that an argument anchored solely on this retention-of-jurisdiction provision could not have been successful.

Second, we held that the state-law claims at issue were not "core proceedings" under section 157(b) because the proceeding did not invoke "a substantive right provided by title 11 or a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Id.* at 163. We distinguished the circumstances in *Resorts* from the situation before the Court of Appeals for the Fifth Circuit in *Southmark,* 163 F.3d 925. In *Southmark,* the debtor filed a malpractice suit against the accounting firm that provided accounting services *prior to plan confirmation. Resorts,* 372 F.3d at 163. The *Southmark* court held that the suit was a core proceeding because the bankruptcy court must be able to ensure "that court-approved managers of the debtor's estate are performing their work conscientiously, and cost-effectively," and supervising court-appointed professionals "bears directly on the distribution of the debtor's estate" for "[i]f the estate is not marshaled and liquidated or reorganized expeditiously, there will be far less money available to pay creditors' claims." *Id.* (quoting *Southmark,* 163 F.3d at 931).

In distinguishing *Southmark* we made the following observations:

> Unlike in *Southmark,* this claim arose post-plan confirmation. It does not directly affect the debtor or the liquidation of the estate's assets. Furthermore, the accounting firm's alleged malpractice in *Southmark* implicated the integrity of the entire bankruptcy process. Southmark's bankruptcy arose out of its

involvement in Drexel Burnham Lambert, Inc.'s ill-fated junk bond investment. *Southmark,* 163 F.3d at 927-28. Southmark sought the appointment of an accounting firm to provide an objective, independent assessment of potential legal claims against third-parties. *Id.* Unbeknownst to Southmark, Drexel was one of the accounting firm's largest clients. *Id.* at 927-28. According to Southmark, the accounting firm committed malpractice by failing to satisfactorily investigate potential claims against Drexel. *Id.* Southmark alleged the accounting firm's breach of its court-appointed fiduciary duty prevented the estate from recovering from Drexel. *Id. at 928.* The accounting firm's failure to investigate Drexel implicated the core of the bankruptcy process. Its alleged malpractice was inseparable from the bankruptcy context. Here, Price Waterhouse's alleged malpractice, erroneously**257** reporting that certain accrued interest belonged to one entity rather than to another and committing other errors in auditing and tax advice, even if true, is not a proceeding that could arise only in the bankruptcy context.

*Resorts,* 372 F.3d at 163.

Nevertheless, in *Resorts* we went on to indicate that it was unnecessary to resolve whether the case was a core or non-core proceeding for subject matter jurisdictional purposes because "[w]hether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction." *Id.* (quoting *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 266 (3d Cir.1991)). It was not necessary to make a core versus non-core determination because as long as a proceeding satisfied the jurisdictional prerequisites to be considered a non-core "related to" proceeding, the "broadest of the potential paths to bankruptcy jurisdiction," it was an extraneous exercise to decide whether the matter was core provided that jurisdiction, and not the bankruptcy court's adjudicative authority, was the sole issue before the court. *See id.* In other words, a determination of whether a matter is core or non-core is unnecessary in an inquiry of whether there is federal jurisdiction over a bankruptcy proceeding, as both categories of cases are within federal jurisdiction and the determination only impacts on the question of whether a bankruptcy court has the authority to enter final judgments and orders under section 157.<sup>FN18</sup>*See id.* It was implicit in our holding in *Resorts* that a

505 F.3d 237                                                                                                    Page 18
505 F.3d 237, 48 Bankr.Ct.Dec. 276, Bankr. L. Rep. P 81,040
**(Cite as: 505 F.3d 237)**

case is "related to" a bankruptcy case even if the bankruptcy court could exercise core jurisdiction with respect to it. In this regard, we point out that section 157(c)(1) provides that a "bankruptcy judge may hear a proceeding that is not a core proceeding but that is *otherwise* related to a case under Title 11." (Emphasis added.) It seems clear from that language, in particular the inclusion of "otherwise," that Congress believed that a core case was "related to" title 11 but that a case can be "related to" title 11 on a basis other than being a core case. Moreover, Congress's enumeration of core proceedings in section 157(b)(2), in ordinary understanding, lists matters that would be considered "related to" title 11 cases.

> FN18. We cannot take the same path as we did in *Resorts* because appellants challenge both federal jurisdiction under section 1334 and the bankruptcy court's authority to issue final orders under section 157, a question the resolution of which requires a determination of whether the proceeding was core or non-core. The only issue before us in *Resorts* was subject matter jurisdiction under section 1334.

In this case, there are essentially two procedural paths that can be transversed in resolving a dispute over jurisdiction and the adjudicative powers of the bankruptcy court. We can engage in a two-step analysis in which we first inquire whether there is federal jurisdiction over a proceeding by asking whether the case is "related to" the bankruptcy, which is the broadest category of cases over which there is federal jurisdiction. Then, if we find that the case passes that test, we would decide whether the case is a core matter, in which the bankruptcy court could issue final orders, or a non-core matter, in which the bankruptcy court could make only recommendations to the district court.

We, however, find this methodology inefficient in situations like the one before us because a finding that the case "aris[es] in" the bankruptcy would "kill two birds with one stone" inasmuch as such a finding conclusively would establish both subject matter jurisdiction and the bankruptcy court's authority to enter final orders. In that situation, there simply would be no reason to engage in the two-step inquiry we have described. Of course, if we determined that the case does not "aris[e] in" the bankruptcy proceedings, then, depending on which court is exercising jurisdiction when the determination is made, the appropriate court must determine if there is subject matter jurisdiction under the broadest jurisdictional hook of "related to" jurisdiction.

**\*258** Third, we went on to discuss the limits of non-core "related to" jurisdiction. We first discussed "the seminal test for determining the boundaries of 'related to' jurisdiction in [*Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)]," in which we held that federal courts have "related to" jurisdiction to hear a proceeding if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Resorts*, 372 F.3d at 164. We, however, decided in *Resorts* that application of the *Pacor* test in the "post-confirmation context" was "problematic" inasmuch as "it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred," as generally "the confirmation of a plan vests all of the property of the estate in the reorganized debtor." *Id.* at 165 (internal quotation marks omitted).

In light of the circumstance that post-confirmation the debtor's estate will not exist, and in recognition of the need to confine bankruptcy court jurisdiction to appropriate limits, we recognized a new test to be applied in the "post-confirmation context" in which "the essential inquiry" is "whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *Id.* at 166-67. In other words, "[a]t the post-confirmation stage, the claim must affect an integral aspect of the bankruptcy process-there must be a close nexus to the bankruptcy plan or proceeding." *Id.* at 167. For instance, we held that "[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Id.*

Applied to the facts of *Resorts*-where the trustee's principal allegation was that Price Waterhouse erroneously reported in its audit reports that accrued interest on the litigation trust belonged to the debtor rather than the trust-we held that the "proceeding lacks a close nexus to the bankruptcy plan or proceeding and affects only matters collateral to the bankruptcy process." *Id.* at 169. We explained our decision as follows:

The resolution of [the] malpractice claims will not affect the estate; it will have only incidental effect on the reorganized debtor; it will not interfere with the implementation of the Reorganization Plan; though it will affect the former creditors as Litigation Trust beneficiaries, they no longer have a close nexus to bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to the litigation claims; and as stated, the jurisdictional retention plans cannot confer jurisdiction greater than that granted under 28 U.S.C. § 1334 or 28 U.S.C. § 157.

*Id.* We acknowledged that "in certain circumstances, accounting errors could have a sufficiently close nexus to the bankruptcy plan or proceeding to warrant exercising 'related to' jurisdiction post-confirmation," but, under the facts of *Resorts,* resolution of the claims will not require a court to interpret or construe the Reorganization Plan or the Trust Agreement and "[t]hough the Plan and Trust Agreement provide the context of the case, this bare factual nexus is insufficient to confer bankruptcy jurisdiction." *Id.* at 170.

### C. *The Decisions of the Bankruptcy and District Courts*

The bankruptcy court in this case concluded that there was federal jurisdiction because appellants' claims "aris[e] in" the bankruptcy case as the claims "implicate the integrity of the bankruptcy process,"*259 and, like the claims in *Southmark,* 163 F.3d 925,* "the claims of professional malpractice were based on services provided during the bankruptcy, under the supervision of, and subject to the approval of, the bankruptcy court." *Earned Capital,* 331 B.R. at 218. The bankruptcy court determined that the "close nexus" test that *Resorts* discussed did not govern this case because "*Resorts* is unlike the situation here, where [appellants'] claims are claims against a court appointed professional for work performed during the bankruptcy." *Id.* Further, because the state-law claims are claims "arising in" the bankruptcy case, the court determined "that [appellants'] Complaint against [Ernst & Young] is a core proceeding," and thus, under 28 U.S.C. § 157(b)(1), the court had full adjudicative power subject to appellate review by the district court. *Id.* at 218-20.

On appeal under 28 U.S.C. § 158, the district court affirmed the bankruptcy court's opinion and order. Specifically, with respect to jurisdiction, it held:

We agree that [appellants'] state court action arises in bankruptcy and that it is a core matter. [Appellants'] claims of professional negligence were based on services provided during the bankruptcy, under the supervision of, and subject to the approval of, the bankruptcy court. As such, they implicate the integrity of the bankruptcy process. The state court action challenges the accountants' conclusion that the Debtor was insolvent, a conclusion endorsed by the bankruptcy court in its confirmation order. For these same reasons, the state court action has a 'close nexus' to the bankruptcy proceedings.

*Geruschat,* 346 B.R. at 125.

### D. *Analysis*

Appellants challenge two aspects of the decisions of the bankruptcy and district courts relating to subject matter jurisdiction and the bankruptcy court's final adjudicative authority. First, they argue that the courts erred in finding that the "close nexus" test was not applicable under their rationale that the improper conduct alleged in the state-law claims occurred during the bankruptcy proceedings.[FN19] Appellants believe that this conclusion was incorrect as they contend "application of the 'close nexus' test does not depend on *when* the malpractice itself occurs. To the contrary, the 'close nexus' test is applicable whenever a state lawsuit is removed to federal court on the basis of a bankruptcy case that is already closed by that point." Appellants' br. at 26. Second, appellants contend that the bankruptcy and district courts were wrong in concluding that this state-law action was a core proceeding under section 157(b), and thus appellants believe the bankruptcy court did not have the authority to enter final orders under section 157(c)(1). *Id.* at 28.[FN20]

FN19. Actually, while the bankruptcy court indicated that the "close nexus" test did not apply, the district court found that "the state court action has a 'close nexus' to the bankruptcy proceedings." *Geruschat,* 346 B.R. at 125. However, it was not necessary for the district court to reach this conclusion

Case 1:07-cv-00065-JJF    Document 33-2    Filed 02/20/2008    Page 20 of 24

505 F.3d 237                                                                                              Page 20
505 F.3d 237, 48 Bankr.Ct.Dec. 276, Bankr. L. Rep. P 81,040
(Cite as: 505 F.3d 237)

inasmuch as it first held that appellants' "state court action arises in bankruptcy and ... is a core matter," and, as we discuss, the "close nexus" test applies only when analyzing the case in the non-core "related to" context. In any event, even appellants treat the district court's decision as if the court erred in not applying the "close nexus" test. *See* Appellants' br. at 26 ("It was inappropriate for the district court not to address the 'close nexus' standard that this Circuit set forth in *Resorts Int'l*.").

FN20. Ernst & Young contends that appellants "waived their right to challenge that the litigation is a core matter," appellees' br. at 17, because appellants did not file a timely statement under Bankruptcy Rule 9027(e)(3). In view of our result we have no need to consider this argument and do not do so.

*260[7] After considering the parties' arguments, we will affirm the order of the district court and thus, in effect, the order of the bankruptcy court as we conclude that the bankruptcy court had core jurisdiction in this case. The bankruptcy and district courts were not required to address the "close nexus" test because the test was not applicable in this "arising in" proceeding. As we discussed in *Resorts,* the "close nexus" standard only applies for the purposes of determining whether a federal court has jurisdiction over a non-core "related to" proceeding in the post-confirmation context.[FN21] *See Resorts,* 372 F.3d at 164-67. Appellants seem to believe that any time a party files a case post-confirmation, the "close nexus" test is triggered. This is plainly not the case. While courts may choose to rely on "related to" jurisdiction because it is the broadest category of federal bankruptcy jurisdiction when examining their own jurisdiction, it certainly is not incumbent upon them to do so, because, as occurred here, a party may argue and a court may decide that a proceeding falls within one of the narrower categories of jurisdiction, such as "arising in" jurisdiction, in which case "related to" jurisdiction and the corresponding "close nexus" test are not implicated.

FN21. We recently concluded in *In re Shenango Group Inc., 501 F.3d 338 (3d Cir.2007),* that a post-confirmation dispute

over whether a reorganization plan obligated a reorganized debtor to fund a pension plan was "related to" a bankruptcy proceeding, and, thus, the district court properly affirmed the order of the bankruptcy court in which it exercised its "related to" jurisdiction. In that case, we found that the dispute did have a "close nexus" to the bankruptcy under *Resorts* as its resolution required the court to interpret the plan's provision relating to the obligation of the debtor, who was a party to the suit, to fund pension benefit increases. *Id.* at 340. Our decision in *Shenango Group* does not affect this case as here the issue is not whether the suit is "related to" the bankruptcy, but, instead, whether it is "arising in" the bankruptcy.

[8] We further find that the courts' conclusion that there was "arising in" jurisdiction was correct. "[C]laims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case." *Stoe,* 436 F.3d at 218. In *Resorts,* in distinguishing the circumstances of the case from those in *Southmark,* we explained in what circumstances and on what legal basis a claim of professional malpractice for work performed during the bankruptcy could support "arising in" core jurisdiction. *See Resorts, 372 F.3d at 163.* Unlike those in *Resorts,* the material facts of the case before us are indistinguishable from those in *Southmark.*

First, in *Resorts* we distinguished the case from *Southmark* because the state-law claims in *Resorts* "arose post-plan confirmation." *See id.* Here, however, appellants in their complaint allege that their claims, like the claims in *Southmark,* arose pre-confirmation inasmuch as the conduct on which they predicate the claims occurred during the bankruptcy process. Specifically, their complaint alleges that in reliance upon the negligent work Ernst & Young performed during the bankruptcy, the bankruptcy court wrongly deemed the Debtors to be insolvent and caused the liquidation of the estate's assets in a manner that contravened the Amended Plan.

Second, in our case, just as was true in *Southmark,* Ernst & Young's "alleged malpractice ... implicated the integrity of the entire bankruptcy process" and the "alleged malpractice was

inseparable from **\*261** the bankruptcy context."
_Resorts,_ 372 F.3d at 163. The bankruptcy court
appointed Ernst & Young to review the Debtors'
financial records and prepare the financial schedules
needed for the bankruptcy. According to appellants'
allegations in their complaint, as a result of the work
that Ernst & Young performed during the bankruptcy
proceedings and its representations to the bankruptcy
court, the bankruptcy court deemed the Debtors to be
insolvent. This conclusion led to the formation of
Seven Fields, a corporation organized, according to
the Amended Plan, to "achieve the goal of full
payment" of the unsecured, nondischargeable debt
due appellants. Certainly this aspect of the plan,
based at least in part on Ernst & Young's
representations that the Debtors were insolvent, was a
significant factor in bringing about the court's
confirmation of the plan. Yet, thereafter, according to
the complaint, Ernst & Young represented that Seven
Fields had a large debt, which, according to the
complaint is not the case, and Seven Fields was
compelled to sell its properties in a manner that was
not in appellants' best economic interests, contrary to
the court-approved Amended Plan's provisions.
Moreover, the bankruptcy court approved the
stipulation between Seven Fields and Ernst & Young
providing for the fees paid to Ernst & Young for its
accounting work during the bankruptcy
proceedings.[FN22] Supp.App. at 55-57.

> FN22. On September 15, 1989, the
> bankruptcy court approved the stipulation
> between Ernst & Young and Seven Fields
> and entered an order stating that Ernst &
> Young was due $125,000 in fees in
> settlement of its $210,000 claim. _Earned
> Capital,_ 331 B.R. at 226-27; Supp.App. at
> 55-57.

The Court of Appeals for the Fifth Circuit in
_Southmark_ explained why this type of misconduct
and relationship to the bankruptcy court falls within
the "arising in" jurisdiction of the federal courts:

In this case, the professional malpractice claims
alleged against [the defendants] are inseparable from
the bankruptcy context. A _sine qua non_ in
restructuring the debtor-creditor relationship is the
court's ability to police the fiduciaries, whether
trustees or debtors-in-possession and other court-
appointed professionals, who are responsible for
managing the debtor's estate in the best interest of

creditors. The bankruptcy court must be able to
assure itself and the creditors who rely on the process
that court-approved managers of the debtor's estate
are performing their work, conscientiously and cost-
effectively. Bankruptcy Code provisions describe the
basis for compensation, appointment and removal of
court-appointed professionals, their conflict-of-
interest standards, and the duties they must perform.
_See generally_ 11 U.S.C. §§ 321, 322, 324, 326-331.
Although standards for the conduct of court-
appointed professionals, the breach of which may
constitute bankruptcy malpractice, are not
comprehensively expressed in the statute, the Code
need not duplicate relevant, also-applicable state law.
It is evident that a court-appointed professional's
dereliction of duty could transgress both explicit
Code responsibilities and applicable professional
malpractice standards. For instance, in _Billing v.
Ravin, Greenberg & Zackin, P.A.,_ 22 F.3d 1242 (3d
Cir.1994), the professional malpractice allegations
included the attorneys' failure to comply with court
orders and to submit a plan of reorganization to the
bankruptcy court. Award of the professionals' fees
and enforcement of the appropriate standards of
conduct are inseparably**\*262** related functions of
bankruptcy courts.

Supervising the court-appointed professionals
also bears directly on the distribution of the debtor's
estate. If the estate is not marshaled and liquidated or
reorganized expeditiously, there will be far less
money available to pay creditors' claims. Excessive
professional fees or fees charged for mediocre or,
worse, phantom work also cause the estate and the
creditors to suffer.... A malpractice claim like the
present one [against court-appointed professionals]
inevitably involves the nature of the services
performed for the debtor's estate and the fees
awarded under superintendence of the bankruptcy
court; it cannot stand alone.

_Southmark,_ 163 F.3d at 931. Other courts of
appeals, including this court, have reached similar
conclusions. _See Grausz v. Englander,_ 321 F.3d 467,
471 (4th Cir.2003) (finding that legal malpractice
claim against firm for alleged misconduct in
bankruptcy case is a claim "arising in" the
bankruptcy case); _In re Ferrante,_ 51 F.3d 1473, 1476
(9th Cir.1995) (holding that action against trustee for
misconduct in administering estate was a core
proceeding concerning the administration of the
bankruptcy estate); _see also Billing,_ 22 F.3d at 1245,
1252-53 (while not directly addressing whether a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

505 F.3d 237

505 F.3d 237, 48 Bankr.Ct.Dec. 276, Bankr. L. Rep. P 81,040

**(Cite as: 505 F.3d 237)**

legal malpractice suit against bankruptcy counsel constitutes a core proceeding as parties agreed that it does,[FN23] we recognized that the "malpractice suit mirrors [debtors'] objections to the allowance of attorneys' fees," the resolution of which are within the bankruptcy court's "explicit jurisdiction to award fees for bankruptcy counsel and other supervisory powers as to bankruptcy counsel").

> FN23. Of course, the parties' consent cannot establish the bankruptcy court's jurisdiction, and if we disagreed with the parties and believed that the court did not have jurisdiction, or even that the jurisdiction that it did have was "related to" but not core jurisdiction, we would say so even in the absence of a party raising the jurisdictional issue on the appeal.

As Ernst & Young points out,

[n]othing is more important than the integrity of the bankruptcy process.... [T]he integrity of the process goes to the heart of the administration of a bankruptcy case. Furthermore, few issues are as important in the bankruptcy process as the bankruptcy court's conclusion as to the solvency of a debtor. The solvency analysis is the cornerstone of the distribution plan. Here, both the integrity of the bankruptcy process and the solvency of the Debtors have been drawn into question.

Appellees' br. at 23 (citations omitted). In this regard, we have no doubt that the bankruptcy and district courts correctly found that appellants asserted their alleged malpractice claims in a core proceeding that "aris[es] in" the bankruptcy case.

In addition to the reasoning of *Southmark,* we also note that section 157 specifically provides that core proceedings include "matters concerning the administration of the estate" and "other proceedings affecting the liquidation of the assets of the estate." 28 U.S.C. § 157(b)(2)(A) and (O). Such matters are at issue here. Appellants allege that Ernst & Young's negligence and misrepresentations caused the sale of Seven Fields's assets in a manner that was not in their best economic interests, contrary to the Amended Plan's provisions requiring that Seven Fields would be "managed, improved, developed and sold, etc. where appropriate, to the end that all creditors will eventually achieve maximum returns." App. at 22. In

sum, it is clear to us that a malpractice action against an accountant for \***263** misconduct during the bankruptcy on which the bankruptcy judge relied in confirming the plan of reorganization, and in reliance on which the bankruptcy court approved the fees to the accountants, and on which appellants' representatives relied to their detriment in selling the assets to pay their claims, in a manner that contravenes the terms of the reorganization plan, constitutes a core proceeding, more specifically a proceeding "arising in" the bankruptcy, which is subject to federal jurisdiction and the final adjudicative authority of the bankruptcy court.[FN24]

> FN24. Appellants also argue that the claims are not core proceedings because they are "not based on any right created by the federal bankruptcy law," but, instead, are "based exclusively on rights existing under state law." Appellants' br. at 30. This distinction, however, is not determinative as section 157 provides that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3).

Because we have concluded that the bankruptcy and district courts correctly found "arising in" core jurisdiction so that the "close nexus" test did not apply, we need not resolve the issue appellants raise relating to the applicability of the "close nexus" test in the "related to" post-confirmation context. We, however, will take this opportunity to address the division among courts in this circuit with respect to this issue that has developed in the wake of *Resorts.* Appellants raise the question of whether in cases in which the bankruptcy and district courts can be exercising only "related to" jurisdiction, the *Resorts* "close nexus" test applies whenever the complaint is filed post-confirmation or must the conduct also occur post-confirmation to trigger the test? In other words, in analyzing a court's "related-to" jurisdiction, is pre-confirmation conduct alleged in a complaint that is filed post-confirmation evaluated under the *Pacor* test or the *Resorts* "close nexus" test?

Appellants believe that "application of the 'close nexus' test does not depend on *when* the malpractice itself occurs." Rather, in their view, the crucial inquiry is whether the bankruptcy case is closed at

505 F.3d 237
505 F.3d 237, 48 Bankr.Ct.Dec. 276, Bankr. L. Rep. P 81,040
(Cite as: 505 F.3d 237)

the time the claim is removed to it. Appellants' br. at 26. Accordingly, appellants contend that the test applies whenever there is a post-confirmation action filed, presumably even an original proceeding as distinguished from a removed case which is the situation here. Ernst & Young, on the other hand, argues that the "close nexus" test under *Resorts* applies only when "the alleged wrongdoing took place post-confirmation." Appellees' br. at 15. Bankruptcy and district courts within this circuit have rendered inconsistent opinions on this point since *Resorts.* Compare *In re EXDS, Inc.,* 352 B.R. 731, 735 (Bankr.D.Del.2006), and *In re LGI,Inc.,* 322 B.R. 95, 102-03 (Bankr.D.N.J.2005), in which the courts stated the test in terms of when the cause of action arose or the conduct occurred, *with Jazz Photo Corp. v. Dreier LLP,* No. Civ. A. 05-5198DRD, 2005 WL 3542468, at *5-6 (D.N.J. Dec 23, 2005), and *In re LaRoche Indus., Inc.,* 312 B.R. 249, 257 (Bankr.D.Del.2004), in which the courts stated the test in terms of when the cause of action was filed. This division in results makes it important for us to address the issue.

We start this point with a further discussion of *Pacor,* 743 F.2d 984, the case that set forth the test used to determine whether a proceeding is "related to" a bankruptcy that was applied in all circumstances until we established the limitations on the test in the "post-confirmation context" in *Resorts.* In *Pacor,* John and Louise Higgins brought a suit in a state court against Pacor, a chemical supplies **\*264** distributor, for injuries allegedly caused by exposure to asbestos contained in Pacor's products. *Id.* at 986. Pacor filed a third-party complaint in the state court against the asbestos manufacturer, Johns-Manville. *Id.* Johns-Manville subsequently filed Chapter 11 bankruptcy proceedings in the Southern District of New York.*Id.* Pacor then sought to remove the state court case to the bankruptcy court in the Eastern District of Pennsylvania. The Eastern District bankruptcy court remanded the entire state-court case to the state court. On Pacor's appeal, the district court affirmed with respect to the Higgins's case against Pacor as it held that it was not "related to" the Manville bankruptcy.[FN25] Pacor then appealed to us. *Id.* In affirming the district court's order affirming the bankruptcy court, we articulated what became the seminal test for determining whether a civil proceeding is "related to" a bankruptcy:

FN25. The district court held that the third-party complaint was "related to" the bankruptcy so it did not remand that aspect of the case to the state court.

The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy....* An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Id.* at 994 (internal citations omitted).

Then came *Resorts.* We reiterate that *Resorts* involved a claim for professional malpractice and breach of contract brought against Price Waterhouse for accounting services performed for a litigation trust formed after the bankruptcy court issued an order confirming the Reorganization Plan.*Resorts,* 372 F.3d at 156-57. Almost seven years after the bankruptcy court confirmed the plan, the litigation trust brought suit against Price Waterhouse on account of its post-confirmation services. *Id.* at 159. We held that the traditional test in *Pacor,* a case involving claims brought pre-confirmation, was "problematic" in the "post-confirmation context" inasmuch as "it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred." *Id.* at 165. Thus, because confirmation of a plan in which all property of the estate is vested in the reorganized debtor eliminates the existence of the estate, there never will be jurisdiction over a post-confirmation dispute under a literal interpretation of the *Pacor* test. *Id.*

In an attempt to balance Congress's intent to grant bankruptcy courts "comprehensive jurisdiction so that they could deal efficiently and expeditiously with matters connected with the bankruptcy estate" with the jurisdictional limitations on non-Article III bankruptcy courts, *id.* at 163-64 (internal quotation marks omitted), we developed the test to be applied "[a]t the post-confirmation stage":

As stated, the jurisdiction of the non-Article III bankruptcy courts is limited after confirmation of a plan. But where there is a close nexus to the

bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement, retention of post-confirmation bankruptcy court jurisdiction is normally appropriate.

*Id.* at 168-69.

[9] After our present consideration of *Resorts,* we are satisfied that the "close *265 nexus" test is applicable to "related to" jurisdiction over any claim or cause of action filed post-confirmation, regardless of when the conduct giving rise to the claim or cause of action occurred. We reach this conclusion because in *Resorts,* though we were dealing with post-confirmation rather than pre-confirmation conduct, we focused on the point of time in which the cause of action was instituted: whether it was filed in the "post-confirmation stage," i.e., the "post-confirmation context." Furthermore, we did not indicate that the test should be confined to situations in which the conduct giving rise to the complaint occurred post-confirmation. Moreover, since *Resorts,* we have stated that we use the test to determine whether " 'related to' jurisdiction ... exist[s] at the *post-confirmation stage,"Stoe,* 436 F.3d at 216 n. 3 (emphasis added). Most recently in *In re Shenango Group Inc.,* 501 F.3d 338, 340 (3d Cir.2007), we applied the *Resorts* "close nexus" test in a "related to" jurisdictional inquiry over a "post-confirmation dispute." Additionally, we note that the Court of Appeals for the Ninth Circuit, which adopted the "close nexus" test that we described in *Resorts,* has stated that the test applies when "the proceeding arises post-confirmation" and applied the "close nexus" test with respect to claims filed post-confirmation involving pre-confirmation conduct. *See In re Pegasus Gold Corp.,* 394 F.3d 1189, 1193-94 (9th Cir.2005).

Importantly, limiting the "close nexus" test to cases involving only post-confirmation conduct would be inconsistent with our reasoning to depart from *Pacor* in *Resorts.* In *Resorts,* we indicated that our central reason to depart from the *Pacor* test in the post-confirmation context was that there no longer is an estate that can be affected so application of the *Pacor* test was "problematic." *See Resorts,* 372 F.3d at 164-65. The time when the conduct raised in the post-confirmation complaint occurred is of no

consequence in this analysis as regardless of whether the conduct was post-confirmation or pre-confirmation, there would not be an estate at the post-confirmation stage. For these reasons, we conclude that with respect to "related to" jurisdiction, the *Pacor* test applies in all disputes raised pre-confirmation and the "close nexus" test applies in all disputes raised post-confirmation, regardless of when the conduct alleged in the complaint occurred.[FN26]

FN26. We emphasize that this distinction and application of the respective tests applies only when the parties seek to establish jurisdiction on the grounds that the cause of action is "related to" the bankruptcy, the broadest jurisdictional hook. We decided in *Resorts* that in such situations the court must impose limits in the post-confirmation context. In contrast, cases that "aris[e] in" the bankruptcy case must satisfy a stringent standard in which the matter must have an intimate connection to the bankruptcy proceedings, and thus the stage at which the complaint is filed is not determinative.

V. CONCLUSION

For the foregoing reasons, we will affirm the district court's memorandum order of July 14, 2006, affirming the bankruptcy court's order of September 2, 2005, dismissing appellants' complaint.

C.A.3 (Pa.),2007.
In re Seven Fields Development Corp.
505 F.3d 237, 48 Bankr.Ct.Dec. 276, Bankr. L. Rep. P 81,040

END OF DOCUMENT

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

NOV 2 8 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                        SOUTHERN DIVISION

11  CHRISS STREET,                )    SA CV 07-829 AHS (RZx)
                                  )
12                                )
                     Plaintiff,   )    ORDER (1) GRANTING
13                                )    DEFENDANT'S MOTION TO
          v.                      )    TRANSFER VENUE AND (2)
14                                )    DENYING PLAINTIFF'S
                                  )    MOTION TO REMAND
15  DANIEL HARROW, et al.,        )
                                  )
16                                )
                     Defendants.  )
17  _____)

18

19                            **I.**

20                   **PROCEDURAL BACKGROUND**

21          Plaintiff Chriss Street ("plaintiff") filed the complaint

22  in this action on July 12, 2007, in Orange County Superior Court.

23  On July 19, 2007, defendant Daniel Harrow ("defendant") removed the

24  case to district court.  On August 3, 2007, plaintiff filed a

25  motion to remand the case to Orange County Superior Court.  On

26  August 7, 2007, defendant filed a motion to transfer venue to

27  United States District Court for the District of Delaware.  On

28  August 27, 2007, defendant filed opposition to plaintiff's motion

1  to remand.  Plaintiff filed no opposition to defendant's motion to

2  transfer venue.  On September 18, 2007, the Court took the matter

3  under submission.

4                                II.

5                        **SUMMARY OF COMPLAINT**

6          Plaintiff served as trustee of the End of the Road Trust

7  ("EORT") from October 27, 1998, until August 1, 2005, when he was

8  succeeded by defendant.  (Complaint "Compl." ¶ 4; Declaration of

9  Jacob B. Sellers ("Sellers Decl."), Ex. A, at p. 1; Ex. B, at p.

10 1.)  The purpose of the EORT is to liquidate the assets of Fruehauf

11 Trailer Corporation and certain of its subsidiaries (collectively,

12 "debtors"), which filed for Chapter 11 bankruptcy proceedings

13 before the United States Bankruptcy Court for the District of

14 Delaware.[1]  (Sellers Decl., Ex. C.)  The Liquidating Trust

15 Agreement ("Trust Agreement"), which created the EORT, was adopted

16 pursuant to the debtors' Amended Joint Plan of Reorganization

17 ("Reorganization Plan") confirmed by the Bankruptcy Court on

18 September 17, 1998.  (Sellers Decl., Exs. A, B, C.)  On August 19,

19 2005, plaintiff was served with a subpoena by the United States

20 Department of Labor ("DOL") in his capacity as trustee of the EORT.

21 (Compl. ¶ 6.)

22         Pursuant to a fiduciary liability insurance policy which

23 allegedly covered him from approximately July 17, 2005, to July 17,

24 2006, plaintiff tendered the defense of the subpoena to defendant,

25 in his capacity as successor trustee, for processing.  (Id. ¶ 5.)

26

27 _____

28         [1]The case is U.S. Bankruptcy Court (Dist. Delaware) Case No.
   96-1563 (PJW).

1 Defendant subsequently informed plaintiff the trust's insurance

2 provider, Arch Specialty Insurance Company ("insurance provider"),

3 had declined to extend coverage for the DOL investigation and

4 plaintiff would have to personally defend the subpoena.  (<u>Id.</u> ¶¶ 8,

5 9.)  Plaintiff claims he was unaware at the time of the basis for

6 denial or of any information exchanged between the insurance

7 provider and defendant while the decision regarding coverage was

8 pending.  (<u>Id.</u> ¶ 8.)

9        In March 2007, plaintiff discovered correspondence

10 between the insurance provider and defendant's counsel, which

11 states certain responses provided by defendant to inquiries by the

12 insurance provider were "'false when made'" and contained

13 "'misrepresentations.'"  (<u>Id.</u> ¶ 10 (quoting Ex. A, p. 6, ¶¶ 1, 2)).

14 Plaintiff claims he was unlawfully denied insurance coverage for

15 the DOL investigation on the basis of these "false" statements and

16 "misrepresentations" by defendant.  (<u>Id.</u>)  The DOL investigation

17 remains active.  (<u>Id.</u> ¶ 9.)  Plaintiff alleges claims for breach of

18 contract, fraud, intentional interference with economic relations,

19 negligent interference with economic relations, and conspiracy.

20                              **III.**

21                 <u>**SUMMARY OF PARTIES' CONTENTIONS**</u>

22 A.       **Defendant's Motion to Transfer Venue**

23        Defendant moves to transfer this action to the United

24 States District Court for the District of Delaware under either 28

25 U.S.C. § 1406(a) or § 1404(a).  Under § 1406(a), when a district

26 court receives a case "laying venue in the wrong division or

27 district," it can either dismiss it, or, if in the interest of

28 justice, transfer it to "any district or division in which it could

1  have been brought."  Section 1404(a) allows a district court to

2  transfer a case "[f]or the convenience of the parties and

3  witnesses, in the interest of justice" to "any other district or

4  division where it might have been brought."

5       Defendant contends the present action is a "core"

6  bankruptcy proceeding, and thus, under the exclusive jurisdiction

7  of the Bankruptcy Court.  28 U.S.C. § 1334(a)-(b).  Core bankruptcy

8  proceedings are those listed under 28 U.S.C. § 157(b)(2) or those

9  which by their nature could only arise in the context of a

10 bankruptcy case.  In re Gruntz, 202 F.3d 1074, 1081 (9th Cir.

11 2000).  Matters calling into question the performance of a trustee

12 under a confirmed plan and Trust Agreement are considered core

13 bankruptcy proceedings by the courts.  In re Birting Fisheries,

14 Inc., 300 B.R. 489, 499 (B.A.P. 9th Cir. 2003).  Defendant asserts

15 this is the case here.  Plaintiff's complaint references the

16 parties in their capacities as trustees in articulating the claims.

17 (Compl. ¶¶ 4, 5, 6, 7, 9, 10.)  Plaintiff's entitlement to

18 fiduciary liability insurance coverage consideration rests

19 exclusively on his status as former trustee.  Any duties owed by

20 defendant to plaintiff in connection with insurance coverage

21 similarly arise out of his status as successor trustee.  The Trust

22 Agreement, which created the EORT, specifically refers to the

23 purchase and maintenance of insurance as administrative duties of

24 the trustee.  (Sellers Decl., Ex. C, § 7.1.1.)  Plaintiff's

25 challenge to defendant's performance of these duties directly

26 concerns the "administration of the estate," which is among the

27 listed core bankruptcy proceedings under § 157(b)(2).

28       At minimum, defendant argues, this case is "related to"

4

1    bankruptcy proceedings.    § 1334(b).    Bankruptcy courts retain

2    jurisdiction after confirmation over matters having "a close nexus

3    to the bankruptcy plan or proceeding."    In re Pegasus Gold Corp.,

4    394 F.3d 1189, 1192 (9th Cir. 2005).    This is particularly true

5    when, as here, a continuing trust is involved, because they are

6    "constructed as instrumentalities of the execution of the plan."

7    In re Fruehauf Trailer Corp., 369 B.R. 817, 822 (Bankr. D. Del.

8    2007) (citing In re Resorts Intern., Inc., 372 F.3d 154, 167 (3rd

9    Cir. 2004)).    In re Freuhauf is an adversary proceeding initiated

10   by defendant in this case currently pending before the Delaware

11   Bankruptcy Court.    Id.    It alleges plaintiff engaged in various

12   forms of misconduct during his tenure as trustee.    Id. at 828.

13   The Bankruptcy Court found the allegations against plaintiff here

14   were "related to" the bankruptcy proceedings because they were

15   "closely tied to the execution and administration of the Plan and

16   Liquidating Trust Agreement."    Id. at 827.    The Court should hold

17   this matter is no different, since plaintiff is alleging

18   misconduct by defendant in his capacity as successor trustee.

19        Defendant argues transferring this "related to" case to

20   the Delaware District Court under § 1404(a) serves the convenience

21   of the parties and the interests of justice.    Plaintiff has

22   availed himself of the Delaware courts by filing a petition for

23   advancement and indemnification in the Court of Chancery, which

24   includes costs associated with the DOL investigation.    (Sellers

25   Decl., Ex. F, p. 3.)    This action has been removed to the Delaware

26   District Court, where defendant expects it will be transferred to

27   the Bankruptcy Court.    Plaintiff has also filed a counterclaim in

28   the adversary proceedings initiated against him by defendant in

1  the Delaware Bankruptcy Court.   (Sellers Decl., Ex. H, p. 29.)

2  Transferring this matter to the Delaware District Court would be

3  convenient to the parties since they have litigation pending in

4  that forum.   It would also serve the interests of judicial

5  economy, since that court could in turn transfer the matter to the

6  Bankruptcy Court, which has continuing and exclusive jurisdiction

7  over matters concerning the trust at issue.

8  **B.   Plaintiff's Motion to Remand**

9           Plaintiff moves to remand to Orange County

10 Superior Court under 28 U.S.C. § 1334(c)(2), which provides:

11           Upon timely motion of a party in a proceeding
             based upon a State law claim or State law
12           cause of action, related to a case under title
             11 but not arising under title 11 or arising
13           in a case under title 11, with respect to
             which an action could not have been commenced
14           in a court of the United States absent
             jurisdiction under this section, the district
15           court judge shall abstain from hearing such
             proceeding if an action is commenced, and can
16           be timely adjudicated, in a State forum of
             appropriate jurisdiction.

17

18 Plaintiff contends the district court is barred from considering

19 his case because the claims at issue are not core bankruptcy

20 proceedings "arising under" or "arising in a case under title 11."

21 § 1334(c)(2).   A core proceeding case would not exist but for the

22 existence of the bankruptcy proceedings.   Doshea Dean, et al. v.

23 American General Finance, 191 B.R. 463, 468 (Bankr. M.D. Ala.

24 1996).   Since this case has nothing to do with the relationship

25 between debtors and creditors and is entirely limited to the

26 legality under California law of the actions of defendant as an

27 individual, it is not a core bankruptcy proceeding.   The "nexus"

28 between the instant action and the bankruptcy proceeding is not

1  one that "could directly affect the bankrupt estate" by

2  "alter[ing] the debtors' rights, liabilities, options, freedom of

3  action, or the administration of the bankrupt estate." <u>Doshea</u>

4  <u>Dean</u>, 191 B.R. at 469.  The district court lacks subject matter

5  jurisdiction in light of the mandatory abstention under §

6  1334(c)(2) because there is otherwise no federal question and the

7  parties lack diversity.

8         Alternatively, plaintiff argues the Court should

9  exercise discretionary abstention or remand on equitable grounds.

10  § 1334(c)(1) (permitting courts to abstain from actions "in the

11  interest of justice, or in the interest of comity with State

12  courts or respect for State law"); 28 U.S.C. § 1452(b) ("The court

13  to which such claim or cause of action is removed may remand such

14  claim or cause of action on any equitable ground.").  Since the

15  instant action is based on California law, plaintiff contends the

16  Court should abstain to permit the state court to resolve state

17  law matters.  Remand would serve judicial economy by having the

18  courts most familiar with California law adjudicate the case.

19         Finally, plaintiff requests the Court grant costs and

20  attorney fees.  28 U.S.C. § 1447(c) ("An order remanding the case

21  may require payment of just costs and any actual expenses,

22  including attorney fees, incurred as a result of removal.").

23  **C.**         **Defendant's Opposition to Motion to Remand**

24         Defendant contends plaintiff's § 1334(c)(2) mandatory

25  abstention argument is without merit, since the provisions of the

26  section are inapplicable once a case is removed to federal court.

27  <u>McDowell Welding & Pipefitting, Inc. v. U.S. Gypsum Co.</u>, 285 B.R.

28  460, 475 (D. Or. 2002) (citing <u>Security Farms v. Int't Broth. Of</u>

1   <u>Teamsters</u>, 123 F.3d 999, 1009-10 (9th Cir. 1997)).  Section

2   1452(b), which allows district courts to remand bankruptcy-related

3   claims based on "any equitable ground," not § 1334(c)(2), is the

4   appropriate section to consider after a case has been removed to

5   district court.  <u>Id.</u>  Plaintiff makes brief reference to §

6   1452(b), but he does not argue on what equitable grounds the

7   district court should remand.  As such, the only issue raised by

8   plaintiff's remand motion is whether the district court has

9   original jurisdiction over this matter.  <u>See</u> 28 U.S.C. § 1441.

10            Defendant argues the Court has jurisdiction under §

11   1334(b), which states "district courts shall have original but not

12   exclusive jurisdiction of all civil proceedings arising under

13   title 11, or arising in or related to cases under title 11."  A

14   court need only determine whether the matter before it is at

15   minimum "related to" a bankruptcy case, since it is the broadest

16   category under § 1334(b).  <u>Pegasus Gold Corp.</u>, 394 F.3d at 1194.

17   For the reasons set forth in his motion to dismiss, defendant

18   maintains this matter is a core bankruptcy proceeding, or at

19   minimum, is related to the proceedings currently before the

20   Bankruptcy Court.  Plaintiff's motion to remand should thus be

21   denied.

22   //

23   //

24   //

25   //

26   //

27   //

28   //

1
2
3 | A.              **Defendant's Motion to Transfer Venue**

4              Defendant moves for transfer under either 28 U.S.C. §
5 1406(a) or 28 U.S.C. § 1404(a).  The Court finds § 1404(a) the
6 more appropriate vehicle for consideration of this motion.[2]

7              **1.   Legal Standard**

8              A change of venue for convenience is governed by 28
9 U.S.C. § 1404(a), which provides:  "For the convenience of parties
10 and witnesses, in the interest of justice, a district court may
11 transfer any civil action to any other district or division where
12 it might have been brought."  "[T]he district court has discretion
13 to 'adjudicate motions for transfer according to an
14 individualized, case-by-case consideration of convenience and
15 fairness.'"  Jones v. GNC Franchising, Inc., 211 F.3d 495, 498
16 (9th Cir. 2000) (quoting Stewart Organization, Inc. v. Ricoh
17 Corp., 487 U.S. 22, 23 (1988)). In conducting its analysis, a
18 court may consider various factors in deciding whether to grant a
19 motion to transfer, including:

20            (1) [T]he location where the relevant
             agreements were negotiated and executed, (2)
21            the state that is most familiar with the
             governing law, (3) the plaintiff's choice of
22            forum, (4) the respective parties' contacts

---

<div style="font-size:smaller">

24       [2] A party may bring a § 1406(a) motion where venue is laid in
a "wrong" district.  See Van Dusen v. Barrack, 376 U.S. 612, 634
25 (1964) ("Although both sections were broadly designed to allow
transfer instead of dismissal, Section 1406(a) provides for
26 transfer from forum in which venue is wrongly or improperly laid,
whereas, in contrast, Section 1404(a) operates on the premise
27 that the plaintiff has properly exercised his venue privilege.").
Here, defendant properly removed the action to district court
28 under 28 U.S.C. 1441(b).

</div>

<div style="text-align:center">IV.</div>

<div style="text-align:center">**DISCUSSION**</div>

with the forum, (5) the contacts relating to
the plaintiff's cause of action in the chosen
forum, (6) the differences in the costs of
litigation in the two forums, (7) the
availability of compulsory process to compel
attendance of unwilling witnesses, and (8) the
ease of access to sources of proof.
Additionally, the presence of a forum
selection clause is a "significant factor" in
the court's § 1404(a) analysis.

Jones, 211 F.3d at 499 (quoting Stewart Org. v. Ricoh Corp., 487

U.S. 22, 29-31.  Defendant bears the burden of showing the

alternative venue would be more convenient. Commodity Futures

Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979).

Under § 1404(a), the transferor court must additionally determine

whether the action initially could have been commenced in the

prospective transferee court.  Hatch v. Reliance Ins. Co., 758

F.2d 409, 414 (9th Cir. 1985).

> **2.   The Court Grants Defendant's Motion to Transfer**
> **Venue Under 28 U.S.C. § 1404(a)**

Pursuant to § 1404(a), the Court should examine three

main considerations:  the convenience of parties and witnesses;

the interests of justice; and whether the action could have been

brought in the district to which transfer is sought.

> **a.   Convenience of the Parties and Witnesses**

> **i.   Parties**

> **1.   Choice of Forum and Familiarity with**
> **Governing Law**

Transfer is sought to the Delaware District Court, but

California is plaintiff's "choice of forum."  Jones, 211 F.3d at

499.  Plaintiff's choice of forum is to be given deference, but it

is not dispositive and is to be balanced with other relevant

1  factors.  <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 U.S.

2  834, 843 (1986).  Courts, for example, should also consider the

3  forum "most familiar with the governing law."  <u>Jones</u>, 211 F.3d at

4  499.  Here, because the parties have multiple related proceedings

5  in Delaware, transfer of the matter to the district court there

6  for resolution is appropriate under § 1404(a).

7       Defendant contends the Bankruptcy Court has exclusive

8  jurisdiction over this matter because it is a "core" bankruptcy

9  proceeding.  The statutory grant of bankruptcy jurisdiction in the

10 federal courts extends to "all civil proceedings arising under

11 title 11, or arising in or related to a case under title 11."  28

12 U.S.C. § 1334.  Matters that "arise under" or "arise in" a case

13 under title 11 are considered "core" matters, whereas those

14 "related to" cases under title 11 are "noncore."  <u>Gruntz</u>, 202 F.3d

15 at 1081; <u>see also</u> 28 U.S.C. § 157(b)(2) (listing examples of core

16 bankruptcy proceedings).  The distinction between core and

17 noncore matters is chiefly important in identifying those matters

18 for which bankruptcy judges can enter final judgments and those

19 where they can only propose findings of fact and conclusions of

20 law to the district court judge.  <u>Gruntz</u>, 202 F.3d at 1081.

21      Determining the likelihood that the present matter is

22 related to the Delaware bankruptcy case informs the transfer

23 analysis because it is convenient to the parties to have

24 substantially related matters adjudicated in the same forum.  <u>See</u>

25 <u>A.J. Indus., Inc. v. U.S. Dist. Court for the Central Dist. of</u>

26 <u>Calif.</u>, 503 F.2d 384, 389 (1974) ("[E]ven the pendency of an

27 action in another district is important because of the positive

28 effects it might have in possible consolidation of discovery and

1  convenience to witnesses and parties."). Having a court already

2  substantially familiar with the bankruptcy Reorganization Plan and

3  agreements rule on the extent of their applicability and the

4  nature of the rights contained therein also benefits the parties'

5  convenience interests.

6        Although the causes of action in the complaint here are

7  California law-based, the crux of the claims appears to relate to

8  entitlements and responsibilities of the parties under the

9  Reorganization Plan and related agreements approved by the

10  Bankruptcy Court.  Courts have recognized "that in cases involving

11  continuing trusts (such as litigation trusts, or as here, a

12  liquidating trust), trusts 'by their nature maintain a connection

13  to the bankruptcy court even after the plan has been confirmed.'"

14  Pegasus Gold, 394 F.3d at 1194 (quoting Resorts Intern., 372 F.3d

15  at 167).  In Pegasus Gold, the "majority of the claims asserted in

16  the complaint [were] common state tort and contract claims

17  involving post-confirmation conduct."  Id.  Nonetheless, the Court

18  of Appeals for the Ninth Circuit held the lower court's

19  determination that the claims were "related to" the bankruptcy

20  proceedings was correct because the claims would "likely require

21  the interpretation" of the bankruptcy plan and relevant

22  agreements.  Id.

23        This case bears similarities.  The complaint alleges

24  "[p]laintiff, as Trustee of End of the Road Trust, was entitled to

25  coverage, including, but not limited to, a defense against

26  liability for all actions taken as Trustee for the Trust."

27  (Compl. ¶ 5. (emphasis added))  Plaintiff claims he requested

28  fiduciary liability insurance coverage from defendant pursuant to

1   defendant's "duties as the *new Trustee* for the Trust."  (<u>Id.</u>, ¶ 8.

2   (emphasis added))  Plaintiff further alleges defendant "had a duty

3   and obligation to provide a defense . . . against the Department

4   of Labor subpoena."  (<u>Id.</u>, ¶ 12.)

5           The Trust Agreement, which created the trust in

6   question, includes the purchase and maintenance of insurance among

7   the trustee's "[m]anagement" duties.  (Sellers Decl., Ex. C, §

8   7.1.)  The Trust Agreement states that, "with respect to assets of

9   the Trust estate," the trustee is directed "[i]f sufficient funds

10  are available to purchase and maintain in existence, such

11  insurance as the Trustee deems reasonable, necessary, or

12  appropriate from time to time to protect the Liquidating Trust's,

13  the Trustee's and the Beneficial Interestholder's [sic] interests

14  in the Trust Estate."  (<u>Id.</u>, §§ 7.1, 7.1.1.)  The Trust Agreement's

15  indemnification provision applies to "civil, criminal,

16  administrative, or investigative" proceedings that may arise "by

17  reason of the fact that [the person] is or *was* a Trustee."  (<u>Id.</u>,

18  § 8.5.1. (emphasis added))

19          Accordingly, this matter appears to "aris[e] in" the

20  bankruptcy proceedings that gave rise to the liquidating trust,

21  or, at minimum, it is "related to" said proceedings.  § 1334(b).

22  Though the "arising in" category is "less clear" than the "arising

23  under" and "related to" categories, the cases in the "arising in"

24  category are considered by courts "those that are not based on any

25  right expressly created by title 11, but nevertheless, would have

26  no existence outside of the bankruptcy."  <u>In re Harris Pine Mills</u>,

27  44 F.3d 1431, 1435 (9th Cir. 1995).  Both plaintiff and defendant

28  served as trustees of the EORT as a result of the Bankruptcy

1   Court-confirmed plan. (Sellers Decl., Ex. D.) But for the

2   existence of the bankruptcy proceedings regarding this plan,

3   neither party would have been a trustee and the question of

4   trustee fiduciary liability insurance coverage would not exist.

5          In deciding between proper forums, Jones also instructs

6   that forum selection clauses should be accorded "significant"

7   consideration. 211 F.2d at 499. Though there is no contract

8   directly between plaintiff and defendant with a clause agreeing to

9   a forum for resolution of disputes between them, the

10  Reorganization Plan and its related agreements contain provisions

11  expressly indicating the Bankruptcy Court should retain

12  jurisdiction over matters relating to the Reorganization Plan and

13  agreements' interpretation. The Bankruptcy Court's September 17,

14  1998 confirmation order states, "Notwithstanding Confirmation of

15  the Plan, this Court retains jurisdiction as is provided in

16  Article 11 of the Plan." Id., ¶ 6(d). Article 11 of the

17  Reorganization Plan, titled "Retention of Jurisdiction," in turn

18  states the Bankruptcy Court shall retain jurisdiction to, inter

19  alia, "[r]esolve any and all controversies, suits, or issues that

20  may arise in connection with the consummation, interpretation, or

21  enforcement of the Plan or any entity's obligations incurred in

22  connection with the plan." Id., Ex. A, p. 23.

23         The Bankruptcy Court has previously invoked the

24  Reorganization Plan's retention of jurisdiction article. In a

25  related proceeding involving the same parties, the Bankruptcy

26  Court addressed the provisions of Article 11 in considering a

27  subject matter jurisdiction challenge. Fruehauf Trailer Corp.,

28  369 B.R. at 827. In that case, plaintiff Harrow, in his role as

14

1  trustee, brought an action against defendant Street alleging

2  breach of fiduciary duties and other misconduct during Street's

3  tenure as trustee.  Id. at 820.

4          Because the claims involved Street's actions while

5  trustee, the Bankruptcy Court concluded the "adversary proceeding

6  is closely tied to the execution and administration of the Plan

7  and the Liquidating Trust Agreement so that there is clearly a

8  sufficiently close nexus between [the] proceeding and the Fruehauf

9  bankruptcy case to warrant the exercise of post-confirmation

10  'related to' jurisdiction."  Id. at 828.  The court noted "Street

11  was responsible for the formulation of the [Reorganization] Plan,"

12  including Article 11.  Id. at 827.  As such the court stated its

13  "exercise of jurisdiction is not only warranted, but was

14  explicitly agreed to by Street."  Id.  Though Article 11 cannot

15  "artificially" create jurisdiction, the court stated the provision

16  is still "proof of a close nexus between the claims and the

17  bankruptcy case."  Id. (quoting EXDS, Inc. v. CB Richard Ellis,

18  Inc. (In re EXDS, Inc.), 352 B.R. 731, 735 (Bankr. D. Del. 2006)).

19  The court concluded the "close nexus" between the cases made it,

20  at minimum, "related to" the bankruptcy proceeding.  Id. at 828.[3]

21          The Employment Agreement between the EORT and plaintiff,

22  which was adopted pursuant to the Trust Agreement, also contains

23  language supportive of Delaware as the preferred forum for

24  adjudication of matters related to plaintiff's trusteeship.  It

25

26  _____

27          [3] The Bankruptcy Court did not reach the question whether
    the matter was a core bankruptcy matter "arising under," or
    "arising in" a case under, Title 11.  Fruehauf Trailer Corp., 369

28  B.R. at 821 n.2.

1    states, for example, that "[a]ny dispute or controversy arising

2    under or in connection with this Agreement shall be settled

3    exclusively by the Bankruptcy Court." (Declaration of Sarah E.

4    Doerr ("Doerr Decl."), Ex. A, p.7.) The Employment Agreement

5    further states: "The validity, interpretation, construction, and

6    performance of this Agreement shall be governed by the laws of the

7    State of Delaware without regard to its conflicts of law

8    principals [sic]." (<u>Id.</u>)

9         The instant case involves the same Reorganization Plan

10   and Trust Agreement at issue in <u>Fruehauf Trailer Corp</u>. The

11   court's decision in <u>Fruehauf Trailer Corp</u> finds support in the

12   holdings of other courts. In the Ninth Circuit, courts have held

13   that when a complaint contains "no substantive bankruptcy law

14   issues," the "mere fact that a bankruptcy degree has issued" does

15   not require "that any and all further proceedings be in the

16   bankruptcy court." <u>Birting Fisheries</u>, 300 B.R. at 501 (quoting

17   <u>Hinduja v. Arco Prods. Co.</u>, 102 F.3d 987, 989-90 (9th Cir. 1996).

18   However, <u>Birting Fisheries</u> also limited the instances where

19   bankruptcy-related proceedings are appropriately before state

20   courts to those occasions "where jurisdiction has not been

21   reserved," among other factors. <u>Id.</u> Though the instant case is

22   now before the district court, <u>Birting Fisheries</u> is nonetheless

23   instructive. Because the Reorganization plan and its related

24   agreements - those under which plaintiff acquired the position

25   which he now claims entitles him to insurance coverage - indicate

26   the Delaware courts should be the locus for adjudicating matters

27   related to said agreements, plaintiff's "choice of forum" is

28   fairly accorded less weight. <u>Jones</u>, 211 F.3d at 499.

1    In sum, the District Court for the Central District of

2    California likely has more experience than the Delaware District

3    Court in adjudicating California law claims generally, and

4    plaintiff's original filing in state court indicates his choice of

5    forum is California.  However, in light of the significant

6    interest in having the Delaware Bankruptcy Court decide actions

7    likely arising in, but at minimum, related to, the bankruptcy

8    proceedings involving these parties, this factor favors transfer

9    to the District of Delaware.

10    **2.    Contacts with Selected Forum and**

11    **Location of Relevant Agreements**

12    Both plaintiff and defendant have "contacts" with

13    California, since they are residents of the state.  <u>Jones</u>, 211

14    F.3d at 499.  The EORT, to which they have both served as

15    trustees, also has its principal offices located in California.

16    ("Doerr Decl., Ex. A, p. 1.)  The trust, however, was created

17    under Delaware law to hold the former assets of Fruehauf Trailer

18    Corporation, a Delaware corporation.  (Sellers Decl., Ex. F, ¶ 2).

19    The relevant "agreements" in this case include the Reorganization

20    Plan and the Trust Agreement adopted pursuant to its terms.  These

21    agreements were confirmed by the Delaware Bankruptcy Court, which,

22    as evidenced by Article 11 of the Reorganization Plan, appears to

23    have been chosen as the preferred forum for adjudication of

24    related matters.  (Sellers, Ex. A, p. 23.)  Thus, while the

25    parties are physically located in California, their role as

26    trustees also indicates contacts with Delaware.

27    It is also noteworthy that, along with the bankruptcy

28    proceeding that gave rise to the EORT, the parties presently are

1    involved in other legal proceedings in Delaware involving the

2    Reorganization Plan and Trust Agreement.  As mentioned above,

3    defendant initiated an adversary proceeding against plaintiff

4    alleging breach of fiduciary duties and other misconduct during

5    his tenure as trustee.  Fruehauf Trailer Corp., 369 B.R. at 820.

6    Plaintiff has filed a counterclaim with his answer, seeking

7    indemnification under the Trust Agreement for expenses associated

8    with the litigation.  (Sellers Decl., Ex. H, p. 29)  Also, on

9    January 9, 2007, plaintiff filed a petition for Advancement and

10   Indemnification in the Delaware Court of Chancery, which also

11   involves, in part, the DOL investigation at issue in the instant

12   complaint.  (Sellers Decl., Ex. F, ¶ 13.)

13          Not only did the relevant "agreements" emerge from the

14   Delaware bankruptcy proceedings, plaintiff's availing himself of

15   the proposed transferee district tends to show the forum is not

16   inconvenient to him, despite the contacts he and the defendant

17   have with California.

18                       3.   Other Factors

19          The existence of pending legal proceedings involving the

20   parties - including at least one entirely initiated by plaintiff,

21   as described above - militates against a finding that the

22   "differences in the costs of litigation in the two forums," "the

23   availability of compulsory processes to compel attendance of

24   unwilling witnesses," and the "the ease of access to sources of

25   proof" disfavor transfer to the Delaware District Court.  Jones,

26   211 F.3d at 499.

27   //

28   //

1            **ii.  Witnesses**

2        Though the convenience of parties should is an important

3  factor, the convenience of nonparty witnesses is often recognized

4  as the most important consideration in deciding a § 1404(a)

5  motion. <u>Los Angeles Memorial Coliseum Comm'n v. Nat'l Football</u>

6  <u>League</u>, 89 F.R.D. 497, 501 (C.D. Cal. 1981); <u>see also</u> <u>Saleh v.</u>

7  <u>Titan Corp.</u>, 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005).  The

8  Court should consider not merely the number and location of each

9  party's witnesses, but also the materiality and importance of the

10 witnesses' testimony.  <u>Saleh</u>, 361 F. Supp. 2d at 1161.

11       Based on the facts in the complaint, this action chiefly

12 involves communications between the insurance provider, plaintiff,

13 defendant, and counsel for all parties.  Aside from the insurance

14 provider and its counsel, no other nonparty witnesses have been

15 identified by the parties as potential sources of testimony.

16 Since the statements on which plaintiff bases his claims appear in

17 correspondence prepared by insurance provider's counsel and

18 reflects decisions made by the insurance provider, their testimony

19 interpreting the correspondence is likely to be both material and

20 important.  Courts, however, typically give little to no weight to

21 inconvenience posed to counsel. <u>See</u> <u>Fodor v. Berglas</u>, 1994 WL

22 822477, *8 (C.D. Cal. Dec. 27, 1994); <u>Burstein v. Applied</u>

23 <u>Extrusion Technologies, Inc.</u>, 829 F. Supp. 106, 112 (D. Del.

24 1992).  The Court thus limits its nonparty witness inquiry to

25 potential testimony on behalf of the insurance provider.  Because

26 the insurance provider, conducts business on a national scale,

27 including Delaware, the inconvenience it may experience from

28 transferring venue will likely be minimal.  The parties, however,

1  have provided no evidence in this regard.  In light of the absence

2  of evidence of inconvenience to the insurance provider and the

3  overwhelming interest in having this matter transferred to the

4  forum where the Bankruptcy Court overseeing the Reorganization

5  Plan is located and where the parties are presently litigating

6  related matters, this factor does not militate against transfer to

7  the Delaware District Court.

8              **b.    Interest of Justice**

9          The broad "interest of justice" factor of § 1404(a) is

10  often regarded as encompassing, among other things, considerations

11  of judicial economy and efficiency.  See Stewart Organization, 487

12  U.S. at 30 (including "systemic integrity and fairness" in the

13  1404(a) "interest of justice" factor); cf. Ferens v. John Deere

14  Co., 494 U.S. 516, 532 (1990) ("[T]o permit a situation in which

15  two cases involving precisely the same issues are simultaneously

16  pending in different District Courts leads to the wastefulness of

17  time, energy and money that § 1404(a) was designed to prevent.").

18  As discussed above, the present case appears to arise in, or at

19  minimum, is related to, the Delaware Bankruptcy Court proceedings.

20  It is in the interest of justice to transfer the matter to the

21  district court empowered to refer the matter to the Bankruptcy

22  Court, which is already substantially familiar with the parties

23  and their respective duties and entitlements under the approved

24  Reorganization Plan and Trust Agreement.  As defendant asserts,

25  retaining the matter in this Court risks creating inconsistent

26  rulings on the duties and entitlements of the parties under the

27  same Reorganization Plan and Trust Agreement.

28  //

1          **c.**     **Whether Action Might Have Been Brought in**

2                 **Delaware District Court**

3         "In determining whether an action 'might have been

4 brought' in a district, the court looks to whether the action

5 could have been commenced in that district." Hatch, 758 F.2d at

6 414.  Merely because a plaintiff "choos[es] not to" begin the

7 action in the district does not mean the action could not have

8 been brought in the district.  Id.  Plaintiff could have brought

9 this claim in the District of Delaware pursuant to the provisions

10 of 28 U.S.C. § 1334(b).  As established above, the present action

11 appears to "arise in" the Delaware bankruptcy proceeding.

12 Moreover, the retention of jurisdiction provisions in the

13 Reorganization Plan and related agreements suggest the Bankruptcy

14 Court would have exercised jurisdiction over plaintiff's claims

15 had he brought them in that forum.

16 **B.**        **Plaintiff's Motion to Remand**

17        **1.**    **Legal Standard**

18         A suit may be removed to federal court by the defendant

19 if the federal court would have had original subject matter

20 jurisdiction over that suit.  28 U.S.C. § 1441(a).  A "cause of

21 action arises under federal law only when the plaintiff's well

22 pleaded complaint raises issues of federal law." Metropolitan

23 Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987).  A well pleaded

24 complaint must establish "either that federal law creates the

25 cause of action or that the plaintiff's right to relief

26 necessarily depends on resolution of a substantial question of

27 federal law." Franchise Tax Bd. v. Constr. Laborers Vacation

28 Trust, 463 U.S. 1, 27-28 (1983).  Upon a motion to remand by

1  plaintiff, defendant bears the burden of establishing proper

2  removal and federal jurisdiction.  <u>Gaus v. Miles Inc.</u>, 980 F.2d

3  564, 566 (9th Cir. 1992).  The removal statute is strictly

4  construed against removal jurisdiction and any doubt is resolved

5  in favor of remand.  <u>Boggs v. Lewis</u>, 863 F.2d 662, 663 (9th Cir.

6  1988).

7          **2.   Plaintiff's Motion to Remand is Denied**

8          Despite plaintiff's argument to the contrary, defendant

9  correctly asserts once a case is removed to federal court

10 mandatory abstention under § 1334(c)(2) is no longer applicable.

11 <u>Security Farms</u>, 123 F.3d at 1009-10; <u>see also</u> <u>In re Lazar</u>, 237

12 F.3d 967, 981 (9th Cir. 2001).  Under Ninth Circuit law, § 1334(c)

13 "should be read *in pari materia* with section 1452(b) remand, so

14 that § 1334(c) applies only in those cases in which there is a

15 related proceeding that either permits abstention in the interest

16 of comity, section 1334(c)(1), or that by legislative mandate,

17 requires it, section 1334(c)(2)."  <u>Security Farms</u>, 123 F.3d at

18 1010 (citations omitted).  Once a case is removed, "no other

19 related state proceeding thereafter exists."  <u>Lazar</u>, 237 F.3d at

20 981.

21         The instant case is no different.  Once defendant

22 removed the case to district court on July 19, 2007, the state

23 case ceased to exist.  This principle applies both to § 1334(c)(1)

24 and § 1334(c)(2).  <u>Lazar</u>, 237 F.3d at 982.  Thus, plaintiff's

25 alternative argument requesting the Court exercise its

26 discretionary authority to abstain under § 1334(c)(1) is similarly

27 inapplicable.

28         In the interests of comity and in having California law

1   claims adjudicated by California courts, plaintiff lastly requests

2   the Court remand on equitable grounds under § 1452(b).  Courts

3   have held comity and the predominance of state law issues in a

4   case are among the equitable grounds a Court should consider under

5   § 1452(b).  See Williams v. Shell Oil Co., 169 B.R. 684, 692-93

6   (S.D. Cal. 1994).  As discussed above, however, the instant action

7   appears to be a core bankruptcy proceeding because it appears to

8   "aris[e] in" or is related to a case under Chapter 11 in the

9   Delaware Bankruptcy Court.  § 1334(c)(2).  Though the causes of

10  action in the complaint are based on state law, this case, as

11  discussed above, will likely turn on the interpretation of the

12  parties' entitlements and duties under the Reorganization Plan and

13  Trust Agreement.  (Sellers Decl., Exs. B, C.)  Because the

14  Delaware Bankruptcy Court, which could hear the case upon transfer

15  to the Delaware District Court, is in the best position to

16  interpret the duties of the trustees under the Reorganization Plan

17  and Trust Agreement, it is not offensive to the principles of

18  comity to have that court, rather than the California court,

19  consider the matter.

20          In light of the Court's granting of defendant's motion

21  to transfer venue and these considerations, plaintiff's motion to

22  remand is denied.

23  //

24  //

25  //

26  //

27  //

28  //

1    **3.    Plaintiff's Request for Costs, Expenses, and**

2    **Attorney Fees is Denied**

3    Under 28 U.S.C. § 1447(c), "[a]n order remanding the

4    case may require payment of just costs and any actual expenses,

5    including attorney fees, incurred as a result of the removal."

6    Because the motion to remand is denied, plaintiff's request for

7    costs, expenses, and attorney fees is likewise denied.

8    **V.**

9    **CONCLUSION**

10   For the foregoing reasons, the Court grants defendant's

11   Motion to Transfer Venue to the United States District Court for

12   the District of Delaware, and denies plaintiff's Motion to Remand.

13   IT IS SO ORDERED.

14   IT IS FURTHER ORDERED that the Clerk shall serve a copy

15   of this Order on counsel for all parties in this action.

16   DATED:    November 28, 2007.

17

18                                    ALICEMARIE H. STOTLER
                                      _____
19                                    ALICEMARIE H. STOTLER
                                      CHIEF U.S. DISTRICT JUDGE

20

21

22

23

24

25

26

27

28